1    PILLSBURY WINTHROP SHAW PITTMAN LLP
     STEPHAN E. BECKER (*pro hac vice* application pending)
2     · Email: stephan.becker@pillsburylaw.com
     2300 N Street N.W.
3    Washington, D.C. 20037-1122
     Telephone:    (202) 663-8277
4    Facsimile:    (202) 663-8007

5    PILLSBURY WINTHROP SHAW PITTMAN LLP
     SHARON L. O'GRADY (SBN 102356)
6     Email: sharon.ogrady@pillsburylaw.com
     50 Fremont Street
7    Post Office Box 7880
     San Francisco, CA 94120-7880
8    Telephone:    (415) 983-1198
     Facsimile:    (415) 983-1200
9
     Attorneys for Defendants
10   THE SWISS CONFEDERATION, THE FEDERAL ATTORNEY GENERAL
     OF SWITZERLAND, GERALD SAUTEBIN AND BRENT HOLTKAMP
11

12

13                       UNITED STATES DISTRICT COURT

14                      NORTHERN DISTRICT OF CALIFORNIA

15                         SAN FRANCISCO DIVISION

16   ────────────────────────────
                                          )
17   OLIVER HILSENRATH, ET AL.,            )   Case No. C-07-2782-WHA
                                          )
18                Plaintiffs,             )   E-Filing
                                          )
19         v.                             )   DECLARATION OF RUTH REUSSER
                                          )   IN SUPPORT OF DEFENDANTS'
20   THE SWISS CONFEDERATION, THE          )   MOTION TO DISMISS COMPLAINT
     FEDERAL ATTORNEY GENERAL OF           )   (FEDERAL RULE OF CIVIL
21   SWITZERLAND, GERARD SAUTEBIN,        )   PROCEDURE 12(b)(1), (2), AND (6))
     BRENT HOLTKAMP,                       )
22                                         )   Date:       September 13, 2007
                  Defendants.             )   Time:       8:00 a.m.
23                                         )   Courtroom:  9, 19th Floor
                                          )   Judge:      The Hon. William H. Alsup
24                                         )
                                          )
25   ────────────────────────────)

26

27

28

                              - 1 -

1     I, RUTH REUSSER, declare as follows:

2     1.    I have personal knowledge of the facts set forth herein and, if called as a wit-

3 ness, would and could competently testify to the truth thereof.

4     2.    I am the Director of the Division for Private Law of the Federal Office of

5 Justice within the Swiss Federal Department of Justice and Police in Bern. Switzerland's

6 designated Central Authority for International Legal Assistance in Civil and Trade Matters

7 is part of my Principal Division, and in that capacity I am responsible for the administration

8 of requests received by Switzerland under the Hague Convention of the Service Abroad of

9 Judicial and Extrajudicial Documents in Civil and Commercial Matters ("Hague Conven-

10 tion). I have held this position since 1990.

11     3.    Attached hereto as Exhibit 1 is a true and correct copy of the Hague Conven-

12 tion request form dated 30 May 2007 that accompanied the documents relating to this litiga-

13 tion which the Central Authority received from the Hilsenraths. When I reviewed the re-

14 quest, I stated that Several of the documents ("court summons in a civil case," "case man-

15 agement conference order," and "ECF Registration Handout") were not translated into an

16 official language of Switzerland. An effort had been made to translate the Complaint into

17 German; a true and correct copy of that document is attached hereto as Exhibit 2. The

18 translation of the Complaint, however, was of such poor quality that it could not be under-

19 stood, and therefore even the Complaint was untranslated.

20     I declare under penalty of perjury under the laws of the United States that the fore-

21 going is true and correct.

23 Executed this 3rd day of August, 2007, at Bern, Switzerland.

_____
Ruth Reusser

# EXHIBIT 1

U.S. Department of Justice
United States Marshals Service



## REQUEST
## FOR SERVICE ABROAD OF JUDICIAL OR EXTRAJUDICIAL DOCUMENTS

*DEMANDE*
*AUX FINS DE SIGNIFICATION OU DE NOTIFICATION À L'ETRANGER*
*D'UN ACTE JUDICIAIRE OU EXTRAJUDICIAIRE*

Convention on the service abroad of judicial and extrajudicial documents in civil or
commercial matters, signed at The Hague, November 15, 1965.
*Convention relative à la signification et à la notification à l'étranger des actes judiciaires ou
extrajudiciaires en matière civile ou commerciale, signée à La Haye, le 15 novembre 1965.*

| Identity and address of the applicant<br>*Identité et adresse du requérant* | Address of receiving authority<br>*Adresse de l'autorité destinataire* |
|---|---|
| HANA HILSENRATH, OLIVER HILSENRATH<br>822 Eastbrook Court, Danville, CA 94506, USA<br>Tel: +1 925 212 6299, Fax: +1 925 736 7571<br>email: ohlx@sbcglobal.net<br>PLAINTIFFS IN PROPRIA PERSONA | Federal Justice and Police Department,<br>Federal Office for Police Matters, International<br>Judicial and Extrajudicial Assistance,<br>Bundesrain 20, 3003 Bern, Switzerland,<br>Tel. +41-31-322-4310, Fax +41-31-322-5380 |

The undersigned applicant has the honour to transmit – in duplicate – the documents listed below and, in conformity
with article 5 of the above-mentioned Convention, requests prompt service of one copy thereof on the addressee, i.e.,
(identity and address)
*Le requérant soussigné a l'honneur de faire parvenir–en double exemplaire–à l'autorité destinataire les documents ci-dessous
énumérés, en la priant, conformément à l'article 5 de la Convention précitée, d'en faire remettre sans retard un exemplaire au
destinataire, à savoir:*
*(identité et adresse)*

1. SWISS CONFEDERATION; 2. SWISS FEDERAL ATTORNEY GENERAL;
3. GERARD SAUTEBIN; 4. BRENT HOLTKAMP — SEE ADDRESSES IN ANNEX

[X] (a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention.*
*a) selon les formes légales (article 5 alinéa premier, lettre a).*

[ ] (b) in accordance with the following particular method (sub-paragraph (b) of the first paragraph of article 5)*:
*b) selon la forme particulière suivante (article 5, alinéa premier, lettre b) :*

[ ] (c) by delivery to the addressee, if he accepts it voluntarily (second paragraph of article 5)*:
*c) le cas échéant, par remise simple (article 5, alinéa 2).*

The authority is requested to return or to have returned to the applicant a copy of the documents and of the annexes
with a certificate as provided on the reverse side.
*Cette autorité est priée de renvoyer ou de faire renvoyer au requérant un exemplaire de l'acte - et de ses annexes – avec
l'attestation figurant au verso.*

List of documents
*Enumération des pièces*

1. COMPLAINT CASE NO. C 07 2782 MMC
2. GERMAN TRANSLATION OF COMPLAINT
3. COURT SUMMONS IN A CIVIL CASE
4. CASE MANAGEMENT CONFERENCE ORDER
5. ECF REGISTRATION HANDOUT

Done at SAN FRANCISCO _____, the 30 MAY 2007
*Fait à _____, le _____*

Signature and/or stamp
*Signature et/ou cachet*

HANA AND OLIVER HILSENRATH

Hilsenrath Hook

*Delete if inappropriate*
*Rayer les mentions inutiles.*

Form USM-94
Est. 11/77
(Formerly OBD-116, which was formerly LAA-116, both of which may still be used)

# CERTIFICATE
## *ATTESTATION*

The undersigned authority has the honour to certify, in conformity with article 6 of the Convention,
*L'autorité soussignée a l'honneur d'attester conformément à l'article 6 de ladite Convention,*

1) that the document has been served *
*1) que la demande a été exécutée*
— the (date) — *le (date)* _____
— at (place, street, number) - *à (localité, rue, numéro)* _____

— in one of the following methods authorized by article 5:
— *dans une des formes suivantes prévues à l'article 5:*

☐ (a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention*.
*a) selon les formes légales (article 5, alinéa premier, lettre a)*

☑ (b) in accordance with the following particular method:
*b) selon la forme particulière suivante:* _____

☐ (c) by delivery to the addressee, who accepted it voluntarily.*
*c) par remise simple.*

The documents referred to in the request have been delivered to:
*Les documents mentionnés dans la demande ont été remis à:*

- (identity and description of person)
- *(identité et qualité de la personne)* _____

- relationship to the addressee family, business or other
- *liens de parenté de subordination ou autres avec le destinataire de l'acte:* _____

2) that the document has not been served, by reason of the following facts*:
*2) que la demande n'a pas été exécutée, en raison des faits suivants:*

_____

In conformity with the second paragraph of article 12 of the Convention, the applicant is requested to pay or reimburse the expenses detailed in the attached statement*
*Conformément à l'article 12, alinéa 2, de ladite Convention, le requérant est prié de payer ou de rembourser les frais dont le détail figure au mémoire ci-joint.*

ANNEXES
*Annexes*

Documents returned:
*Pièces renvoyées:*

_____

_____
_____

In appropriate cases, documents establishing the service:
*Le cas échéant, les documents justificatifs de l'exécution:*

_____

Done at _____ the _____
*Fait à* _____ *, le* _____

Signature and/or stamp
*Signature et/ou cachet*

## SUMMARY OF THE DOCUMENT TO BE SERVED
### *ÉLÉMENTS ESSENTIELS DE L'ACTE*

Convention on the service abroad of judicial and extrajudicial documents in civil or commercial matters, signed at The Hague, November 15, 1965.

