PILLSBURY WINTHROP SHAW PITTMAN LLP
STEPHAN E. BECKER (*pro hac vice* application pending)
   Email: stephan.becker@pillsburylaw.com
2300 N Street N.W.
Washington, D.C. 20037-1122
Telephone:   (202) 663-8277
Facsimile:   (202) 663-8007

PILLSBURY WINTHROP SHAW PITTMAN LLP
SHARON L. O'GRADY (SBN 102356)
   Email: sharon.ogrady@pillsburylaw.com
50 Fremont Street
Post Office Box 7880
San Francisco, CA 94120-7880
Telephone:   (415) 983-1198
Facsimile:   (415) 983-1200

Attorneys for Defendants
THE SWISS CONFEDERATION, THE FEDERAL ATTORNEY GENERAL
OF SWITZERLAND, GERALD SAUTEBIN AND BRENT HOLTKAMP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| OLIVER HILSENRATH, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> THE SWISS CONFEDERATION, THE FEDERAL ATTORNEY GENERAL OF SWITZERLAND, GERARD SAUTEBIN, BRENT HOLTKAMP, <br><br> Defendants. | Case No. C-07-2782-WHA <br><br> E-Filing <br><br> DECLARATION OF DIETER CAVALLERI IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS COMPLAINT (FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1), (2), AND (6)) <br><br> Date:        September 13, 2007 <br> Time:        8:00 a.m. <br> Courtroom: 9, 19th Floor <br> Judge:       The Hon. William H. Alsup |

I, <u>DIETER CAVALLERI</u>, declare as follows:

1. I am Head of Section for International Law of the Directorate of International Law within the Swiss Federal Department of Foreign Affairs in Berne, Switzerland. I have been in that position since Mai 2007, after having been Deputy Head of this Section since June 2006. I have been an employee of the Federal Department of Foreign Affairs since April 1997. In my current position, I am responsible for, among other things, determining and formulating the positions of the Department of Foreign Affairs on issues of international law, in consultation with other officials of the Department of Foreign Affairs and other Departments. I have personal knowledge of the facts set forth herein and, if called as a witness, would and could competently testify to the truth thereof.

2. Attached hereto as Exhibit 1 is a true and correct copy of a diplomatic note delivered to the Government of Switzerland by the Government of the United States in 1999. The note discusses a lawsuit initiated in Switzerland against the Government of the United States by an individual concerning an employment dispute. The second paragraph of the note states: "Customary international law provides that before a foreign sovereign may be required to appear before the courts of the receiving state, proper notice of the suit must be provided through diplomatic channels ...." I have consulted with other officials of the Swiss Ministry of Foreign Affairs and reviewed past Swiss practice with regard to this issue, and I confirm that the Government of Switzerland shares the view of the United States that international law requires that notice of a lawsuit against a foreign sovereign must be provided through diplomatic channels.

3. I also confirm that it is the view of the Swiss Government that although Switzerland will not accept service on the Government by an individual under the The Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (The Hague Convention), the Convention does not exclude service through diplomatic channels. Indeed, according the Practical Handbook on the Operation of the Hague Service Convention published by the

1   Hague Conference on Private International Law, Article 9 allows service through
2   diplomatic channels in extraordinary circumstances, and any accusation against a state
3   acting "de jure imperii" is considered to be such an extraordinary circumstance. The
4   pertinent excerpt from the Handbook is attached as Exhibit 2.
5       I declare under penalty of perjury under the laws of the United States that the
6   foregoing is true and correct.
7       Executed this 3rd day of August, 2007, at Bern, Switzerland.

*[Signature]*

Dieter Cavalleri

# EXHIBIT 1

The Department of State refers to the October 4, 1999 diplomatic note from the Embassy of Switzerland that transmitted to the Department documents from the Court of Industrial Arbitration of the Republic and Canton of Geneva, Switzerland, regarding the labor dispute of <u>Anne Margret Kuchen v. United States of America</u> (Ref. NA/2702/1999). One of the documents included with the Embassy's note is a summons for an appearance before the Court of Industrial Arbitration on November 4, 1999.

