1 HANA HILSENRATH
OLIVER HILSENRATH
2 822 Eastbrook Court
Danville, CA 94506
3 Telephone: 925 212 6299
Facsimile: 925 736 7571
4 ohlx@sbcglobal.net

5 <u>PLAINTIFFS *IN PRO PER*</u>

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HANA HILSENRATH, OLIVER HILSENRATH, et al<br><br>Plaintiffs,<br><br>v.<br><br>THE SWISS CONFEDERATION, THE FEDERAL ATTORNEY GENERAL OF SWITZERLAND, GERARD SAUTEBIN, BRENT HOLTKAMP, AND DOES 1-10,<br><br>Defendants. | Case No. C-07-2782 WHA<br><br>**MEMORANDUM IN OPPOSITION OF DEFENDANTS' MOTION TO DISMISS ON GROUNDS OF INSUFFICIENT SERVICE AND LACK OF JURISDICTION**<br><br>Judge: Hon. William H. Alsup<br>Time: October 25, 2007; 14:00<br>Place: Courtroom 9, 19th Floor |

# TABLE OF CONTENTS

**INTRODUCTION PP 3**

**SUMMARY OF ARGUMENTS AGAINST DEFENDANTS' MOTION PP 3**

**SERVICE PP 5**

**JURISDICTION PP 6**

    **Immunity – discretion of the court PP 6**

    **Waiver of immunity by service of process on plaintiffs in the US PP 8**

    **No immunity for unlawful conduct – Hickenlooper amendment PP 8**

    **Holtkamp order – a summary of defendants' unlawful acts PP 10**

    **No immunity for Piracy – acts of taking in third countries PP 12**

    **No intervention of the executive branch and no conflict between judiciary and executive branches PP 12**

    **Peremptory norm *(jus cogens)* PP 13**

**CONCLUSION PP 15**

*//EXHIBITS SEE SEPARATE HILSENRATH DECLARATION//*

**INTRODUCTION**

This current complaint was filed on May 29 2007 *in pro per* by plaintiffs Hana and Oliver Hilsenrath, US citizens and residents of the state of California, as the result of defendants' 3rd year freeze of plaintiffs' assets, turning hired legal representation inaccessible.

Defendants traced, froze, sold off and confiscated Plaintiffs assets in 8 jurisdictions with no warrant, no adjudication and no due process.

In their initial response to the complaint defendant's counsel stated that this court has no jurisdiction over defendants because:

1. They were never served;
2. They are protected by foreign government immunity;
3. They destroyed plaintiffs property as part of a criminal investigation of violations of Swiss law;
4. The US constitution does not apply to them. The 4th, 5th, 6th amendments: the right to property, the right to due process does not apply to Switzerland;
5. Defendants have also stated that they do not have sufficient contacts to the State of California.

**SUMMARY OF ARGUMENTS AGAINST DEFENDANTS' MOTION**

The Court should reject defendants' motion and should conclude that this court has jurisdiction over the subject and the defendants for the following reasons:

1. Defendants waived their sovereign immunity with respect to this action because defendant deliberately involved the United States in its persecution of plaintiffs via a letter serving them with process.
2. Service of process on defendants was proper and confirmed. Both the Central Authority and the Swiss ambassador wrote to Plaintiffs to complain about being sued. That very correspondence constitutes notice and proper service.
3. A person or state is not "born" with government immunity. It is the District Court's discretion to award such immunity. The Court however can only award such immunity for lawful conduct. The current complaint deals with unlawful conduct of the defendants therefore immunity cannot be awarded. Defendants' unlawful acts are in breach of US and of International law.

4. As will be shown, defendants misrepresent that they were conducting an investigation of violations of Swiss law. In fact they were hoping to reap the financial fruits of suspected criminal conduct on US soil. When plaintiffs' funds were cleared of suspicions, defendants angrily forfeited the assets for themselves. This violates the very concept of international treaty, deference to each other's legal system and to judgments in each other's courts. Defendants repeatedly denied Plaintiffs' access to legal assistance in Switzerland and elsewhere, rendering the *pro se* litigation in the United States the only option to seek redress. Defendants therefore have only one shot at justice, in this Court, by virtue of (1) being US citizens and by virtue of (2) being Israeli citizens[1].

5. While the 4th, 5th and 6th amendment might not apply in Switzerland *per se*, the right to due process, the right to property and the right to personal liberty apply everywhere by virtue of international law.

