1  PILLSBURY WINTHROP SHAW PITTMAN LLP
   STEPHAN E. BECKER (admitted *pro hac vice*)
2    Email: Stephan.becker@pillsburylaw.com
   2300 N Street N.W.
3  Washington, D.C. 20037-1122
   Telephone: 202.663.8277
4  Facsimile: 202.663.8007

5  PILLSBURY WINTHROP SHAW PITTMAN LLP
   SHARON L. O'GRADY (SBN 102356)
6    Email: sharon.ogrady@pillsburylaw.com
   50 Fremont
7  Post Office Box 7880
   San Francisco, CA 94120-7880
8  Telephone: 415.983.1198
   Facsimile: 415.983.1200
9
   Attorneys for Defendants
10 The Swiss Confederation, The Federal Attorney General
   of Switzerland, Gerald Sautebin and Brent Holtkamp
11

12                  UNITED STATES DISTRICT COURT

13                  NORTHERN DISTRICT OF CALIFORNIA

14                      SAN FRANCISCO DIVISION

15

| | |
|---|---|
| 16  OLIVER HILSENRATH, ET AL. | No. C-07-2782-WHA |
| 17           Plaintiffs, | |
| 18       v. | REPLY OF DEFENDANTS THE SWISS CONFEDERATION, THE FEDERAL ATTORNEY GENERAL OF SWITZERLAND, GERARD SAUTEBIN, BRENT HOLTKAMP TO OPPOSITION OF PLAINTIFFS TO MOTION TO DISMISS COMPLAINT (FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1),(2), AND (6)) |
| 19 | |
| 20  THE SWISS CONFEDERATION, THE FEDERAL ATTORNEY GENERAL OF SWITZERLAND, GERARD SAUTEBIN, BRENT HOLTKAMP, | |
| 21 | |
| 22           Defendants. | |
| 23 | Date:    October 25, 2007<br>Time:    2:00 p.m.<br>Honorable William Alsup |
| 24 | |
| 25 | Filed herewith:<br>1.   Request for Judicial Notice |
| 26 | |

27

28

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION. ...................................................................................................1

II. SERVICE HAS NOT PROPERLY BEEN EXECUTED ON THE
    DEFENDANTS. .......................................................................................................1

III. THE FSIA REQUIRES DISMISSAL OF THIS SUIT. ............................................3

    A. There Has Been No Implied Waiver of Immunity ...........................................4

    B. There Has Been No Expropriation Involving Assets In The
       United States Or In Violation Of International Law ........................................5

    C. Alleged General Violations Of International Law Cannot
       Establish Jurisdiction Over A Foreign Government ........................................8

IV. THE ACTIONS OF THE SWISS DEFENDANTS WERE ACTS OF
    STATE ENTITLED TO DEFERENCE. ..................................................................9

V.  PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR WHICH
    RELIEF CAN BE GRANTED ...............................................................................11

VI. CONCLUSION. .....................................................................................................11

| | |
|---|---|
| 1 | **TABLE OF AUTHORITIES** |
| 2 | **Cases** |

Allied Bank International v. Banco Credito Agricola de Cartago,
 757 F.2d 516 (2d Cir. 1985) ................................................................................ 10

Argentine Republic v. Amerada Hess Shipping Corp.,
 488 U.S. 428 (1989) ............................................................................................. 3

Blaxland v. Commonwealth Director of Public Prosecutions,
 323 F.3d 1198 (9th Cir. 2003) .......................................................................... 4, 5

Cassirer v. Kingdom of Spain,
 461 F. Supp. 2d 1157 (C.D. Cal. 2006) ............................................................ 5, 6

Chuidian v. Philippine Nat'l Bank,
 912 F.2d 1095 (9th Cir. 1990) ............................................................................. 3

Compania de Gas de Nuevo Laredo, S.A. v. Entex, Inc.,
 686 F.2d 322 (5th Cir. 1982) ............................................................................... 9

Credit Suisse v. United States District Court,
 130 F.3d 1342 (9th Cir. 1997) ........................................................................... 10

Empresa Cubana Exportadora De Azucar y Sus Derivados v. Lamborn & Co.,
 652 F.2d 231 (2d Cir. 1981) ................................................................................ 9