*Convention relative à la signification et à la notification à l'étranger des actes judiciaires ou extrajudiciaires en matière civile ou commerciale, signée à La Haye, le 15 novembre 1965.*

(article 5, fourth paragraph)
*(article 5, alinéa quatre)*

Name and address of the requesting authority:
*Nom et adresse de l'autorité requérante:*

HANA AND OLIVER HILSENRATH, 822 EASTBROOK COURT, DANVILLE, CALIFORNIA 94506, USA

Particulars of the parties:
*Identité des parties:*

PLAINTIFFS FOR THE HILSENRATH FAMILY VERSUS DEFENDANTS- ALL MEMBERS OF SWISS GOV

JUDICIAL DOCUMENT
*ACTE JUDICIA IRE*

Nature and purpose of the document:
*Nature et objet de l'acte:*

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND PERSONAL PROPERTY

Nature and purpose of the proceedings and, where appropriate, the amount in dispute:
*Nature et objet de l'instance, le cas échéant, le montant du litige:*

RECOVERY OF DAMAGE OF 26,050,000 US DOLLARS

Date and place for entering appearance:
*Date et lieu de la comparution:*

SAN FRANCISCO, 450 GOLDEN GATE AVE., CLERK OF COURT, NO LATER THAN JULY 29, 2007

Court which has given judgment**:
*Juridiction qui a rendu la décision:*

SAN FRANCISCO FEDERAL DISTRICT COURT - JUDGE MAXINE M. CHESNEY

Date of judgment**:
*Date de la décision:*

MAY 29, 2007

Time limits stated in the document**:
*Indication des délais figurant dans l'acte:*

60 DAYS FROM SERVICE - PURSUANT TO /US FED R. C. PROC / FOREIGN PARTY

EXTRAJUDICIAL DOCUMENT
*ACTE EXTRAJUDICIAIRE*

Nature and purpose of the document:
*Nature et objet de l'acte:*

Time limits stated in the document:**
*Indication des délais figurant dans l'acte:*

# ANNEX TO FORM USM-94

### ADDRESSES OF DEFENDANTS IN CASE NO. C 07 2782 MMC

### FOR THE PURPOSE OF SERVICE OF COMPLAINT

## DEFENDANT 1: THE SWISS CONFEDERATION
Bundesrain 20, 3003 Bern,
Switzerland,
Tel. 011-41-31-322-4310,
Fax 011-41-31-322-5380

## DEFENDANT 2: THE FEDERAL ATTORNEY GENERAL OF SWITZERLAND
Bundesrain 20, 3003 Bern,
Switzerland,
Tel. 011-41-31-322-4310,
Fax 011-41-31-322-5380

## DEFENDANT 3 : GERARD SAUTEBIN
Office des juges d'instruction fédéraux
Rue du Mont-Blanc 4,
Case postale 1795
CH - 1211 Genève 1
Tel: +41 22 906 90 20,
Fax. +41 22 906 90 21,

## DEFENDANT 4: BRENT HOLTKAMP
Taubenstrasse 16
Bern, CH-3003
Tel: +41 31 322 0662
Fax: +41 31 322 0503

# EXHIBIT 2

1  HANA HILSENRATH
   OLIVER HILSENRATH
2  822 Eastbrook Court
   Danville, CA 94506
3  Telephone: 925 212 6299
   Facsimile: 925 736 7571
4  ohlx@sbcglobal.net

5  *KLÄGER IN PROPRIA PERSONA*

6

7
                    VEREINIGTEN STAATEN BEZIRK GERICHTSHOF
8                   NÖRDLICHER BEZIRK VON KALIFORNIEN

9
   HANA HILSENRATH, OLIVER              Rechtsstreit No. C 07 2782 MMC
10 HILSENRATH, NAMA HILSENRATH,
   LIOR HILSENRATH, ELLA HOPE
11 HILSENRATH, ISAIAH BENJAMIN          KLAGE FÜR DEN ENTZUG DES RECHTS
   HILSENRATH, SAUL NATHANIEL           FÜR FREIHEIT, VON RECHT ZU
12 HILSENRATH, DAS LEBENDE TRUST        EIGENTUM, UND VOM RECHT ZU
   VON MELANIE UND ANDRE                ZIVILEN FREIHEITEN GEWÄHRT VOM
13 HILSENRATH,                          4., 5. UND DEM 6. ZUSATZ VON DER
                                        VERFASSUNG DEN VEREINIGTEN
14                                      STAATEN
             Kläger,
15
              v.
16
17 DER SCHWEIZERISCHE BUND, DER         Richter: Maxine M. Chesney,
   SCHWEIZERISCHE
18 BUNDESGENERALSTAATSANWALT,           Ort: Gerichtssaal 7, 19. Stock
   GERARD SAUTEBIN, BRENT
19 HOLTKAMP, UND NAMENLOS 1-10,

20           Angeklagte.

21

22                         EINFÜHRUNG

23
   1. Diese jetzige Klage wird ehrerbietig *in propria persona* durch
24     Kläger Hana und Oliver Hilsenrath, UNS Bürger und Einwohner
25     vom Staat von Kalifornien eingereicht, während das Ergebnis
26     der Angeklagter der 3. Jahr von den Vermögenswerten von
27     Klägern friert, drehend eingestellte gesetzliche Darstellung
28     unzugänglich.

CASE NO. C02-1068 CW (BZ)

2. Der schweizerische Bund und die anderen Angeklagten in dieser
   Klage haben die Vermögenswerte von Klägern in 8 fremden
   Ländern gefroren, die behaupten, dass die Vermögenswerte das
   Ergebnis des Diebstahls waren.

3. Der Diebstahl ist behauptet, in den Vereinigten Staaten
   stattgefunden zu haben, ausdrücklich im nördlichen lenkt von
   Kalifornien ab.

4. Die USA Regierungen haben den angeblichen Diebstahl
   untersucht, waren vorgeblich auf Amerikanisch Erde
   stattgefunden, und haben bestimmt, dass die Vermögenswerte
   legitim erhalten wurden.

5. Die USA Regierungen und föderativer Gerichtshof in
   Kalifornien, das dutzendweise von Briefen und Reihenfolgen zu
   Angeklagten erklärt wird, die das von den Vermögenswerten von
   Klägern friert, ist ungerechtfertigt.

6. Der schweizerische Bund hat reichlichen Gebrauch von den
   internationalen Verträgen mit den USA gemacht zu untersuchen
   und das zu bewirken, friert.

7. Der Schweizer hat aber gewählt, sich an die gleichen
   internationalen Verträge nicht anzuhalten, als die USA
   Regierungen den Schweizer angeordnet haben, dass das friert,
   ist unrechtmäßig, und die Vermögenswerte von Klägern sollten
   freigegeben werden.

8. In einer Serie setzen der Handlungen, des Schweizers,
   Angeklagte in dieser Fall, für das 3. Jahr, jetzt fort,
   Vermögenswerte zu frieren, verringert ihren Wert, diffamiert
   die Kläger, und übertritt ihr verfassungsmäßiges Recht zu
   Eigentum.

9. Weiter um Kläger von Verfolgung ihr gerechtes Recht zu
   Eigentum abzuschrecken, hat Angeklagter schweizerischer Bund,
   mit keinem verständlichen Zweck, ein internationaler

Haftbefehl zu den 181 Nationen - Mitglieder des Interpol - für
die Verhaftung von Oliver Hilsenrath ausgegeben.

10. Angeklagte, schweizerische Autoritäten, haben in
Eigeninteresse, und in Bruch der bürgerlicher Freiheiten
gehandelt.

11. Keine Kosten oder andere formelle Klagen wurden je gegen den
Hilsenraths abgelegt.

12. Angeklagte, schweizerische Autoritäten, haben geübt grundlose,
grausame und ungewöhnliche gesamte Strafe auf dem ansehnlichen
Hilsenrath Familie. Der Schweizer war gut bewusst, dass die
gefrorenen Vermögenswerte gemeinschaftlich vom Hilsenraths
besessen werden, und dass die Hilsenraths Sorge für 6 Kinder,
größtenteils Minderjährige.