Customary international law provides that before a foreign sovereign may be required to appear before the courts of the receiving state, proper notice of the suit must be provided though diplomatic channels, providing at least sixty days before an appearance or responsive pleading is required, in order to provide the diplomatic mission time to hire legal counsel, obtain instructions, and prepare a defense. As the Embassy's note was received on October 4, 1999, the United States was provided less than sixty-days notice of the November 4, 1999 hearing. Therefore, the timing of service was defective.

- 2 -

The Department of State requests that the Embassy of Switzerland return the enclosed documents to the Court of Industrial Arbitration of the Republic and Canton of Geneva, Switzerland, and to inform the Court of the proper method of service on a foreign sovereign.

Enclosure:
    As stated.

Department of State,
    Washington,

# EXHIBIT 2

# Practical Handbook on the Operation of the Hague Service Convention

**Permanent Bureau of the Hague Conference on Private International Law**






W&L — WILSON & LAFLEUR

HccH — HAGUE CONFERENCE ON PRIVATE INTERNATIONAL LAW / CONFÉRENCE DE LA HAYE DE DROIT INTERNATIONAL PRIVÉ

©Hague Conference – Permanent Bureau, 2006
Published by *Wilson & Lafleur Ltée*, Montreal, 2006
All rights reserved
National Library of Québec
National Library of Canada
Legal Deposit : 1st trimester 2006
ISBN 2-89127-751-1

*d)   Indirect diplomatic channels (the "exceptional circumstances" under Art. 9(2))*

193. Indirect diplomatic channels may only be used if exceptional circumstances so require (Art. 9(2)). One example of such exceptional circumstances is service of a claim on a foreign sovereign State.[246, 247]

194. It is worth recalling that at the Special Commission meeting held in November 1977, the opinion among the experts was divided as to the usefulness of the indirect diplomatic channels: while some considered that these channels could expedite transmission, others stressed that they caused substantial delay.

C.   Postal channels (Art. 10(a))

195. Under Article 10(a), "provided the State of destination does not object, the present Convention shall not interfere with the freedom to send judicial documents, by postal channels, directly to persons abroad".

*a)   The notion of "postal channel"*

196. First, it is important to note the specific characteristic of the postal channel: if all the relevant conditions are fulfilled, transmission of the documents through postal channels includes service of process upon the addressee (the criteria of regularity of postal channels under the Convention are examined in paras. 202 *et seq.*).[248]

197. The Convention does not describe what exactly the postal channel consists of. This channel certainly covers sending the document by *letter post*, *certified mail* and *registered deliveries* within the meaning of the Conventions of the Universal Postal Union.[249] *Telegrams* and *telex* are also to be treated as postal channels, even though it is difficult to imagine their frequent use in practice. *Fax* and *e-mail* are more up-to-date and also more common. These means of communication have the undoubted advantage of speed, but may not yet offer all the security required. The issue of

---

[246]   T. Bischof, *op. cit.* (footnote 11), p. 247, note 45.

[247]   In the **United States**, under the foreign Sovereign Immunities Act, when the request for service has been refused by the Central Authority of the requested State under Art. 13, a diplomatic note is sent and the service is deemed to have occurred at the time the note is delivered, whether or not it is accepted.

[248]   Thus, within the Convention system, the postal channel is an exception, as the Convention primarily deals with the *transmission* of documents. In the case of a transmission through the main channel (Central Authority), the service of the documents is not governed by the Convention but rather by the law of the requested State; in the case of a transmission through one of the alternative channels (other than the postal channel and the direct diplomatic and consular channels (see paras. 189 *et seq.*)), service of the documents is governed by the law of the State of destination. Service of process is also addressed in Arts. 15 and 16 (see paras. 274 *et seq.*).

[249]   The Conventions adopted by the Universal Postal Union are revised on a regular basis. The most recent version of the Universal Postal Convention is the one signed in Bucharest in 2004 and which entered into force on 1 January 2006. On the Universal Postal Conventions, see also paras 259 and 260.