6. Defendants have had ample contact with the US and specifically with California. Defendants investigated acts entirely occurred on US soil. Defendants have solicited tens of thousands of pages of discovery; have visited California and other locations in the US to conduct interviews in furtherance of their improper acts. Furthermore, by means of Swiss government instrumentalities – the Swiss banks involved in this case- operating in the United States, the Swiss government steadily avails itself significantly to the US and the federal regulators.

7. Jurisdiction is favored in cases in which the executive branch has an interest in the adjudication. The government exhibited its interest in dozens of orders and written petitions to defendants to release the confiscated assets. More so, defendants unrestrained and unusual defamation of the US government, in defendants recent summary order, presents a clear need for the government to favor an orderly judicial process in this jurisdiction.

---

[1] Plaintiffs are citizens of Israel and residents of Israel. Defendants arrived to this jurisdiction at the behest of this Court and at the behest of the US government in 2004 to defend a criminal action brought against them by the US government. As citizens and residents of Israel, Plaintiffs can also seek jurisdiction over Defendants in this action by virtue of the Alien Tort Claims Act (ATCA), 28 U.S.C.S. § 1350, alleging that they or their family members were the victims of numerous violations of international law by Defendants Swiss government. **See Sarei v. Rio Tinto, PLC, 456 F.3d 1069, 2006 U.S. App. LEXIS 20174 (9th Cir. Cal., 2006) and also 487 F.3d 1193; 2007 U.S. App. LEXIS 8430, San Francisco, California April 12, 2007, Decided.**

8. And finally, if this case will not be adjudicated in this Court then it will not be adjudicated at all. Leaving justice undone, and harm unheeded. Immunity and treaties were not conceived to promote unlawfulness.

## SERVICE

Defendants raise a number of objections to the service of process. The court should reject them all as incorrect, insubstantial and contrary to the very principle of service of process: providing notice.

Common law favors substance over form in matters of service of process. It is clear that defendants received the complaint. Defendants had ample time to respond above the 60 days requirement.

> **Nanya Tech. Corp. v. Fujitsu, Ltd., 2007 U.S. Dist. LEXIS 5754** We should not lose sight of what **service of process** is about, it is about giving a party notice of the pendency of an action and the opportunity to respond. *Rio Props., Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1017 (9th Cir. 2002). All that is required under Rule 4(f)(3) is that service be "directed by the court" and that the means of service "not be prohibited by international agreement [the Hague Convention]." FED.R.CIV.P. 4(f)(3).

Further, the court should not consider dismissal for insufficient service unless prejudice occurred to the defendant. Clearly, no such prejudice occurred.

> This Court has held that "[d]ismissal for insufficient service of process is not warranted . . . where plaintiffs are not culpable and there has been no indication of prejudice to the defendant." *In re Bulk [Extruded] Graphite Prods. Antitrust Litig.,* 2006 U.S. Dist. LEXIS 45762, *13-14 (D.N.J. Apr. 24, 2006) (citing 5A Wright & Miller, Federal Practice & Procedure § 1353 at 342 (3d ed. 2005)).

Plaintiffs served defendants with service documentation according by means of the US Marshals' form USM-94 [Exhibit A]. Defendants are objecting that Plaintiffs themselves have signed the form. However the US marshals have delegated that authority to the Plaintiff. The court is authorized, if it deems necessary, to order the Marshals to execute that form pursuant to 28 U.S.C. &sect; 1915 or 1916 [Exhibit B].

In defendant's declaration see declaration Cavalieri [Exhibit C] pp 69 sub 247, a refusal by the Central Authority to serve papers is deemed as completed service:

> "In the United Sates, under foreign Sovereign Immunity Act, when the request for service has been refused by the central authority of the requested State under Art 13, a diplomatic note is sent and the service is deemed to have occurred at the time the note is delivered, whether or not it is accepted."

Such note of refusal of service was received by plaintiffs and filed with the court (Doc 11) from the Swiss ambassador in Washington DC [Exhibit D] stating:

> "Upon further review, the Central Authority has also determined that even if the request were resubmitted in a proper manner, Switzerland would not be able to accede to it pursuant to Article 13 of the Hague Service Convention, because compliance would infringe upon Swiss sovereignty and security."

As will be further discussed, an assertion of immunity cannot be made by a central authority a priori to litigation. Immunity is not an intrinsic right but rather one that is at the discretion of the District Court and subject in itself to litigation.