Lord Day & Lord, Barrett Smith v. Socialist Republic of Vietnam,
 134 F. Supp.2d 549 (S.D.N.Y. 2001) .................................................................. 6

Nanya Tech. Corp. v. Fujitsu, Ltd.,
 2007 U.S. Dist. LEXIS 5754 (D.C. Guam Jan. 26, 2007) ................................... 2

Nemariam v. Ethiopia,
 491 F.3d 470 (D.C. Cir. 2007) ............................................................................. 6

Randolph v. Budget Rent-A-Car,
 97 F.3d 319 (9th Cir. 1996) ................................................................................. 3

Security Pac. Nat'l Bank v. Derderian,
 872 F.2d 281 (9th Cir. 1989) ............................................................................... 3

Siderman de Blake v. Republic of Argentina, 965 F.2d 699 (9th Cir. 1992),
 cert. denied, 507 U.S. 1017 (1993) .............................................................. 3, 4, 9

Straub v. Green, 38 F.3d 448
 (9th Cir. 1994) ..................................................................................................... 2

Verlinden B.V. v. Central Bank of Nigeria,
 461 U.S. 493 (1983) ............................................................................................. 9

West v. Multibanco Comermex, S.A.,
 807 F.2d 820 (9th Cir. 1987) ............................................................................. 10

**Statutes and Codes**

United States Code
    Title 22, section 2370(e)(2) .................................................................................... 9

United States Code
    Title 28, section 1330(b) ........................................................................................... 1

United States Code
    Title 28, section 1330(c) ........................................................................................... 1

United States Code
    Title 28, section 1350 ............................................................................................... 3

United States Code
    Title 28, section 1602 et seq. .................................................................................... 1

United States Code
    Title 28, section 1605(a)(3) ...................................................................................... 5

United States Code
    Title 28, section 1608(a) ...................................................................................... 1, 2

United States Code
    Title 28, section 1608(a)(4) ...................................................................................... 2

**Rules and Regulations**

Federal Rules of Civil Procedure
    Rule 12(b)(1) ............................................................................................................ 1

Federal Rules of Civil Procedure
    Rule 12(b)(2) ............................................................................................................ 1

Federal Rules of Civil Procedure
    Rule 12(b)(6) ............................................................................................................ 1

**Other Authorities**

RESTATEMENT (THIRD) OF FOREIGN RELATIONS § 444 cmt. e (1987) .................................... 9

## I.   INTRODUCTION.

As set out in the Motion to Dismiss of Defendants the Swiss Confederation, the Federal Attorney General of Switzerland, Gerard Sautebin, and Brent Holtkamp (the "Swiss Defendants"), Plaintiffs have not executed service on the Swiss Defendants in conformity with the requirements of the Foreign Sovereign Immunities Act (hereinafter "FSIA"), 28 U.S.C. section 1602 et seq. Moreover, Plaintiffs' claims against the Swiss Defendants should be dismissed with prejudice for failure to state a claim pursuant to Rule 12(b)(1), (2), and (6) of the Federal Rules of Civil Procedure, because this Court lacks subject-matter jurisdiction over Plaintiffs' claims against the Swiss Defendants pursuant to the FSIA. Alternatively, the act of state doctrine bars Plaintiffs' claims against the Swiss Defendants, and this Court should dismiss the Complaint against Defendants Sautebin and Holtkamp for lack of personal jurisdiction pursuant to Rule 12(b)(2). Finally, the Complaint fails to state a claim because the U.S. Constitution does not apply to actions of the Swiss Government and Swiss Government officials taken within Switzerland.

The Plaintiffs' Opposition makes little effort to respond to the specific points of law and binding precedents set out in the Swiss Defendants' Memorandum supporting their Motion to Dismiss ("Swiss Memorandum"). As discussed below, Plaintiffs' arguments lack merit and are not supported by the authorities on which they rely.[1]

## II.   SERVICE HAS NOT PROPERLY BEEN EXECUTED ON THE DEFENDANTS.

As discussed in the Swiss Memorandum at 6-7, 28 U.S.C. section 1330(b) provides that personal jurisdiction over a foreign state can be established only where service has been made in accordance with the terms of 28 U.S.C. section 1608(a). An appearance by a foreign state does not in itself confer personal jurisdiction. 28 U.S.C. § 1330(c).