13. Durch so Spielen haben der schweizerische Bund, ihre
Arbeitnehmer, Vermittlung und Mitarbeiter nicht nur den
Klägern, sondern auch hat gestört das Gleichgewicht geschadet,
auf den Völkerrecht und internationale gesetzliche Verträge
die Weltwirtschaft und Menschenrechte regeln.

14. Kläger suchen, ihre Vermögenswerte zu haben, die nach dem 3-
einjährigen Schaden durch Angeklagte wiederhergestellt werden.

15. Kläger suchen auch, durch Angeklagte für alle Verluste,
Schäden und zugezogene Ausgaben entschädigt zu werden.

<u>RECHTSPRECHUNG UND VERANSTALTUNGSORT</u>

16. Kläger 1-7 sind Bürger von den Vereinigten Staaten und
Einwohnern von Kalifornien, während Angeklagte ein
ausländischer Souverän und größtenteils Einwohner
ausländischer Staaten sind.

17. Der Föderative Gerichtshof ist zuständig für diesen Fall und
den Veranstaltungsort im Nördlichen Bezirk von Kalifornien ist
angemessen entsprechend 28 U.S.C. § 1330§, 1331, § 1332.

HILSENRATH V. SWISS CONFEDERATION              -3-

18. Angeklagte haben ergriffen und haben den Wert des Eigentums
    von UNS Bürger verringert[1].

### EHRERBIETUNG ZUM FORUM VON KLÄGER

19. Die USA föderative Rechtsprechung ist passend in diesem Fall.
    Ehrerbietung zum Forum des Klägers ist eine stärkere
    Berücksichtigung, wo der Kläger ein Amerikanisch Bürger ist,
    besonders in diesem jetzigen Fall, in dem die zu Grunde
    liegenden Ansprüche unter Vereinigten Staaten Gesetz
    entstanden sind (unrechtmäßige Behauptungen der der auf der
    UNS verschmutzen und dann ausgedehnt zur Schweiz).

20. „Die Regel der Ehrerbietung zum Forum von Kläger ist zu
    Nachteil ausländischen Klägern aber lieber reflektiert eine
    realistische Voraussage von der allerletzten Bequemlichkeit
    vom Forum nicht vorgehabt". [*Piper Aircraft, 454 U.S. at 254.*]
    Dies ist besonders der Fall hier, wo der Fall von Angeklagten
    völlig auf Handlungen basiert ist, die stattgefunden haben,
    auf der UNS verschmutzen. Der Beweis, Zeugen, Fachleute,
    relevante Mitglieder von den USA Regierungen, sind usw. alle
    im nördlichen Bezirk von Kalifornien.

21. Angeklagte haben permanente gesetzliche und gewerbliche
    Darstellung in den Vereinigten Staaten und haben gesetzlichen
    Attaché in beiden San Franciscos sowie in anderen Staaten von
    der Gewerkschaft.

22. Kläger hat kein abwechselndes Forum. In Der Schweiz Klägern
    kann Selbst nicht vertritt. Kläger könnten Rechtsanwälte in
    Der Schweiz nicht einstellen, während das Ergebnis vom

---

[1] Shaffer v. Heitner, 433 U.S. 186 (1977): Das Eigentum versorgt allein einen
genügenden Kontakt für einen Gerichtshof ist zuständig für jenes geografische
Gebiet, Ansprüche zu entscheiden, sich auf das Eigentumsrecht vom Eigentum zu
beziehen, oder beziehend sich auf Verletzungen, die dort stattgefunden haben. Im
Fall die Rechtsprechung, wird geübt die vom Gerichtshof in rem Rechtsprechung
(ich. E. Rechtsprechung über dem Ding) gesehen ist, statt *in personam*
Rechtsprechung.

andauernden von ihren Vermögenswerten durch die
schweizerischen Angeklagten sich friert.

## AUSNAHME ZU SOUVERÄNER IMMUNITÄT DER SCHWEIZERISCHE BUND

23. Es wird erwartet dass Angeklagter, den schweizerischer Bund
auf sowohl seine Immunität als den Bedarf an Dienst in
Verhältnis mit der anwesenden Klage verzichten wird, als
Angeklagte gerichtliche Schritte gegen Klägerbürger von den
Vereinigten Staaten durch Vertrauen auf den USA Schweizer
gesetzlichem Vertrag eingeleitet haben. [28 U.S.C.S §1605
a(1)]

24. Es wurde geschätzt, dass ein Souverän inbegriffen auf seine
Immunität für solche Übertretungen verzichten darf, als
Übertretungen der Menschenrechte, wenn es solche Rechte
erstens ratifiziert[2].

25. Es wird auch erwartet, dass Angeklagte mit der gleichen
Höflichkeit zum Oliver Hilsenrath von Kläger antworten werden,
hat und unconditioned Verzichterklärung der Rechte beim Reisen
von Kalifornien zur Schweiz für Bezweifeln auf zwei getrennten
Anlässen an der Einladung der Angeklagter in dieser Handlung
wiederholt.

26. Dennoch wenn Angeklagter schweizerischer Bund Immunität[3] von
einem ausländischen Staat aufrufen wird, wird solche Immunität
entsprechend 28 U.S.C.S. § 1605 and § 1607.

---

[2] "A number of legal scholars have examined this principle in the context
of human rights violations, and have concluded that a sovereign may implicitly
waive its immunity for such violations when it ratifies human rights agreements."
R. Lillich and F. Newman, *International Human Rights: Problems of Law and Policy*
(1979); Comment, *The Foreign Sovereign Immunities Act and International Human
Rights Agreements: How They Co-Exist*, 17 U.S.F. L. Rev. 71 (1982).

[3] Cassirer v. Kingdom of Spain, 461 F. Supp. 2d 1157: -- "taken in violation of
international law" contains no limitation on a court's exercise of jurisdiction
to sovereigns that were involved in the initial taking, and no such limitation
should be implied. - Continued next -

27. Fortsetzen, (a) haben die 2 Banken sind die Vermittlung von
    Angeklagten verwickelt; (b) die 2 Banken haben weiter Geschäft
    in den Vereinigten Staaten (c) Angeklagter geworben und haben
    geworben, der ins Geschäft von Kläger in den gleichen Banken
    eingemischt wird; (d) Angeklagte und ihre Vermittlung haben
    Kläger verfassungsmäßige Rechte, ausdrücklich die 4., 5. und
    6. Zusätze gebrochen; (e) Kläger und ihre Vermittlung haben
    mehreren spezifischen Reihenfolgen vom Bezirkgerichtshof im
    Themenbereich nicht gehorcht; (f) Kläger und ihre Vermittlung
    – die Banken – Wunsch, Geschäft im Vereinten Sates zu machen,
    während gleichzeitig die USA Verfassungen[4] übertretend, und
    handelnd gegen UNS Föderative Gerichtsbeschlüsse.

---

Foreign Sovereign Immunity Act cases have examined the meaning of the phrase
"property taken in violation of international law" and have held that if a taking
violates any one of the following proscriptions, it violates international law.
These proscriptions include injury resulting from: (1) a taking by the state of
the property of a national of another state that: (a) is not for a public
purpose, or (b) is discriminatory, or (c) is not accompanied by provision for
just compensation.

[4] 21 August 2006 Order-District Court: "The United States federal government has
now concluded that these frozen assets were not embezzled or stolen. The United
States Federal government has also concluded that these frozen assets were not
the proceeds of a securities fraud offense.
The Court requests that the Swiss investigating magistrates withdraw their
requests for freezes made to other European jurisdictions."

13 Nov 2006 Order-District Court: "The Court clarifies that there is no other
mechanism (other than the issuance of this order) to pronounce on the propriety
of the asset freeze. If the assets had been frozen in the United States, and the
Court issued a similar order holding that there was no probable cause to freeze
the assets, then the assets would have to be released and returned to Mr.
Hilsenrath.
The Court asks the Swiss examining magistrates to deem it's August 21, 2006,
order a final order, not subject to any other judgment or plea.
Consequently, the Court reiterates its request to the Swiss authorities to
release Mr. Hilsenrath's frozen funds and to withdraw their requests for freezes
made to other European countries, to the extent that the Swiss authorities'
freeze of assets is attributable to their mistaken conclusion that there are
violations of U.S. law that justify Swiss money laundering charges."