Nevertheless, based on defendant's own citation of law, the refusal to serve invoking Article 13 is in itself an event that constitutes proper service.

## JURISDICTION

Defendants simply state that they are a sovereign, that they conducted a criminal investigation and therefore are immune with respect to any action brought against them in this jurisdiction. Defendants' arguments fail and the court should reject their assertion of immunity.

## Immunity – discretion of the court

Immunity is not a self-understood right simply invoked and granted to a sovereign.

> **West v. Multibanco Comermex, S.A., 807 F.2d 820:** Sovereign immunity is determined not only by the character of the actor, but also by the nature of the act. A foreign state is not immune from the exercise of jurisdiction in a case in which rights in property taken in violation of international law are in issue. 28 U.S.C.S. § 1605(a)(3).

Immunity is not a constitutional right but rests on considerations by the court. Thus the court should assess on the merits of Plaintiffs' action.

> **Kalamazoo Spice Extraction Co. v. Provisional Military Govern..., 616 F. Supp. 660:** When factual issues are determinative of both the jurisdictional question and the merits, as here, a court must assert jurisdiction unless the claim is insubstantial or frivolous. *Bell v. Hood*, 327 U.S. 678, 90 L. Ed. 939, 66 S. Ct. 773 (1946); *Odom v. Slavik*, 703 F.2d 212, 216 (6th Cir. 1983). [6] KAL-SPICE's claims are neither insubstantial nor frivolous. Because plaintiff has made a substantial allegation of a violation of international law, the Court must assert jurisdiction.

The Court should assess the nature of the conduct rather than the status of the actor:

> **Joseph v. Office of Consulate Gen., 830 F.2d 1018,** Pursuant to *Varig*, a two-pronged test has been developed for determining whether the discretionary function exception applies in FTCA cases. First, the court must examine "'the nature of the conduct, rather than the status of the actor.'" *Begay*, 768 F.2d at 1064 (quoting *Varig*, 467 U.S. at 813).

A sovereign cannot successfully invoke immunity in the United States upon acts that are in violation of the law: the constitution and international law.

> **First Nat'l City Bank v. Banco Nacional de Cuba, 406 U.S. 759** Where no conflict between the roles of the judiciary and the political branches of the government is shown to exist, then the federal courts have a duty to determine and apply the applicable international law in cases in which the underlying issue is the validity of expropriation under customary international law.
> The act of state doctrine is not designed entirely, nor perhaps even primarily, to avoid embarrassment to the political branches of government.

In a case such as the present case of "taking in violation of international law" there are no limitation on a court's exercise of jurisdiction to sovereigns that were involved in the initial taking, and no such limitation should be implied.

> **Cassirer v. Kingdom of Spain, 461 F. Supp. 2d 1157.** The language of 28 U.S.C.S. § 1605(a)(3) "taken in violation of international law" contains no limitation on a court's exercise of jurisdiction to sovereigns that were involved in the initial taking, and no such limitation should be implied. Foreign Sovereign Immunity Act cases have examined the meaning of the phrase "property taken in violation of international law" and have held that if a taking violates any one of the following proscriptions, it violates

international law. These proscriptions include injury resulting from: (1) a taking by the state of the property of a national of another state that: (a) is not for a public purpose, or (b) is discriminatory, or (c) is not accompanied by provision for just compensation.

## **Waiver of immunity by service of process on plaintiffs in the US**

On August 27, 2007 The Swiss Confederation served Plaintiffs with an appealable order in the matter of its so-called criminal action against Plaintiffs via the US department of Justice/ Criminal Division [see Holtkamp order and service papers in Exhibit H]

> **Siderman de Blake v. Republic of Argentina, 965 F.2d 699 (brought in its entirety in Exhibit K)**
>
> Defendant waived its sovereign immunity with respect to those claims because defendant deliberately involved United States courts in its persecution of plaintiffs via a letter serving them with process.
>
> To support a finding of implied waiver, there must exist a direct connection between the sovereign's activities in our courts and the plaintiff's claims for relief

## **No immunity for unlawful conduct – Hickenlooper amendment**

The Hickenlooper amendment, as ratified by Congress, states that a sovereign cannot enjoy Immunity for acts that are in violation of international law.

Defendants state in their motion that they are not obligated by the 4th, the 5th and the 6th amendment of the constitution. This is not only a surprising statement but also a disingenuous one.