---

[1]   Plaintiffs did not respond to all of the points set out in the Swiss Memorandum. The Swiss Defendants reaffirm all the arguments set out in the Swiss Memorandum, but do not repeat them all in this Reply.

1      Section 1608(a) establishes a hierarchy of mandatory of methods for service on a

2 foreign state, and Plaintiffs did not follow any of those methods.  Plaintiffs attempted

3 service via the Hague Convention, but did not comply with the most basic requirements for

4 service under the Convention, such as the requirements to provide a translation into an

5 official language of Switzerland and to provide a sufficient number of copies of the papers.

6 Swiss Memorandum at 7-9.  The Ninth Circuit in Straub v. Green, 38 F.3d 448 (9th Cir.

7 1994), indicated that "[f]ailure to deliver a complaint in the correct language is such a

8 fundamental defect that it fails both a 'strict compliance' test and a 'substantial compliance'

9 test." Id. at 453.

10     The Swiss Memorandum at 9 also explained that to accomplish service on a foreign

11 government, the service must be effected via diplomatic channels – the method provided for

12 by section 1608(a)(4).  Plaintiffs admittedly have made no effort to serve via diplomatic

13 channels.  See Plaintiffs' Opposition at 5-6.[2]

14     Plaintiffs did not respond to these points at all in their Opposition.  Instead,

15 Plaintiffs cite Nanya Tech. Corp. v. Fujitsu, Ltd., 2007 U.S. Dist. LEXIS 5754 (D.C. Guam

16 Jan. 26, 2007), in which the court held that service could be effected on a Japanese

17 corporation via mail.  That case did not arise under the FSIA and is irrelevant to the

18 circumstances at hand.

19     Plaintiffs also apparently misunderstood the evidence provided by the Swiss

20 Defendants regarding the requirement for service on a government via diplomatic channels.

21 Refusal of service does not automatically lead to service by diplomatic channels.  Plaintiffs

22 must take steps to effect such service through the method provided for in

23 section 1608(a)(4).  Plaintiffs have not done so.

24

25 ───────────────
[2]   The Swiss Memorandum provided evidence, in the form of a diplomatic note
26 previously sent by the United States Government to the Swiss Government, that the United
States also takes the view that service on a government must be effected via diplomatic
27 channels.  Swiss Memorandum, Affidavit of Dieter Cavalleri ¶ 2.

28

- 2 -    Defendants' Reply to Opposition to Motion to Dismiss
Case No. C 07 2782 WHA

1    Accordingly, this case must be dismissed for failure of service.[3]

## III. THE FSIA REQUIRES DISMISSAL OF THIS SUIT.

As discussed at length in the Swiss Memorandum, the FSIA is the sole basis of establishing subject-matter jurisdiction over a foreign government.[4]  Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 434 (1989); Chuidian v. Philippine Nat'l Bank, 912 F.2d at 1100.[5]

Plaintiffs' suggestion that the Swiss Defendants have the burden of proving their immunity is actually the reverse of the rule established by the Ninth Circuit.  See Security Pac. Nat'l Bank v. Derderian, 872 F.2d 281, 285 (9th Cir. 1989) ("The FSIA presumes immunity."); Randolph v. Budget Rent-A-Car, 97 F.3d 319, 323 (9th Cir. 1996) ("Federal jurisdiction does not attach until it is determined that the foreign sovereign lacks immunity under the provisions of the FSIA."); Siderman de Blake v. Republic of Argentina, 965 F.2d 699, 706 (9th Cir. 1992), cert. denied, 507 U.S. 1017 (1993) ("… the court must satisfy itself that one of the [FSIA] exceptions applies … even if the foreign state does not enter an appearance to assert an immunity defense.").

In a somewhat confused manner, Plaintiffs appear to raise the following grounds for rejecting the Swiss Defendants' claim of immunity:

- Plaintiffs claim that the Swiss Government waived its immunity by serving a document on Mr. Oliver Hilsenrath via diplomatic channels relating to a Swiss criminal proceeding.

---

[3]    Plaintiffs did not file an opposition to the Swiss Defendants' motion to strike Plaintiffs' request for entry of clerk's default.  That motion also should be granted.