HILSENRATH V. SWISS CONFEDERATION                    -6-

## BESCHREIBUNG VON KLÄGERN UND ANGEKLAGTEN

Die Kläger

28. Kläger 1 zu 7 sind Vereinigten Staaten Bürger und Einwohner vom Staat von Kalifornien.

- Kläger 1 und 2, Hana und Oliver Hilsenrath sind beide Wissenschaftler mit hohen akademischen Graden.
- Hana Hilsenrath hat sie letzte 25 Jahre allein zu Erhöhung die 6 Kinder der Familie gewidmet und hat niemals, irgendeine Beteiligung in den Geschäften von Herrn Hilsenrath gehabt.
- Kläger 3 zu 7 sind die Kinder des Hilsenrath Paar. Kläger 4 zu 7 sind Minderjährige.
- Kläger 8 vertritt den saldierten Besitz des Herr des Hilsenrath die Eltern, die ursprünglich zu den Enkelkindern zugeteilt werden.

29. Die Vermögenswerte von Klägern wurden ungesetzlich, sich befundenen und gefroren durch Angeklagte verfolgt.

30. Die Fonds von Kläger Zahl 8 würden gegen ihre Gründungsurkunde saldiert.

31. Der saldierte Besitz von Kläger 8 war die letzte Quelle von der Familie Hilsenrath von Fonds unter dem offenen beendeten schweizerischen Halt der Vermögenswerte.

Die Angeklagten

32. Angeklagter schweizerischer Bund ist eine souveräne Regierung zu Gunsten dessen Des schweizerischen Föderativen Generalstaatsanwalts (SFAG), handeln SAUTEBIN und HOLTKAMP.

33. Angeklagter schweizerischer Föderativer Generalstaatsanwalt
    (SFAG) hat formell eine gerichtlichen Schritte[5] (einschließlich
    in den Vereinigten Staaten), eine formelle Untersuchung
    abgeschossen, und ein internationales friert von
    Vermögenswerten.

34. Angeklagte Gerard Sautebin (SAUTEBIN) und Brent Holtkamp
    (HOLTKAMP) sind Arbeitnehmer vom schweizerischen Bund und
    waren/sind verantwortlich für die so genannte Untersuchung
    gegen den Hilsenraths. Diese Untersuchung in seinem 3. Jahr
    jetzt ist der Vorwand für den Fegen internationale Suche und
    friert von Vermögenswerten.

35. Angeklagte haben Klägern mittels gegenseitige
    Rechtsbeiständeverträge – MLAT's), einschließlich des MLAT mit
    den Vereinigten Staaten geschadet.

36. Der schweizerische Bund hat erlaubt, dass SAUTEBIN und
    HOLTKAMP auf zu seinem Netz von MLAT (Gegenseitiger
    Rechtsbeistandvertrag), den Haag Tagung Verträge und zum
    INTERPOL zugreifen.

37. Die schweizerischen Verträge mit den Vereinigten Staaten,
    haben es möglich gemacht, Dokumente wiederzugewinnen, auf
    greifen Konten zu, friert erlassen und Verfällereihenfolgen
    von Vermögenswerten und Tat über hinaus schweizerische
    Rechtsprechung schließen in Kalifornien, und indirekt in
    anderen Staaten von den Vereinigten Staaten mitein.

38. Macht 1-10 sind andere direkte und indirekte Personen, die
    materiell handeln mit oder zu Gunsten Angeklagte 1 zu 4 zu
    bewirken das von Vermögenswerten friert, überfällt Klägerruhe,
    manipulieren Kläger in 8 Rechtsprechungen, einschließlich in
    den Vereinigten Staaten, diffamiert und verringern dem Wert
    von den oben genannten Fonds und den Vermögenswerten.

---

[5] Proceeding QJIF/VU.2005.18 – [Swiss] Federal Attorney General v. Mr. Oliver HILSENRATH

39. Trotz der zehn von Untersuchungen international friert,
    Zerstörung des Eigentums, internationaler Haftbefehle,
    Angeklagter (schweizerische Regierung) nie hat gebracht
    eigentliche Kosten gegen Kläger (den Hilsenraths).

## DIE HANDLUNGEN VON ANGEKLAGTEN

40. Im April 2005 hat der schweizerische Bund ein friert von
    Vermögenswerten eingeleitet, die vom Hilsenraths in zwei
    Banken gehalten werden: Credit Suisse und UBS. Beide Banken
    haben Geschäfte in sowohl die Schweiz als auch die Vereinigten
    Staaten.

41. Der schweizerische Bund hat der Hilsenraths gefroren
    Vermögenswerte unter dem Vorwand, dass die Vermögenswerte
    wurden von einem Kalifornien Firma gestohlen.

42. HOLTKAMP und andere, die zu Gunsten des schweizerischen Bundes
    bedienen, haben ein Verfahren abgeschossen, Dokumente zu
    ergreifen, die von den zwei Banken und Zeichnung allen
    Geschäftsbeziehungen in der Geschichte dem Hilsenraths
    gehalten werden Konten von 1994 zu 2007. Das Ziel sollte
    Vermögenswerte angeblicher Partner oder Coverschwörers des
    Hilsenraths in wenigstens 8 verschiedenen Ländern frieren.

43. Im Mai 2005 nur ein Monat später, HOLTKAMP hat seine erste
    Übertragung von einem Ergebnis durch den Bezirkgerichtshof in
    Kalifornien empfangen, dass der Hilsenraths Fonds in Der
    Schweiz eigentlich nicht das Ergebnis von einem angeblichen
    Diebstahl sind.

44. In Nichtbeachtung von diesen Informationen HOLTKAMP und seine
    Kollegen haben ein Verfahren angefangen, Hilsenrath Geschäft
    Partner zu verfolgen, die Personen schweizerische
    Polizeiagenten in schicken/und äußere Die Schweiz für
    Untersuchungen und Frieren von den Vermögenswerten der

Personen unter angeblichem Verdacht, mit dem Hilsenraths heimlich zu planen, und waschend gestohlenen Geld.

45. Im Juli und August 2005 auf zwei verschiedenen Anlässen und an der Bitte von HOLTKAMP, ist Oliver Hilsenrath von den USA für 6 Tage von Untersuchung in einer geschlossenen Einrichtung von der schweizerischen Regierung in Bern gereist.

46. Am Ende von den oberen Untersuchungen HOLTKAMP, der in Briefen zu den USA beendet wird, und zu Hilsenrath, den er hat empfangen von Hilsenrath reichlichen Informationen, und dass er einen Grund nicht hat, zu glauben, dass der Hilsenraths illegal erhaltene Vermögenswerte zur Schweiz übertragen hat.

47. Er hat in die gleichen Briefe versprochen, das aufzuheben, friert auf Vermögenswerten innerhalb 3 Tagen. Die Vermögenswerte bleiben gefroren bis dieser genaue Tag, 25 Monate später.

48. Im Sommer von 2005, während HOLTKAMP beendete, dass keine unerlaubte Tat wahrscheinlich ist, auf schweizerischer Erde stattgefunden zu haben, haben zwei unbekannte Agenten von den schweizerischen Bünden mehrere fremde Länder besucht, eine Anzahl von angeblichem Hilsenrath Geld Wäscherei Partnern (Angeklagten Doe 1 und 2) zu untersuchen.

49. Sie haben zu Kommunen kommuniziert die sie untersuchen einen internationalen Geldwäschereiring, dass hat übertragen über $11 Millionen von illegal hat erhalten UNS durch die Schweiz fundiere.

50. Das Ergebnis von jener Reise war finanziellerer Schaden: Verschluss mehrerer zusätzlicher Geschäfte, Widerrufs zusätzlicher Kreditlinien zu Geschäften, und bedeutsame Verlegenheit zu Klägern in diesem Fall.

51. Einige von den untersuchten Personen auf jener Reise wurden verpflichtet, persönliche Geschäftsvermögenswerte zu

verkaufen, und große Summen in verdächtiger, unauffindbarer
Regierung zu deponieren, begründet.

52. Mittlerweile zehn von Briefen und Reihenfolgen wurden zur
schweizerischen Regierung von den USA Regierungen geschickt
und vom Kalifornien Bezirk Gerichtshof, beginnend Januar 2006.

53. Die Briefe und Reihenfolgen erklärten, dass das friert, ist
ein Fehler und es ist unrechtmäßig.

54. Der Schweizer ist schweigsam geblieben. Sie haben vorsichtig
aktualisierend die 8 betroffenen Rechtsprechungen vermieden,
die sie im dunkeln auf den USA Regierungsergebnissen und
Nachrichten behalten.

55. Die Fonds wurden nie zu ihren Eigentümern zurückgekehrt.

## CHRONOLOGIE VON DEN HANDLUNGEN DER ANGEKLAGTEN

56. Im Mai 2005 hat der schweizerische Bund alle Vermögenswerte
des Hilsenrath — international - angeordnet gefroren zu
werden. Dies schließt Die Schweiz und 8 andere Länder mitein,
in den des Hilsenrath je Fonds oder übertragen hat, hat
gemacht Zahlungen.