The 4th, 5th and 6th amendment of the constitution stand *inter alia* for the rights to property, to liberty, to due process and the right to one's good name. These rights are significantly supported by international law as substantiated in summary in Exhibit E and brought in full text in Exhibits F and G.

Defendants' acts in violation of the above clauses of international law represent clear basis of waiver of their immunity and thus support granting jurisdiction over defendants in this case pursuant to the Hickenlooper amendment.

**22 U.S.C.A. § 2370 Re: "The Hickenlooper Amendment"**

**(2)** Notwithstanding any other provision of law, no court in the United States shall decline on the ground of the federal act of state doctrine to make a determination on the merits giving effect to the principles of international law in a case in which a claim of title or other right to property is asserted by any party including a foreign state (or a party claiming through such state) based upon (or traced through) a confiscation or other taking after January 1, 1959, by an act of that state in violation of the principles of international law, including the principles of compensation and the other standards set out in this subsection:

The amendment generally provides that no U.S. court shall decline to decide a case on the basis of the act of state doctrine, provided several conditions are present.

The American Law Institute summarizes the amendment, as interpreted by the courts, as follows: "In the absence of a Presidential determination to the contrary, the act of state doctrine will not be applied in a case involving a claim of title or other right to property, when the claim is based on the assertion that a foreign state confiscated the property in violation of international law."

First, the amendment states that no court shall decline to give "effect to principles of international law"

Second, the case must involve a claim of title or right to property. Third, the claim must be based upon a confiscation after January 1, 1959. Fourth, the confiscation must be by an act of the foreign state. Fifth, the act must be a true "confiscation" in violation of international law.

**Restat 3d of the Foreign Relations Law of the U.S., § 444**

*Consideration of international law under the Hickenlooper Amendment.* The Second Hickenlooper Amendment requires consideration of "principles of international law" for two purposes. First, the statutory exception to the act of state doctrine is applicable only when a claim to property is based on an assertion that a foreign state has confiscated or otherwise taken the property in violation of the principles of international law; second, if the amendment is applicable, the courts are required to make determinations on the merits giving effect to principles of international law

The First Hickenlooper Amendment defined these obligations to include speedy compensation in convertible foreign exchange equivalent to the full value of the property taken.

    d. *The Hickenlooper Amendments and sovereign immunity.* Under Section 1605(a)(3) of the Foreign Sovereign Immunities Act, a state is not immune from jurisdiction of courts in the United States to adjudicate claims with respect to property in the United States taken in violation of international law. See § 455(3) and Comment *c*. In adjudicating actions under that section of the Act, courts are required to determine whether a violation of international law has occurred, but are not directed to any specific standard. If the act of state doctrine is raised in an action brought under

> Section 1605(a)(3), the court may be required to determine compliance with international law for that purpose as well
>
> *Rationale of the Amendment.* The Second Hickenlooper Amendment reflects on the one hand dissatisfaction of Congress with the decision in the *Sabbatino* case, and on the other hand reluctance to subject all claims arising out of acts of foreign states to adjudication in the United States. The compromise, as defined by the Amendment and judicial decisions (Reporters' Note 4), was to limit the scope of the Amendment (i) to claims arising out of expropriations in violation of international law

## **Holtkamp order – a summary of defendants' unlawful acts.**

While Plaintiffs' complaint describes an ample unfolding of unlawful conduct by defendants, here comes a recent statement by defendant Holtkamp [Exhibit H] to substantiate, consolidate and clearly describe defendants' illegal conduct.

Albeit Swiss government officials have criticized Holtkmaps' so-called order, none of those Swiss officials took any action to curb or correct the on-going violation of international law.

By their tacit adoption of Holtkamp's so-called order all defendants share the responsibility to above conduct.

THE HOLTKAMP ORDER [Exhibit H] states the following:

1. HOLTKAMP states that he investigated Plaintiff Oliver Hilsenrath for 3 years but was unable to bring any charges in Swiss Court;
2. HOLTKAMP states that defendants blame the US government for *de facto* sabotaging his above investigation;
3. HOLTKAMP states that defendants blame Plaintiff Oliver Hilsenrath for not "sufficiently impeaching himself" to facilitate charges in Switzerland;
4. HOLTKAMP states, nevertheless, that he orders – effective 10 days from service of his order - to confiscate all Plaintiffs' assets in Switzerland in order to cover the cost of his botched investigation;
5. HOLTKAMP states that defendants "invite" the US government to "participate" in the confiscation-spree by taking Plaintiffs' and business partners' assets in other European countries – also effective 10 days from service of his order.