[4]    Plaintiffs do not dispute that each of Defendants Sautebin and Holtkamp is an "agency or instrumentality" of the Government of Switzerland within the meaning of the FSIA.  See Chuidian v. Philippine Nat'l Bank, 912 F.2d 1095, 1102-06 (9th Cir. 1990).  Contrary to the suggestion on page 4 of Plaintiffs' Opposition, the Swiss Government does not have any ownership interest in the Swiss banks with which Mr. Hilsenrath did business.

[5]    Although not contained in their Complaint, Plaintiffs state in note 1 on page 4 of their Opposition that they are aliens and that they could seek jurisdiction over the Swiss Defendants under the Alien Tort Claims Act, 28 U.S.C. section 1350.  In Amerada Hess the Supreme Court specifically held that the Alien Tort Claims Act does not provide an alternative basis for jurisdiction over foreign sovereigns.  488 U.S. at 434-38.

1    • Plaintiffs claim that the Swiss Government has expropriated Mr. Oliver Hilsenrath's property in violation of international law.

3    • Plaintiffs claim that the Swiss Government has violated international standards of *jus cogens*.

Each of these arguments is addressed below. Preliminarily, however, it should be noted that Plaintiffs' Opposition mingles the concepts of sovereign immunity and the act of state doctrine, which are distinct legal principles. See Siderman at 707 ("If a court lacks jurisdiction over a case involving a foreign state, the act of state doctrine never comes into play.").[6]

**A.    There Has Been No Implied Waiver of Immunity**

Plaintiffs assert that the Swiss Government waived its immunity by requesting the service of a document on Mr. Hilsenrath via diplomatic channels. However, as demonstrated by Exhibit H of Plaintiffs' Opposition, the document was transmitted by the Swiss Department of Justice and Police to the U.S. Department of Justice pursuant to Article 22 of the Treaty Between The United States of America And The Swiss Confederation On Mutual Assistance In Criminal Matters (the "U.S.-Swiss Treaty"). Neither the request for service nor the service itself involved the U.S. courts. Accordingly, Plaintiffs' reliance on Siderman is misplaced.

Specifically, the Ninth Circuit has drawn a clear distinction between actions of a foreign government that invoke assistance from U.S. courts and those that are limited to actions by the Executive Branch. In Blaxland v. Commonwealth Director of Public Prosecutions, 323 F.3d 1198 (9th Cir. 2003), the Ninth Circuit explained the distinction as follows:

> Siderman remains good law in this circuit. A crucial difference distinguishes this case from Siderman, however, and compels the conclusion

---

[6] Thus, Plaintiffs' reliance on the Second Hickenlooper Amendment to support jurisdiction is incorrect, because the Amendment, which is discussed below, has no relation to the FSIA.

that Australia did not impliedly waive its sovereign immunity by seeking and obtaining Blaxland's extradition.

Here, the Australian government did not itself apply to our courts for assistance but instead invoked its rights under the Extradition Treaty by applying to the executive branch of our government. Australia's invocation of its extradition treaty rights, unlike Argentina's direct engagement of our courts in Siderman, cannot constitute an implied waiver of sovereign immunity.

Siderman involved Argentina's issuance of a letter rogatory to an American court. A letter rogatory is a direct communication from the courts of one country to the courts of another….

We emphasized in Siderman that "the FSIA's waiver exception is narrowly construed," and that "to support a finding of implied waiver [of sovereign immunity], there must exist a direct connection between *the sovereign's activities in our courts* and the plaintiff's claims for relief," 965 F.2d at 720, 722 (emphasis added). By petitioning the Los Angeles Superior Court via a letter rogatory, the Argentine government, we held in Siderman, engaged the American courts sufficiently to waive its immunity by implication. In this case, by contrast, we confront only the invocation by Australia of proceedings to secure Blaxland's extradition *under the auspices of the executive branch of our government*.

323 F.3d at 1206-07 (emphasis in original; footnote omitted).

Here, the actions of the Swiss Government were limited to making a request for service to the U.S. executive branch pursuant to the U.S.-Swiss Treaty. Under Blaxland, the Swiss Government's invocation of its treaty rights to have the U.S. Government serve legal process on an individual cannot constitute an implied waiver of sovereign immunity.

### B. There Has Been No Expropriation Involving Assets In The United States Or In Violation Of International Law

By citing Cassirer v. Kingdom of Spain, 461 F. Supp. 2d 1157 (C.D. Cal. 2006), Plaintiffs appear to claim that the exception to sovereign immunity created by section 1605(a)(3) applies here. That provision provides an exception in cases

in which rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States ….