57. Im Juli und im August 2005, Oliver Hilsenrath ist nach Der
Schweiz gereist und hat für 6 Tage auf Materien, die auf
seinen Beruf, Leben, Geschäft, und Familie bezogen worden
sind, während Versorgentausende von Seiten persönlicher
Aufzeichnungen interviewt.

58. Schweizerischer Untersucher HOLTKAMP und seine Mannschaft
wurden befriedigt, dass der Hilsenraths in Der Schweiz keinen
Gewinn des Diebstahls deponiert hat.

59. Am 23 August 2005 sofort zum letzten Tag von Oliver Hilsenrath
von Untersuchung, hat HOLTKAMP Bjorn Bajan das Folgende
geschrieben, dann der Rechtsanwalt von Hilsenrath:

23 August 2005 - HOLTKAMP zum (dann)
Rechtsanwalt von Hilsenrath:

"I refer to the above-mentioned criminal matter
and the interrogations of your client on the
15th and 16th August 2005. I hereby inform you
that I will render shortly a formal decision
for the lifting of the attachments, the
original of which will be transmitted (without
foundation and the findings of law) to the
foreign authorities, which have been put in
place by the Federal Prosecutor following the
letterogatory."

60. Bis dieser genaue Tag, 22 Monate nach dem Datum von diesem
Brief, bleiben die Vermögenswerte gefroren. Der erwähnte Brief
wurde nie ausgegeben. Mehr Vermögenswerte wurden verfolgt und
wurden nach dem Datum von diesem Brief gefroren. Mehr
Geschäfte haben, Polizei überfallene Heime und Büros
unschuldiger Personen in mehrfachen Ländern zerschmettert,
haben mehr Vermögenswerte - alle auf Reihenfolgen der
Angeklagter der schweizerische Bund zerstört.

61. Die falsche schweizerische Regierungstaktik hat ungestört
fortgesetzt. Am 29 September 2005 hat HOLTKAMP einen anderen
Brief, diesmal zu den USA Zentraler Autorität in Washington
GLEICHSTROM geschrieben, berichtend dass er nichts falsch um
die Hilsenrath Vermögenswerte in Der Schweiz finden kann, und
kann irgendeine kriminelle Tat am (Amerikaner) Ursprünge des
Hilsenrath Fonds nicht beglaubigen:

29 September 2005  - HOLTKAMP zu UNS/Office of
International Affairs (OIA)

"Oliver HILSENRATH was interviewed on four
occasions and has given extensive information
and explanations pertaining to his alleged
involvement in the criminal activities
committed while he was an executive member of
U.S. WIRELESS CORPORATION (hereafter USWC),
actually bankrupt.

During his interviews he gave a number of
responses and provided a large amount of
documentation which has been thoroughly
reviewed by our financial analyst, who saw no
discrepancies with the facts as stated by
Oliver HILSENRATH in regards with the sale of
350'000 stocks of USWC and the subsequent
transfer of the resulting proceeds to Swiss
bank accounts.

The abovementioned analysis, in addition to the
proceedings of April 19, 2005, and your
clarifying and supplemental request to
Switzerland of August 2005, in both of which it
seems to be stated that the 350'000 stocks of
USWC were legitimately acquired and are
therefore not encompassed in the government's
indictment, renders improbable any money-
laundering activity committed in Switzerland.
This is also due to the fact that the proceeds
of the afore-mentioned 350'000 stocks account
for the major amounts of currency transferred
to Switzerland before being forwarded to other
States."

62. Bis dieser genaue Tag, 21 Monate nach dem Datum von diesem
    Brief, bleiben die Vermögenswerte gefroren.

63. Im Dezember 2005 hat HOLTKAMP die so genannte Untersuchung und
    der gefroren assts zu einem anderen schweizerischen
    Arbeitnehmer, SAUTEBIN übertragen. SAUTEBIN hat die Befragen
    die Hilsenrath Angelegenheiten von Quadrat Ein angefangen und
    hat Oliver Hilsenrath zu einem neuen Satz der Untersuchung,
    diesmal in Genf im Mai 2006 eingeladen. Hilsenrath hat, als
    vor mit HOLTKAMP, zu reisen und übereingestimmt SAUTEBIN zu
    treffen. SAUTEBIN hat umplanen fortgesetzt, und hat
    absichtlich, die Untersuchung vermieden, die letzten Endes nie
    bis dieser genaue Tag geschehen ist.

64. Am 2 Juni 2006 haben die Vereinigten Staaten Büro
    Internationaler Angelegenheiten in Washington GLEICHSTROM an
    die schweizerische Zentrale Autorität geschrieben:

<u>2 Juni 2006 — UNS/OIA zu schweizerischer</u>
<u>Regierung:</u>

"Please advise the Swiss authorities that we
are seeking to have the freeze lifted
immediately on all [Hilsenrath] funds."

65. SAUTEBIN hat sich an die USA Informationen nicht angehalten
und Hat Reihenfolgen Umworben.

66. SAUTEBIN anstatt angefangen jetzt, die Befugnis von den USA
Regierungsbeamten zu bezweifeln, die die Anständigkeit die
Hilsenrath Verhandlungen untersucht haben.

67. In Erwiderung hat der OIA in Washington an SAUTEBIN auf 18
Juli 2006 folgendermaßen geschrieben:

<u>18 Juli 2006 — US/OIA zu SAUTEBIN</u>

"*   * When we consulted with a securities
expert later, he told us that these disclosures
meant that there was not a problem from the
SEC's perspective with the sale of the stock.
Our expert is a former Commissioner at the
United States Securities and Exchange
Commission, is a tenured faculty member at one
of the top three law schools in the United
States, and sits on the board of directors of a
major technology company in the United States.

*   * [T]he Court here has asked that the Swiss
authorities act expeditiously. We would
appreciate knowing as soon as possible —
preferably by the end of the month — whether
the Swiss authorities will release the assets."

68. Das friert war in seinem 15. Monat und das Knirschen auf dem
Hilsenraths und ihre Partner haben fortgesetzt.

69. SAUTEBIN hat erwidert, dass er das nicht herausnehmen würde,
friert es sei denn er empfängt von den USA Regierungen mehr
Aufzeichnungen auf dem Hilsenraths, auf Oberteil und über die
zehn von Tausenden von Dokumenten, die im (dann) anderthalb
Jahr gesendet werden.

---

70. Am 31 Juli 2006 schreibt die USA Abteilung der Justiz an die
schweizerische Regierung eine feste Bitte, die Hilsenrath
Vermögenswerte in Europa freizugeben. Die USA Regierungen
erklärt diesmal streng: KEINER mehr Papiere…

### 31 Juli 2006 — UNS/OIA zu schweizerischer Regierung:

"It is wrong for the Swiss authorities to
continue to freeze Mr. Hilsenrath's assets.
Justice requires that Mr. Hilsenrath have
access to his money so that he can defend
himself with the assistance of counsel. I do
not understand why the Swiss Examining
Magistrate continues — over my objections and
over the Court's objections — to freeze Mr.
Hilsenrath's money based on a mistaken
conclusion by a junior prosecutor that the
stock shares were sold in violation of U.S.
securities and fraud laws. * * * Again, I ask
M. SAUTEBIN to release the assets immediately
and to withdraw his holds on the other assets
that Mr. Hilsenrath has in Europe.

Mr. SAUTEBIN also asks for more records. I have
already given Mr. SAUTEBIN all of the evidence
in our possession."

71. Das friert war jetzt in seinem 15. Monat und es gab keine
Erleichterung zu Hilsenrath, seiner Familie und Partnern.

72. Die unvernünftige, gesamte Strafe des Hilsenraths hat
fortgesetzt.

73. Um irgendeinen möglichen Zweifel auf dem passenden Natur dem
Hilsenrath Vermögenswerten herauszunehmen, die auf die Schweiz
übertragen wurden, hat Föderativer Bezirk Richter William H.
Alsup eine Reihenfolge (gemäß Ziviler Regel 65) unterzeichnet.
Richter Alsup schreibt am 21 August 2006 Ersuchen
ausdrücklich, die Einschränkungen auf den Vermögenswerten
überall in Europa herauszunehmen:

21 August 2006 – UNS/Bezirkgerichtshof zu
schweizerischer Regierung:

"The United States federal government has now
concluded that these frozen assets were not
embezzled or stolen. The United States Federal
government has also concluded that these frozen
assets were not the proceeds of a securities
fraud offense.

The Court requests that the Swiss investigating
magistrates withdraw their requests for freezes,
made to other European jurisdictions."

74. Das friert war jetzt in seinem 17. Monat. SAUTEBIN hat wieder
die USA Abteilungen von Justiz und den USA Föderativem
Gerichtshof abgelehntund.