6. HOLTKAMP states that defendants will maintain an open-ended criminal action against Plaintiff Oliver Hilsenrath and alerts of an (unclear) open-ended warrant for his arrest.

Defendants' HOLTKAMP ORDER is therefore in breach of US and international law in multiple ways:

1. Defendants are ordering unlawful confiscation without adjudication, and without even the existence of charges;
2. Defendants order re-adjudication of already adjudicated and concluded matters in the US District Court in violation of the Treaty's principle of comity. All legal matters in Holtkamp's order have occurred in the US and were concluded under US law.
3. Defendants are ordering an unlawful open-ended criminal action against Plaintiffs to include a continuous threat of arrest at will, with no cause or charges - in violation of the unanimously adopted right to due process, speedy adjudication and conclusion of legal actions, and in violation of basic liberty.
4. Defendants disseminate to multiple foreign countries a libelous document targeted to defame Plaintiffs, their business partners, and mostly the US Executive Branch itself.
5. Defendants are maintaining a torturous act and expending its duration indefinitely.

VIOLATIONS OF CONSTITUTIONAL AND INTERNATIONAL LAW BY DEFENDANTS' ORDER

Plaintiffs' constitutional rights are violated. Each violation of constitutional rights is paralleled by a violation of international law:

1. The right to liberty and property as protected by the 5th amendment
2. The right to due process as protected by the 5th and 6th amendment
3. The right to a speedy adjudication as protected by the 6th amendment
   These constitutional rights are unanimously upheld by international law.

Exhibit E, F and G outline the confirmation of the abovementioned rights by international law in:

- The *American Convention on Human Rights -- Signed at the Inter-American Specialized Conference on Human Rights* [brought entirely in Exhibit F]

    and

- The *Universal Declaration of Human Rights -- Signed at the United Nations' General Assembly* [brought entirely in Exhibit G]

## No immunity for Piracy – acts of taking in third countries

The Holtkamp so-called order [Exhibit H] indicates that defendants executed taking of assets beyond Swiss jurisdiction, *inter alia* in Belgium and Poland.

It is clear from [Exhibit H] that defendant's have gained full control and ability to distribute the assets in third countries at their free will and in violation of Plaintiffs' legitimate right to their assets.

Defendants cannot claim immunity for unlawful acts of taking in jurisdictions not governed by Swiss law.

> **Allied Bank International v. Banco Credito Agricola de Cartago, 757 F.2d 516**: Acts of foreign governments purporting to have extraterritorial effect and consequently, by definition, falling outside the scope of the act of state doctrine should be recognized by the courts only if they are consistent with the law and policy of the United States.
> * * *
> The act of state doctrine does not bar inquiry by the courts into the validity of extraterritorial takings

## No intervention of the executive branch and no conflict between judiciary and executive branches

The executive branch did not request the judiciary to apply state immunity to protect the state's interest. Further, the executive branch invested significant efforts to curb and overcome defendants' violations of Plaintiffs' rights.

More so, there was at no point disagreement between the government and this Court as to the need to stop defendant's abuse of property and rights. This is evidenced by this Court's orders [Doc 302 and Doc 309 in case 03-00213WHA - Exhibits I and J] issued at the request of the US government; and also ample correspondence as presented in the complaint itself.

**Peremptory norm** *(jus cogens)*

Plaintiffs' complaint describes the unfolding of remarkably abusive measures, unlawfully taken by the Swiss authorities, against a family of 8, through ample use of International Law and the Treaty with the United States.

Defendants have breached every acceptable norm of deference to the US government and US Courts by using their assistance and subsequently abusing the written and unwritten rules of comity. The rules of comity call for acceptance of matters adjudicated and concluded in the US District Court.

In defiance of the good faith of the Treaty, junior level Swiss government employees repeatedly second-guessed orders of the District Court on matters of US law, in bold and disrespectful ways.

The August 27, 2007 order drafted and served on Plaintiffs by Swiss Federal attorney Brent Holtkamp flashes out the bestiality of defendants' conduct. In a disarray of vitriolic statements defendant Holtkamp and the Swiss government display conduct in breach of the peremptory norm, the *jus cogens* norm, of international law.