As explained in the Swiss Memorandum, this exception requires either (i) that the property, or property exchanged for it, be present in the United States in connection with a commercial activity carried on in the United States by the foreign state or (ii) that the property, or property exchanged for it, be held by an agency or instrumentality of the foreign state (as opposed to the foreign state itself) and that the agent or instrumentality be engaged in commercial activity in this country.[7] Plaintiffs have alleged no facts that even remotely suggest that the property is being held in the United States (and indeed they allege that the property is in Switzerland and elsewhere in Europe), and Plaintiffs are asserting their claims against the Swiss Government itself, and not some agent or instrumentality engaged in commercial activity in the United States.[8]

In any event, assets frozen or confiscated in connection with a legitimate criminal investigation are not "taken in violation of international law." In this regard, it should be noted that Mr. Hilsenrath has at all times been protected by Swiss constitutional rights, which afford due process, including rights of appeal, in Switzerland. Indeed, Mr. Hilsenrath availed himself of those rights by retaining Swiss counsel to file challenges to the Swiss Government's actions.

---

[7] An appeal from the decision in Cassirer was filed on October 12, 2006, and the appeal remains pending in the Ninth Circuit, Case No. 06-56406. Cassirer involved an action to recover a painting taken from the plaintiff's grandmother by an agent of the Nazis, and which came to be owned by a Spanish foundation financed by the Spanish Government. The foundation was deemed an agency of the Spanish Government, and was found to have engaged in numerous commercial activities in the United States relating to the collection of which the painting was a part, including, for example, selling posters of the painting at issue in the United States. The facts of Cassirer bear no relation to the facts of the instant case.

[8] There is reason to question whether bank accounts frozen in Switzerland constitute "property" within the meaning of the FSIA. See, e.g., Lord Day & Lord, Barrett Smith v. Socialist Republic of Vietnam, 134 F. Supp. 2d 549, 560 (S.D.N.Y. 2001) ("Property taken within the meaning of the statute means 'physical property' not the right to receive payment."). The District of Columbia Circuit recently has taken a different approach, holding that bank accounts are property but that the repudiation of the contract right to withdraw funds from them is not an act of expropriation. Nemariam v. Ethiopia, 491 F.3d 470, 481 (D.C. Cir. 2007).

1       For example, in a decision of the Swiss Federal Criminal Court Appeals Chamber
2  dated February 7, 2006, the court, in a carefully reasoned decision, (i) ruled in
3  Mr. Hilsenrath's favor that he should be given access to the complete file of the prosecutor,
4  (ii) rejected his request for removal of the prosecutor, and (iii) ruled that there was
5  sufficient justification to continue freezing the assets.[9]  Another decision dated
6  June 22, 2006 by the same court held that Mr. Hilsenrath was not eligible to have an
7  attorney provided at government expense because he had not established indigency.[10]  In
8  particular, the court noted that Mr. Hilsenrath had not disputed that he had obtained
9  US$ 6.5 million by selling shares of U.S. Wireless Corporation, but had refused to provide
10 information on the disposition of the portion of that amount not covered by the Swiss freeze
11 order (which extended to only approximately US$ 2 million) on the grounds that do so
12 would incriminate him.  The court also rejected Mr. Hilsenrath's request that the court
13 release to him a portion of the frozen assets to pay his attorney, stating in part as follows:

> 3.1 …. In that [February 6, 2007] ruling, notably, the Court of Appeals noted that the principal reason for sequestering personal financial assets is to allow the trial judge to effect a forfeiture under CP article 59.  The Court even specified that the sequestration was not limited to the proceeds of criminal activity; rather, it has the equal purpose of guaranteeing the payment of any disgorgement required by CP article 59 ch. 2 al. 3.  By merely asserting that the sale of USWC shares is not itself a crime, the appellant ignores this other ground; as such, there is no new basis for revisiting the February 7, 2006 ruling, which affirmed the legal justification for the sequestration.
>
> 3.2    In any event, it is worth noting that personal financial assets subject to one of the forfeiture provisions of CP article 59 could not be used to provide for their possessor's legal defense, which would amount to an unjust enrichment at the expense of his victims.

Exhibit 7 to Request for Judicial Notice (English translation) at 6.