75. Die Zeit wurde von die Leute von SAUTEBIN verwendet, weiter
Hilsenraths zu zwingen' Partner, gemeinschaftliche
Geschäftsvermögenswerte zu verkaufen, und sie in unbekannter
Regierungsbankkonten zu deponieren, Konten - regiert durch
gleichermaßen unbekannte Regelungen.

76. Die USA Büro Internationaler Angelegenheiten haben an SAUTEBIN
wieder am 30 Oktober 2006 geschrieben: OIA hat SAUTEBIN
diesmal beantwortet, das seine Fragen ungeeignet sind, die von
einem Tutorium gefolgt, das Gesetz von UNS und von Verfahren
und den Brüchen verfassungsmäßiger Rechte, die von den
schweizerischen Handlungen verursacht werden.

30 Okt 2006 – UNS/OIA zu schweizerischer
Regierung:

"With all due respect, that conclusion is
misplaced. More sophisticated prosecutors have
now evaluated the case, and the presiding judge
here (an experienced jurist appointed by the
President of the United States for a life term)
agrees that there was no probable cause to
support the freeze of the assets."

Gerard SAUTEBIN said that he did not intend to release the funds at this time because he "would like to obtain, previously, a court ruling in the matter by the American Authority (or a plea agreement) regarding Mr. Oliver Hilsenrath." So the Court here issued an order, just as M. SAUTEBIN requested. Now M. SAUTEBIN says that the order he requested is not sufficient because it is not a plea or a sentencing document. Again, with all due respect, the order from the federal judge here is a final order for purposes of the asset freeze. There is no other mechanism in our court system to address the issue of a wrongful freeze. If a judge finds that there is no probable cause to freeze assets, assets are released.

While that is standard textbook law on the fourth amendment, I will obtain another court order here saying that."

77. Mit dem friert in seinem 19. Monat, Föderativer Bezirk Richter William H. Alsup schickt einen Gerichtsbeschluss am 13 November 2006, wiederholend in eindeutiger Sprache: Diese Regelung ist endgültig und Binden. Die Hilsenrath Fonds sind legitim erhalten. Das friert von Vermögenswerten durch die schweizerische Regierung muss herausgenommen werden sofort.

<u>13 Nov 2006 – UNS/Bezirkgerichtshof zu schweizerischer Regierung:</u>

"The Court clarifies that there is no other mechanism (other than the issuance of this order) to pronounce on the propriety of the asset freeze. If the assets had been frozen in the United States, and the Court issued a similar order holding that there was no probable cause to freeze the assets, then the assets would have to be released and returned to Mr. Hilsenrath.

---

HILSENRATH V. SWISS CONFEDERATION                -17-

The Court asks the Swiss examining magistrates to deem it's August 21, 2006, order a final order, not subject to any other judgment or plea.

Consequently, the Court reiterates its request to the Swiss authorities to release Mr. Hilsenrath's frozen funds and to withdraw their requests for freezes made to other European countries, to the extent that the Swiss authorities' freeze of assets is attributable to their mistaken conclusion that there are violations of U.S. law that justify Swiss money laundering charges."

78. Im 20. Monat vom friert, das Büro Internationaler Angelegenheiten in Washington GLEICHSTROM, der an die schweizerische Zentrale Autorität und zu SAUTEBIN wieder am 30 November 2006 geschrieben wird, umadressierend zum zahllosem Mal, die gleichen Rechtmäßigkeitausgaben von den Vermögenswerten, die auf die Schweiz übertragen werden; bittend, dass das aufgehoben zu werden friert, und erklärend, dass die USA Regierungen weiter von den schweizerischen Fragen auf dieser Materie nicht beantworten werden.

30 Nov 2006 – UNS/OIA zu schweizerischer Regierung:

"Enclosed is a the letter from the U.S. Attorney's Office for the Northern District of California, both reiterating that the court there has found no basis for freezing the assets in Switzerland under U.S. law, and that its orders are the equivalent of a final, binding order. The letter also responds to the request of the Swiss magistrate for information from the SEC related to this matter.

* * * The SEC has not asked for any of Oliver Hilsenrath's assets to be frozen, either here in the United States or abroad. * * * Thus, we do not consider any further requests from the Swiss Examining Magistrate to be

appropriate, either to the U.S. Attorney's
Office or to the SEC.

We, in support of the U.S. Attorney's office,
have written numerous letters, provided complete
documentation and information; and (as the Swiss
examining magistrate requested) obtained the
court orders verifying that the assets are not
subject to restraint and would be released to
Mr. Hilsenrath if they were in the United
States. We therefore ask the Swiss authorities
to release the assets and to withdraw its holds
on Mr. Hilsenrath's assets elsewhere in Europe."

79. Noch sechs Monate gehen an vorbei. Die schweizerische
    Regierung hat die Vermögenswerte nicht freigegeben oder hat
    sogar für die Vermögenswerte erlaubt, ordentlich verwaltet in
    Übertretung schweizerischen Gesetzes[6] zu sein.

80. Der ungesetzliche Schweizer hat „Sammlung" der Fonds von
    Hilsenraths gefördert' haben Partner ungestört, zwei Jahre
    fortgesetzt, nachdem der Anfang vom friert.

81. Die große Hilsenrath Familie kämpft unter dem Gewicht der
    schweizerischen unerklärlichen Handlung.

82. Zwei Jahre 24 Monate ins friert, die USA Abteilungen von
    Gerechtigkeit schreibt an die schweizerische Zentrale
    Autorität und zu SAUTEBIN wieder am 1 Mai 2007, das
    „unrechtmäßige" aufzuheben, friert:

    1 Mai 2007 – UNS/OIA zu SAUTEBIN:

        "I am writing to follow up on my March 9,
        2007 letter responding to the Swiss Examining
        Magistrate's letter dated February 27, 2007.
        I have not received any reply from the Swiss
        authorities about the status of the assets.

---

[6] Bundesamt für Justiz [Federal Judicial Authority – citing rules to
manage frozen assets]: "The assets must continue to be administered and
invested according to customary bank principles. In particular existing,
and potential future incoming orders to invest such assets must continue
to be executed."

> I once again ask the Swiss Examining
> Magistrate to lift the wrongful freeze of Mr.
> Hilsenrath's assets. I also would appreciate
> a status report about what is happening with
> the assets and the Swiss case so that I can
> report to the Court here."

83. Am Datum von dieser Klage friert das schweizerische ungerechte und unerklärliche ist in seinem 25. Monat. Der Hilsenraths und viele andere, waren bedeutende Verletzung durch die schweizerische Handlung.

84. Hunderte von Tausenden von Dollar in gesetzlichen Gebühren zogen sich während dieser Handlung zu, bevor Kläger aus Fonds gelaufen sind.

85. Der Preis von der schweizerischen Handlung:

86. Zehn von Millionen von Dollar verlorener Geschäftsvermögenswerte und Gelegenheiten in diesen schmerzhaften 25 Monaten.

87. Angst und Schmerz haben auf dem Hilsenraths und zehn von anderen Personen mittels unverdiente und unerklärliche gesamte Strafe auferlegt.

88. Der Schaden an der Hilsenraths Fähigkeit, Geschäft und das von ihren Geschäftspartnern zu leiten, wird ihnen in zukünftigeren persönlichen Schaden und Verluste folgen.

### ERSTE URSACHE FÜR HANDLUNG

#### (Gesamte Strafe — Übertretung vom 4. und 5. Zusatz)

Kläger vereinigen jedes von den oberen Absätzen durch Verweisung.

89. Kläger 1, 3, 4, 5, 6 und 7 wurden von Angeklagten, schweizerischer Regierung, von ihren Vermögenswerten gesamt und wahllos beraubt.

90. Über hinaus die USA Verfassungen Die Fort Genfer Konvention (das eigene Hauptquartier von SAUTEBIN) weiter unterstützt durch Artikel 50 von Den Haag Regelungen, „verbietet gesamter

---

Strafe und Staaten, dass eine Person für eine Beleidigung er nicht bestraft werden wird, oder sie nicht persönlich hat eingesetzt[7].

91. Kläger 1, 3, 4, 5, 6 und 7 waren niemals unter irgendeinem Verdacht von irgendeiner Art durch irgendeine Regierung einschließlich Angeklagter.

92. Kläger 1, 3, 4, 5, 6 und 7 wurden zu den Angeklagten gewusst, während abhängige Personen und größtenteils Minderjährige ist.

93. Kläger 1, 3, 4, 5, 6 und 7 wurden zu Angeklagten als Nutznießer von den gefrorenen Vermögenswerten gewusst.

94. Angeklagte hatten wiederholt, reinigen geschriebene Notiz dass Kläger 1, 3, 4, 5, 6 und 7, Frau Hilsenrath und ihre 6 Kinder, kämpfen, während das Ergebnis von den Angeklagten friert.