Inhumane acts are universally recognized beyond physical torture.

Defendants' conduct is inhumane.

Defendants abused, repossessed and confiscated Plaintiffs assets without a legal basis or due process.

Defendants have knowingly hindered Plaintiffs from conducting a normal life.

Defendants prevented Plaintiffs' access to their assets by an unlawful series of changing tactics.

The objective of Defendants' unlawful acts were to obstruct Plaintiffs' ability to hire legal assistance to defend the action brought against them initially by the US government.

Through their acts, defendants aimed to illegally, and ultimately unsuccessfully, "lead" Plaintiffs into a possible lifetime jail sentence in the United States and by that destroy the lives of 8 family members.

Defendants acted by means of knowingly bogus impeachment, bogus and erratic arrest warrants and bogus financial retaliation.

While the acts in **Siderman de Blake v. Republic of Argentina, 965 F.2d 699** occurred in Argentina of the 1980's and were subsequently adjudicated in the 9th Circuit Appeal Court, the unfolding and motives draw a close parallel to the events in this current case (See also Exhibit K).

> **Siderman de Blake v. Republic of Argentina, 965 F.2d 699**
> The right to be free from official torture is fundamental and universal, a right deserving of the highest status under international law, a norm of jus cogens
>
> As defined in the Vienna Convention on the Law of Treaties, a jus cogens norm, also known as a "peremptory norm" of international law, is a norm accepted and recognized by the international community of states as a whole as a norm from which no derogation is permitted and which can be modified only by a subsequent norm of general international law having the same character. Vienna Convention on the Law of Treaties, art. 53, May 23, 1969, 8 I.L.M. 679, 1155 U.N.T.S. 332. Jus cogens is related to customary international law (the direct descendant of the law of nations), which the Restatement defines as the general and consistent practice of states followed by them from a sense of legal obligation. Courts ascertain customary international law by consulting the works of jurists, writing professedly on public law; or by the general usage and practice of nations; or by judicial decisions recognizing and enforcing that law
>
> Jus cogens embraces customary laws considered binding on all nations and is derived from values taken to be fundamental by the international community, rather than from the fortuitous or self-interested choices of nations. Whereas customary international law derives solely from the consent of states, the fundamental and universal norms constituting jus cogens transcend such consent. These norms, which include principles and rules concerning the basic rights of the human person, are the concern of all states; they are obligations erga omnes
>
> The universal and fundamental rights of human beings identified by Nuremberg - rights against genocide, enslavement, and other inhumane acts - are the direct ancestors of the universal and fundamental norms recognized as jus cogens. These norms, which include principles and rules concerning the basic rights of the human person, are the concern of all states; they are obligations erga omnes
>
> Because jus cogens norms do not depend solely on the consent of states for their binding force, they enjoy the highest status within international law. The supremacy of jus cogens extends over all rules of international law; norms that have attained the status of jus cogens prevail over and invalidate international agreements and other rules of international law in conflict with them. A jus cogens norm is subject to modification or derogation only by a subsequent jus cogens norm.

## CONCLUSION

For all the above reasons, this Court should deem defendants properly served, uphold the Court's jurisdiction on this case, and deny defendants' motion to dismiss.

Clearly, without the ability to litigate this case in the present jurisdiction, in which all the pertinent events occurred, Plaintiffs will be left with an indefinite international arrest warrant, indefinite jeopardy to their assets, to their ability to earn a living and to maintain a good name free of unlawful tarnish.

All the above are rights granted by the United States' Constitution, by International Law and by that Law of Any Civilized Land.

Upon significant research, Plaintiffs hereby state that they have found no precedent in the 21st century, in the Western World, of a legal order by a sovereign state similar to the "Holtkamp Order" [Exhibit H], paraphrased:

> 'We, the Swiss government, investigated you for 3 years, but could not find grounds to charge you.
> To save face however, we have confiscating your assets anyway, without a legal base.
> As further punishment for embarrassing us, we will also arrest you at will, whenever we can lay hands on you - anywhere and anytime - without the need for legal grounds.'

Dated: September 27, 2007

Respectfully submitted,

HANA HILSENRATH

Plaintiff *PRO SE*

_/s/ Hana Hilsenrath_

OLIVER HILSENRATH

Plaintiff *PRO SE*

_/s/ Oliver Hilsenrath_