The Provisional Suspension of Investigation dated August 23, 2007, filed by Plaintiffs as Exhibit H to Mr. Hilsenrath's declaration, is similarly subject to appeal in the

---

[9]     A copy of this decision and an English translation of it are attached as Exhibit 6 to the Request for Judicial Notice filed herewith.

[10]    A copy of this decision and an English translation of it are attached as Exhibit 7 to the Request for Judicial Notice filed herewith.

1  Swiss courts.[11] That document sets forth a decision to assess a portion of the costs of the
2  Swiss investigation on Mr. Hilsenrath: 104,508 Swiss Francs, which based on the current
3  exchange rate is about US$ 88,700. The document also indicates that the Swiss authorities
4  will request that the governments of Belgium and Poland release the other assets to the
5  United States to fulfill this Court's Judgment requiring restitution of Mr. Hilsenrath's funds
6  that were frozen pursuant to the Swiss Government's actions.[12]
7        The Swiss proceedings involving the freezing of Mr. Hilrenrath's assets, and now
8  the attempted return of those assets to the United States minus a fine based on his lack of
9  cooperation with the Swiss authorities, cannot in any manner reasonably be characterized as
10  involving an expropriation – let alone a taking of property that was not for a public purpose,
11  was discriminatory, or was not accompanied by due process.
12        Especially given that Mr. Hilsenrath has forfeited all of the assets at issue to the
13  U.S. government as restitution, it remains unexplained how Plaintiffs could assert any type
14  of property interest in the assets, other than as a collection agent for the U.S. Government.

15      **C.**    **Alleged General Violations Of International Law Cannot Establish Jurisdiction Over A Foreign Government**
16

17        Plaintiffs allege that the actions of the Swiss Government violated international
18  standards of *jus cogens*, seeking to compare the freezing of Mr. Hilsenrath's assets to
19  genocide, torture and other crimes against humanity. Plaintiffs' argument that the Swiss
20  Government has violated *jus cogens* is frivolous on its face.
21        In any event, the court's jurisdiction is determined by the FSIA. The Ninth Circuit
22  decision cited by Plaintiffs itself states that "the FSIA does not specifically provide for an

---

[11] See page 12 of Provisional Suspension of Investigation (English translation), Exhibit H to Plaintiffs' Opposition.

[12] The Swiss Government understands that Mr. Hilsenrath is attempting to prevent the U.S. Government from providing proof of service of the Provisional Suspension of Investigation to the Swiss Department of Justice and Police, which in turn is delaying the ability of the Swiss Federal Prosecutor to request that Belgium and Poland release the assets to the United States.

exception to sovereign immunity based on *jus cogens,*" and concluded that "[t]he fact that there has been a violation of *jus cogens* does not confer jurisdiction under the FSIA." Siderman at 718.

Because no exception to the FSIA is applicable, the lawsuit should be dismissed with prejudice for lack of jurisdiction.

**IV. THE ACTIONS OF THE SWISS DEFENDANTS WERE ACTS OF STATE ENTITLED TO DEFERENCE.**

The Motion to Dismiss cited the act of state doctrine as an alternative ground for dismissal. Much of the Plaintiffs' Opposition is devoted to arguing against the application of that doctrine, apparently in the mistaken belief that the doctrine is jurisdictional. In fact, the act of state doctrine is distinct from the FSIA, and the Court must be satisfied that an exception to the FSIA applies before it can even consider the act of state doctrine.[13]

Plaintiffs cite the Second Hickenlooper Amendment, 22 U.S.C. section 2370(e)(2), in arguing that the act of state doctrine does not apply, but they are mistaken for several reasons.

First, as discussed above, the Swiss actions at issue could not even theoretically be considered a violation of international law.

Second, the Amendment only applies to property located in the United States. See, e.g., Compania de Gas de Nuevo Laredo, S.A. v. Entex, Inc., 686 F.2d 322, 327 (5th Cir. 1982) ("[W]e hold that the Hickenlooper amendment is inapplicable because neither the nationalized property nor its proceeds are located in the United States"); Empresa Cubana Exportadora De Azucar y Sus Derivados v. Lamborn & Co., 652 F.2d 231, 237 (2d Cir.