95. Angeklagte haben Kläger 1, 3, 4, 5 gedreht, 6 und 7 auf allen dringenden Bitte hinunter für Erleichterung.

96. Kläger sind zur Reihenfolge von diesem Gerichtshof zu Entschädigung im Wert von allen Vermögenswerten verfolgt berechtigt bzw. sind in Wert von wenigstens $7,3 Millionen und anderen Schäden gemäß Beweis ergriffen.

WESHALB, beten Kläger 1, 3, 4, 5, 6 und 7 Erleichterung als Satz fort unten.

---

[7] Artikel 33 von der Vierten Genfer Konvention verbietet gesamter Strafe und Staaten, dass eine Person für eine Beleidigung er nicht bestraft werden wird, oder sie hat nicht persönlich eingesetzt. Dieser Artikel erzählt explizit, dass administrative Strafe, die auf Personen oder Gruppen wegen Taten auferlegt wird, die sie nicht persönlich eingesetzt haben. Artikel 50 von den Haag Regelungen erklärt ein vergleichbares Verbot.

Article 33 of the Fourth Geneva Convention forbids collective punishment and states that a person shall not be punished for an offense he or she has not personally committed. This article explicitly relates to administrative punishment imposed on persons or groups because of acts that they did not personally commit. Article 50 of the Hague Regulations states a comparable prohibition.

ZWEITE URSACHE FÜR HANDLUNG

(Übertretung der Rechtschutz von 4. und 5. Zusatz gegen unvernüftige Suchen und Ergreifungen und das allgemeine Recht zu Eigentum)

Kläger 2 vereinigt jedes von den oberen Absätzen durch Verweisung.

97. Angeklagte haben gesucht[8] und haben ergriffen[9], und haben Vermögenswerte von Kläger 2 ohne Basis in Gesetz oder Tatsache gefroren.

98. 98. Selbst wenn der Verdacht in 2005 in mancher Hinsicht ausgesprochen werden deutlich könnte, müsste dieser Verdacht einmal die Vereinigten Staaten Regierung hat geschickt den Ablauf von Briefen und Reihenfolgen zerstreuen, fangend Januar 2006 an.

99. 99. Es kann daher keine Rechtfertigung geben, die zur Ergreifung den Vermögenswerten in den zuletzt 18 Monaten gegeben wird.

100. 100. Kläger 2 ist zur Reihenfolge von diesem Gerichtshof zu Entschädigung im Wert von allen Vermögenswerten verfolgt berechtigt bzw. ist in Wert von wenigstens $7,3 Millionen und anderem Schaden gemäß Beweis ergriffen.

WESHALB, betet Kläger 2 Erleichterung als Satz fort unten.

_____

[8] United States v. Verdugo-Urquidez, 494 U.S. 259: USA Verfassung. Zusatz IV verbietet unvernüftige Suchen und Ergreifungen, egal ob der Beweis gesucht ist, in einem kriminellen Versuch, und einer Übertretung vom Zusatz benutzt zu werden, ist völlig zur Zeit ein unvernüftiges Regierungseindringen vollendet.

[9] Dayton v. Czechoslovak Socialist Republic, 266 U.S. App. D.C. 177: Unter Völkerrecht wird das Datum des Nehmens vom Datum von den Enteignungserlassen bzw. das Datum physischer Ergreifung, und nicht durch ein folgendes Datum der Zurückweisung von einer Unternehmung repariert, Entschädigung zu versorgen

Verfassungsmäßige Rechte ruhen auf Substanz, nicht auf Form, und die Haftung, Entschädigung für Eigentum zu bezahlen, hat kann ausgewichen nicht werden von Verlassen dem Titel im Eigentümer, während Berauben ihn vom förderlichen Gebrauch vom Eigentum genommen.

DRITTE URSACHE FÜR HANDLUNG

(Rückgewinnung verlorenen Eigentums – in Übertretung von den 5.
Zusätzenrechten – in jedem von den acht Ländern, in den die
schweizerische Regierung erbeten hat, friert und hat saldiert
Vermögenswerte mittels internationale diplomatische Kanäle)

Kläger vereinigen jedes von den oberen Absätzen durch Verweisung.

101. Die Fonds, die ursprünglich vom Hilsenraths mit den
     schweizerischen Banken gehalten worden sind, wurden in einer
     Matrix der Geschäfte in mehreren Ländern investiert.

102. Alle Geschäfte haben Vielfache Partner miteingeschlossen.

103. Angeklagte haben die Geschäfte geschlossen und haben sie
     mittels internationale Verträge mit den erwähnten Ländern
     saldiert.

104. Kläger sind zu Entschädigungen gleicht zu ihrem Verlust des
     Eigentums entsprechend Kalifornien Zivilem Codeabschnitt 3336
     in einer Betrag nicht weniger als $4,5 Millionen berechtigt.

WESHALB, beten Angeklagte Erleichterung als Satz fort unten.

VIERTE URSACHE FÜR HANDLUNG

(Rückgewinnung verlorener Geschäftsgelegenheiten – in Übertretung
die Rechte von 5. Zusatz – in jedem von den acht betroffenen
Ländern)

Kläger vereinigen jedes von den oberen Absätzen durch Verweisung.

105. Kläger waren Partner in andauernden Geschäften in den
     betroffenen Ländern.

106. Die Geschäfte haben langfristige Tätigkeiten gehabt, die
     wurden gestört von Angeklagten frieren, und Impeachment.

107. Kläger sind zu Entschädigungen gleicht zu ihrem Verlust der
     Geschäftsgelegenheiten als das Ergebnis der Angeklagter die
     Handlungen gemäß Beweis in einer Betrag nicht weniger als $5,9
     Millionen berechtigt.

WESHALB, beten Angeklagte Erleichterung als Satz fort unten.

FÜNFTE URSACHE FÜR HANDLUNG

(Hana Hilsenrath persönlichen Schaden)

Kläger Hana Hilsenrath vereinigt jedes von den oberen Absätzen durch Verweisung.

108. Hana Hilsenrath ist eine Mutter von sechs Kindern, 4, von dem Minderjährige ist, und arbeitet außerhalb des Heims nicht.

109. Hana Hilsenrath hat nie Geschäft in oder mit der Schweiz geleitet.

110. Hana Hilsenrath wurde nie direkt oder indirekt von irgendeiner Ungehörigkeit in irgendeiner Rechtsprechung in der Welt beschuldigt.

111. Dennoch haben Angeklagte, die schweizerische Regierung, ihre Vermögenswerte mit nein erklärtem Zweck gefroren.

112. Während ein gesetzliches Ergebnis vom Schweizer friert, und hat Handlungen erzählt, dass sie Angst, Qual, und Krankheit gelitten hat. Sie hat, dass die Struktur und die finanzielle Sicherheit von ihrer Familie gesehen, die von der schweizerischen Handlung bedroht wird, und durch die verleumderische Verleumdung von ihrer Familie.

113. Hana Hilsenrath hat die große Mehrheit von ihrem persönlichen Reichtum verloren. Sie hat allgemeine Schäden in einem Betrag gemäß Beweis gelitten. WESHALB, betet Angeklagter Hana Hilsenrath Erleichterung als Satz fort unten.

SECHSTE URSACHE FÜR HANDLUNG

(Rückgewinnung der Schäden als das Ergebnis des Bruchs von fälligem Verfahren in Übertretung vom 6. Zusatz)SIXTH CAUSE OF ACTION (Recovery of damages as the result of breach of due process in violation of the 6th amendment)

Kläger vereinigen jedes von den oberen Absätzen durch Verweisung.

114. Angeklagte SFAG et Al. hat bewusst Klägerrecht zu fälligem Verfahren entsprechend dem 6. Zusatz von den USA Verfassungen gebrochen.

115. Auf Verordnung der USA föderativen Gerichtshofs und die USA Regierungsangeklagten wurden gedrängt, die ungerecht gefrorenen Vermögenswerte freizugeben, Klägern gesetzliche Darstellung in den USA sowie in der Schweiz zu erlauben.

116. Angeklagter mutig und immer wieder verweigerten Zugriff auf die Fonds von Klägern sogar auf einer partiellen Basis, Rechtsanwälte zu bezahlen.

117. Während in den USA die Verfassung für Selbstdarstellung erlaubt (den der Hilsenraths gemacht hat, friert in Der Schweiz das Schnittekläger ab ihrem Zugriff auf die Gerichtshöfe.

118. Als haben das Ergebnis, Kläger Schäden in einem Betrag gemäß Beweis gelitten. WESHALB, beten Angeklagte Erleichterung als Satz fort unten.

### SIEBTE URSACHE FÜR HANDLUNG

**(Rückgewinnung gesetzlicher Gebühren in Verhältnis zum Schweizer friert)**

Kläger vereinigen jedes von den oberen Absätzen durch Verweisung.