---

[13] See Siderman at 706:

The district court erred in deciding the act of state issue without first considering the threshold issue of its subject matter jurisdiction. Because the federal courts lack jurisdiction over a claim against a foreign state that is immune under the FSIA, "[a]t the threshold of every action in a district court against a foreign state, . . . the court must satisfy itself that one of the [FSIA] exceptions applies." Verlinden [B.V. v. Central Bank of Nigeria], 461 U.S. 493[,] 493-94 [(1983)].

1   1981) (Amendment applies "only to cases in which the expropriated property has found it

2   way back into the United States" and "[s]ince in this case the seized assets are still in Cuba,

3   the Hickenlooper Amendment does not apply"); RESTATEMENT (THIRD) OF FOREIGN

4   RELATIONS § 444 cmt. e (1987) (Amendment is "limited to actions asserting title to

5   property before the court . . . . [T]he plaintiff must allege and prove that the property that is

6   the subject of the claim is in the United States or was there at the time the action was

7   commenced.").[14]

8         Finally, the Amendment was intended to protect U.S. investment in foreign

9   countries.  See, e.g., West v. Multibanco Comermex, S.A., 807 F.2d 820, 830 (9th Cir.

10  1987).  Plaintiffs now say they are Israeli citizens and residents; if that is the case, the

11  Amendment was not intended by Congress to benefit them.[15]

12        The Swiss Defendants respectfully submit that the Ninth Circuit decision in Credit

13  Suisse v. United States District Court, 130 F.3d 1342 (9th Cir. 1997), which held that a

14  federal court could not interfere with a freeze on assets ordered by the Swiss government, is

15  controlling.  The Credit Suisse Court emphasized that "[i]f … plaintiffs want to contest the

16  legality of the Swiss freeze orders, seek a declaration of the validity of the Chinn

17  assignment as against the Banks, or seek an injunction compelling the Banks to turn over

18  the assets, they should do so via the Swiss judicial system." Id. at 1348.  As discussed

---

[14]  Plaintiffs cite the case Allied Bank International v. Banco Credito Agricola de Cartago, 757 F.2d 516 (2d Cir. 1985) for the proposition that extraterritorial acts of a foreign government are not subject to the act of state doctrine, and argue that the requests of the Swiss authorities to Belgium and Poland are therefore not covered.  The Allied Bank case, however, held that an action of the Costa Rican Government with extraterritorial effect *in the United States*, affecting debts whose situs was deemed *within the United States*, would not be given deference.  Moreover, the Swiss Government does not have the extraterritorial authority to compel foreign governments to take actions within their own territories; it can only make requests to them.  If Plaintiffs wish to complain about the freezing of Mr. Hilsenrath's assets by the Belgian and Polish Governments, they are free to pursue those complaints in the courts of Belgium and Poland.

[15]  See Plaintiffs' Opposition at 4 note 1.

above, Plaintiffs have had full access to the Swiss judicial system and continue to have such access.

In summary, Plaintiffs have not provided any reason why the act of state doctrine should not apply here.

### V. PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED

Plaintiffs apparently have conceded that the U.S. Constitution does not apply to the actions of the Swiss Defendants in Switzerland. Plaintiffs' Opposition at 4 ("While the 4th, 5th and 6th amendment might not apply in Switzerland *per se* ...."). Plaintiffs also offer no explanation of how they could have rights to the assets when Mr. Hilsenrath has forfeited them to the U. S. Government. Accordingly, Plaintiffs have failed to state a claim for which relief can be granted.

### VI. CONCLUSION.

For the foregoing reasons, Defendants the Swiss Confederation, the Federal Attorney General of Switzerland, Gerard Sautebin, and Brent Holtkamp respectfully request that this Court dismiss with prejudice Plaintiffs' Complaint against them.

Dated: October 11, 2007.

PILLSBURY WINTHROP SHAW PITTMAN LLP
STEPHAN E. BECKER
2300 N Street N.W.
Washington, D.C. 20037-1122

PILLSBURY WINTHROP SHAW PITTMAN LLP
SHARON L. O'GRADY
50 Fremont Street
Post Office Box 7880
San Francisco, CA  94120-7880

By  /s/ Sharon L. O'Grady
         Sharon L. O'Grady

Attorneys for Defendants
The Swiss Confederation, The Federal Attorney General
of Switzerland, Gerald Sautebin and Brent Holtkamp