119. Bevor Ausschöpfen ihrer Finanzen, haben sich die Kläger über $650.000 von Gebühren zu Rechtsanwälten in Verbindung zu Angeklagten friert zugezogen.

120. Kläger werden berechtigt, alle gesetzlichen Gebühren zugezogen in Verhältnis zu den Handlungen von Angeklagten wiederzuerlangen.

WESHALB, beten Angeklagte Erleichterung als Satz fort unten.

---

ACHTE URSACHE FÜR HANDLUNG

(Entzug der Kläger das Recht für Freiheit in betr. 5. und 14. Zusatz – Haftbefehl mit keinem fälligen Verfahren und keinen Kosten; die Ausgabe von schweizerischer Regierung von unbekümmerten Interpol Haftbefehlen)

Kläger vereinigen jedes von den oberen Absätzen durch Verweisung.

121. In oder ungefähr April 2005, Angeklagte SFAG haben einen internationalen Haftbefehl für Kläger Oliver Hilsenrath ohne Kosten ausgegeben oder haben sich Gerichtsbeschlüsse angeeignet.

122. 124. Der Haftbefehl wurde durch das Interpol Computer System durch 181 Länder einschließlich der Vereinigten Staaten gesendet. Der Haftbefehl wurde durch die Welt mittels ein Verfahren bessere bekannte als eine „ROTE FAHNE" gesendet.

123. 125. SFAG hat keine gesetzliche Basis gehabt, einen Haftbefehl auszugeben.

124. 126. SFAG hatte keine Kosten dann, und keiner bis dieser genaue Tag, gegen Angeklagten Oliver Hilsenrath abgelegt.

125. 127. Das Heim von Herrn Hilsenrath ist in Kalifornien in der gleichen Stadt, wo der angebliche Schwindel stattgefunden hatte; er lebte mit seiner Ehefrau und 5 von ihren Kindern. Er wurde ungefähr nicht kontaktiert oder hat vom 181-landesweiten Haftbefehl gewarnt.

126. 128. Mehr so, Herr Hilsenrath hat übereingestimmt; nach Der Schweiz mehrere Zeiten zu reisen, und alle Fragen zu beantworten, die der Schweizer in Verhältnis zu seinem Geschäft und tatsächlich gehabt hat, machte so.

127. 129. Daher hat der Schweizer keinen Zweck, anders als gehabt Kläger finanziell, bei der Ausgabe eines Haftbefehls gegen Herrn Hilsenrath zu verletzen.

128. 130. Durch Machen, damit Angeklagter Kläger behindert hat, ihr Geschäft zu leiten, und ein normales Leben zu führen, das als

1    vom 5. und 14. Zusatz von der Verfassung von den Vereinigten
2    Staaten garantiert wird.
3    129. 131. Herr Hilsenrath wurde zurückgehalten und wurde auf mehr
4    als einem Dutzend Anlässen in Flughäfen alle um die Welt,
5    einschließlich hauptsächlich in den Vereinigten Staaten, als
6    der Ergebnis des schweizerischen Interpol Haftbefehl verhört.
7    Er wurde letzten Endes jedes und jedes Mal, als Kommunen
8    freigegeben - überall auf der Welt - Säge reinigt nein Zweck
9    im Schweizer „rote Fahne".
10   130. Oliver Hilsenrath und die Mitglieder von seiner Familie haben
11   zu Hause ununterbrochen Angst und Sorge jedes Mal ein Geschäft
12   gelitten oder Familienmaterie erforderte Reise.
13   131. Kläger haben Schäden in einem Betrag gemäß Beweis gelitten.
14   WESHALB, beten Angeklagte Erleichterung als Satz fort unten.

### NEUNTE URSACHE FÜR HANDLUNG

**(Verlust als das Ergebnis von der gezwungenen Liquidation dem Melanie und dem André Hilsenrath Vertrauen und konstruktivem Vertrauen - 5. Zusatz)**

Kläger vereinigen jedes von den oberen Absätzen durch Verweisung.
132. Während das Ergebnis von der schweizerischen Regierung von den Hilsenrath Vermögenswerten in 8 Ländern friert, Kläger, die zu einer letzten Erholungsliquidation dem Melanie und dem Andre Hilsenrath Vertrauen (die Eltern von Oliver Hilsenrath) gedreht werden.
133. $400.000 war die ganzen gesamten Ersparnisse von Melanie und Andre Hilsenrath. Diese Fonds wurden zu Gehilfen der Hilsenraths Schweizer hat auferlegt finanziellen Kampf, gegen den Wunsch der Großeltern für die Fonds saldiert, für den Vorteil von der Hochschulbildung der Enkelkinder benutzt zu werden.

134. Kläger sind zu Entschädigungen gleicht zu ihrem Verlust des
     Eigentums entsprechend Kalifornien Zivilem Codeabschnitt 3336
     berechtigt.

WESHALB, beten Kläger Erleichterung als Satz fort unten.

## VERURSACHENDEN SCHADEN DURCH BEWUSST FALSCHE AUSSAGEN

135. Zuzüglich der oberen Aktionsverläufe hat Angeklagte
     schweizerischer Bund, SFAG, HOLTKAMP und SAUTEBIN in
     schlechtem Glauben gehandelt und hat klare, beweisbare
     Kenntnis gehabt, die die Behauptungen der Ungehörigkeit gegen
     Kläger falsch und Irreführen waren.

136. Angeklagte haben gekannt oder haben unbekümmert nicht
     beachtet, dass die bewusst falschen und irreführenden Anklagen
     ungünstig das Eigentum der Kläger beeinflusst haben, und haben
     ungünstig ihre Fähigkeit beeinflusst, Geschäft zu leiten,
     kontrollieren ihre Leben und beibehalten ihren guten Namen und
     guten Ruf in ihrer Gemeinschaft.

137. Angeklagte haben bewusst finanziell gehandelt, Kläger zu
     verletzen.

## GEBET FÜR ENTSCHÄDIGUNG

Über diese Klagenkläger betet für Entschädigung folgendermaßen:

138. Dass diese Gerichtsbeschlüsseangeklagten, Kläger 1 zu
     bezahlen, 3, 4, 5, 6 und 7 ein Betrag von nicht weniger als
     $7,3 Millionen – gleicht zu allen ihrem gefrorenen/hat
     verfolgt Fonds.

139. Dass diese Gerichtsbeschlüsseangeklagten weiter, Kläger 2 für
     alle Vermögenswerte zu entschädigen, dass Angeklagte gefroren
     haben, bzw. hat versucht, im Betrag von nicht weniger als $7,3
     Millionen zu frieren.

140. Dass diese Gerichtsbeschlüsseangeklagten weiter, Kläger den
     Bargeldwert der Geschäftsvermögenswerte zu entschädigen, die

1    in den 8 betroffenen Rechtsprechungen saldiert werden, in ein
2    Betrag nicht weniger als von $4,5 Millionen.

141. Dass dieser Gerichtshof weitere Reihenfolgenangeklagte, Kläger
3    für Verlust andauernden Geschäfts in den 8 betroffenen
4    Rechtsprechungen und über hinaus zu entschädigen, in dies
5    drittes Jahr vom friert, in einer Betrag nicht weniger als
6    $5,9 Millionen.

7    142. Dass Hana Hilsenrath weiter von den persönlichen Schäden von
8    Angeklagten gemäß Beweis wiedererlangt.

9    143. Dass Kläger weiter Schäden als das Ergebnis der Angeklagter
10   der Bruch von fälligem Verfahren in Übertretung vom 6. Zusatz,
11   in sowohl den Vereinigten Staaten als der Schweiz, gemäß
     Beweis wiedererlangen.

12   144. Dass Kläger weiter gesetzliche Gebühren zugezogen im
13   Verhältnis zu den Handlungen von Angeklagten gemäß Beweis in
14   ein Betrag nicht weniger als $650.000 wiedererlangen.

15   145. Dass Kläger weiter Schäden wiedererlangen, die vom Bogus von
16   Angeklagten internationale Haftbefehle gemäß Beweis
     resultieren.

17   146. Dass der Gerichtshof weiter Angeklagte anordnet, die Fonds im
18   Melanie und dem Andre Hilsenrath Vertrauen in ein Betrag nicht
19   weniger als $400.000 wiederherzustellen.

20   147. Dass dieser Gerichtshof solche andere und weitere
21   Entschädigung zuerkennt, während es passend erachtet.

22   Datiert: Mai 29, 2007
23
24        Ehrerbietig eingereicht;
25
26
27   Hilsenrath Hana                          [signature]
28   HANA HILSENRATH                          OLIVER HILSENRATH

HILSENRATH V. SWISS CONFEDERATION          -29-