1   PILLSBURY WINTHROP SHAW PITTMAN LLP
    STEPHAN E. BECKER (*pro hac vice* application pending)
2     Email:  stephan.becker@pillsburylaw.com
    2300 N Street N.W.
3   Washington, D.C. 20037-1122
    Telephone:    (202) 663-8277
4   Facsimile:    (202) 663-8007

5   PILLSBURY WINTHROP SHAW PITTMAN LLP
    SHARON L. O'GRADY (SBN 102356)
6     Email:  sharon.ogrady@pillsburylaw.com
    50 Fremont Street
7   Post Office Box 7880
    San Francisco, CA 94120-7880
8   Telephone:    (415) 983-1198
    Facsimile:    (415) 983-1200
9
    Attorneys for Defendants
10  THE SWISS CONFEDERATION, THE FEDERAL ATTORNEY GENERAL
    OF SWITZERLAND, GERALD SAUTEBIN AND BRENT HOLTKAMP
11

12

13                  UNITED STATES DISTRICT COURT

14              NORTHERN DISTRICT OF CALIFORNIA

15                  SAN FRANCISCO DIVISION

16   —————————————————————————
                                      )
17   OLIVER HILSENRATH, ET AL.,       )   Case No. C-07-2782-WHA
                                      )
18              Plaintiffs,           )   E-Filing
                                      )
19         v.                         )   REQUEST FOR JUDICIAL NOTICE
                                      )   IN REPLY TO OPPOSITION TO
20   THE SWISS CONFEDERATION, THE     )   MOTION OF DEFENDANTS THE
     FEDERAL ATTORNEY GENERAL OF      )   SWISS CONFEDERATION, THE
21   SWITZERLAND, GERARD SAUTEBIN,    )   FEDERAL ATTORNEY GENERAL
     BRENT HOLTKAMP,                  )   OF SWITZERLAND, GERARD
22                                    )   SAUTEBIN, BRENT HOLTKAMP TO
                Defendants.           )   DISMISS COMPLAINT
23                                    )
                                      )   Date:       October 25, 2007
24                                    )   Time:       2:00 a.m.
                                      )   Courtroom:  9, 19th Floor
25   —————————————————————————    )   Judge:      The Hon. William H. Alsup

26

27

28

1       Defendants THE SWISS CONFEDERATION, THE FEDERAL ATTORNEY

2   GENERAL OF SWITZERLAND, GERARD SAUTEBIN and BRENT HOLTKAMP

3   request, pursuant to Rule 201 of the Federal Rules of Evidence and the authorities cited

4   below, that the Court take judicial notice of the documents attached hereto as Exhibits 6

5   and 7.[1]

6       Exhibit 6:    Court of Appeals Decision of February 7, 2006, Oliver Hilsenrath v.

7       Office of the Attorney General of Switzerland, OAG (Ministère

8       Public de la Confédération, MPC), Case No. BB.2005.106.

9       Exhibit 7:    Court of Appeals Decision of June 22, 2006, Oliver Hilsenrath v.

10      Ministère Public de la Confédération, Case No. BB.2006.34.

11      Generally, a court may not consider material outside the pleadings to decide a

12  Federal Rule of Civil Procedure 12(b)(6) motion. Lee v. City of Los Angeles, 250 F.3d

13  668, 688 (9th Cir. 2001). There are exceptions, however, to this rule when a court may

14  consider extrinsic evidence without converting the Rule 12(b)(6) motion to a motion for

15  summary judgment. Specifically, a court may take judicial notice of "matters of public

16  record." Id. at 688-89. Each of the documents for which defendants seek judicial notice is

17  a document of public record.

18      In addition, plaintiffs have raised issues concerning the law of Switzerland, to which

19  these documents relate. Pursuant to Federal Rule of Civil Procedure Rule 44.1, a court, in

20

21

22

23

24

25

26

---

[1] To avoid confusion, Defendants have numbered these exhibits so as not to duplicate the
exhibit numbers in Document 25, Defendants' Request for Judicial Notice filed August 6,
2007 in support of this motion.

27

28

1   determining foreign law, "may consider any relevant material or source … whether or not

2   submitted by a party or admissible under the Federal Rules of Evidence."

3       Dated:  October 11, 2007.

4                     PILLSBURY WINTHROP SHAW PITTMAN LLP
                        STEPHAN E. BECKER (*pro hac vice* application

5                     pending)
                        2300 N Street N.W.

6                     Washington, D.C. 20037-1122

7                     PILLSBURY WINTHROP SHAW PITTMAN LLP
                     SHARON L. O'GRADY

8                     50 Fremont Street
                     Post Office Box 7880

9                     San Francisco, CA  94120-7880

10

11                 By     /s/ Sharon L. O'Grady
                          Sharon L. O'Grady

12                     Attorneys for Defendants
                     THE SWISS CONFEDERATION, THE

13                     FEDERAL ATTORNEY GENERAL
                     OF SWITZERLAND, GERALD SAUTEBIN

14                     AND BRENT HOLTKAMP

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 6

2100000087

Bundesstrafgericht
Tribunal pénal fédéral
Tribunale penale federale
Tribunal penal federal



Office des juges d'instruction fédéraux
Genève

R. 2 1 FEV. 2006

Numéro du dossier: BB 2005.108

**Arrêt du 7 février 2006
Cour des plaintes**

Composition

Les juges pénaux fédéraux Emanuel Hochstrasser,
président, Bernard Bertossa et Barbara Ott,
La greffière Elena Herzog-Maffei

Parties

Oliver HILSENRATH, 822 Eastbrook Court, USA-
94506 Danville (CA), représenté par Me Björn Bajan,
Zeltweg 44, 8032 Zurich,

plaignant

Contre

MINISTÈRE PUBLIC DE LA CONFÉDÉRATION,
case postale, 3003 Berne,

intimé

Objet

Refus de consultation de documents et séquestre

- 2 -

2100000039

Faits:

A.    Le 24 février 2004, le Ministère public de la Confédération (ci-après: MPC) a ouvert une enquête de police judiciaire à l'encontre de David Klarman (ci-après: Klarman), du chef de blanchiment d'argent (art. 305 bis CP). Le 16 août suivant, l'enquête a été étendue à l'encontre d'Oliver Hilsenrath (ci-après: Hilsenrath). Klarman et Hilsenrath étaient d'anciens dirigeants de la société américaine US Wireless Corporation Inc. (ci-après: USWC) active dans le domaine des télécommunications et dorénavant en faillite.

B.    L'enquête ouverte en Suisse a pour origine l'existence d'une procédure conduite par la Securities and Exchange Commission (ci-après: SEC) et d'une procédure pénale en cours aux Etats-Unis à l'encontre des deux précités, auxquels il est reproché d'avoir commis des infractions de nature boursière et fiscale, ainsi que d'avoir détourné à leur profit des actifs de la société. En substance, les autorités américaines reprochent à Klarman et Hilsenrath d'avoir profité de leurs fonctions dirigeantes auprès de USWC pour se faire verser des montants indus, puis pour faire émettre à leur profit, sans droit, des titres de la société (shares) qu'ils ont réalisés et dont ils se sont fait transférer les produits sur des comptes ouverts à l'étranger aux noms de diverses sociétés de domicile. Ces opérations ont causé à la société un préjudice supérieur à USD 6'000'000.- et ont ainsi précipité sa faillite.

C.    Demeuré aux Etats-Unis, Klarman a décidé de plaider coupable, reconnaissant partiellement le bien-fondé des accusations portées contre lui et affirmant avoir agi de concert avec Hilsenrath. Ce dernier s'étant rendu à l'étranger, un mandat d'arrêt en vue d'extradition a été délivré à son encontre. A sa requête, un sauf-conduit lui a été délivré par le MPC, qui a procédé à son inculpation et à son audition à quatre reprises, entre le 12 juillet et le 16 août 2005. A ces occasions, Hilsenrath a contesté tous les griefs retenus contre lui aux Etats-Unis.

D.    Dans le cadre de son enquête, le MPC a procédé ou fait procéder, par voie d'entraide, au séquestre de plusieurs comptes bancaires en Suisse et à l'étranger, notamment en Belgique et en Pologne. Dans ce dernier Etat, la mesure concerne notamment un compte dont le titulaire est une société Kosmos. Hilsenrath est actionnaire minoritaire de cette société (pièce MPC

- 3 -                    2 1 0 0 0 0 0 0 8 9

16 4 209). Les comptes séquestrés ont été crédités, directement ou indirec-
tement, de valeurs provenant de la vente des actions de USWC, notam-
ment d'un lot de 350'000 titres. Selon les explications fournies par le MPC,
les séquestres portent sur des valeurs de l'ordre de USD 2,5 millions au to-
tal, dont Fr. 245'000.- en Suisse.

E.   Dès le printemps 2005 au moins, Hilsenrath a sollicité un accès complet
     aux actes du dossier de sa cause, ainsi que la levée des séquestres or-
     donnés par le MPC. A la faveur de décisions successives, dont il n'y a pas
     lieu d'énumérer les détails, l'avocat d'Hilsenrath a pu prendre connaissance
     d'une partie des actes. Des décisions de levée de séquestre ont en outre
     été rendues, pour permettre avant tout de transférer aux Etats-Unis, à
     l'intention des autorités américaines, les valeurs saisies au préjudice de
     Klarman.

F.   Par courrier du 15 septembre 2005, Hilsenrath a requis derechef le droit de
     consulter l'intégralité du dossier et a renouvelé sa requête de levée des sé-
     questres ordonnés par le MPC. Le 22 septembre 2005, le MPC a rejeté ces
     requêtes.

G.   Par acte du 28 septembre 2005, Hilsenrath a saisi la Cour des plaintes du
     Tribunal pénal fédéral d'une plainte contre l'ordonnance du 22 septembre
     2005, concluant à ce que l'accès au dossier lui soit concédé sans limite, à
     ce que le procureur en charge de l'enquête soit récusé et à ce que les
     comptes séquestrés au Crédit suisse, en Belgique et en Pologne soient li-
     bérés. Le MPC a conclu au rejet de la plainte. Par ordonnance du 25 sep-
     tembre 2005, il a cependant accepté d'étendre l'accès au dossier sans
     toutefois le permettre intégralement.

H.   Par arrêt du 20 décembre 2005, la Cour des plaintes a jugé qu'il n'y avait
     pas lieu d'entrer en matière sur la requête de récusation du procureur

2100000090

- 4 -

La Cour considère en droit:

1.

1.1   A teneur de l'art. 105bis al. 2 PPF, les opérations et les omissions du pro-
cureur général de la Confédération peuvent faire l'objet d'une plainte au-
près de la Cour des plaintes du Tribunal pénal fédéral. Les art. 214 à 219
PPF sont applicables. En sa qualité d'inculpé, le plaignant est partie à la
procédure et il est recevable à exercer le droit de plainte (art. 214 al. 2
PPF). Sa démarche ayant été formée dans le délai légal (art. 217 PPF), il y
a donc lieu d'entrer en matière sur ses objets.

1.2   En règle générale, l'arrêt de la Cour des plaintes est rendu dans la langue
de la décision attaquée (art. 37 al. 3 OJ, applicable par analogie). En
l'absence de disposition légale imposant au MPC l'usage d'une langue dé-
terminée dans la conduite de son enquête, cette autorité dispose d'un large
pouvoir d'appréciation, dont elle doit faire usage en tenant compte de
l'ensemble des circonstances et notamment de la langue parlée par le ou
les prévenus, lorsque ceux-ci s'expriment dans une langue nationale (arrêt
du Tribunal fédéral 1S.6/2004 du 11 janvier 2005, consid. 2, rés. in SJ 2005
I 315). En l'espèce, les prévenus s'expriment en anglais et la plupart des
faits investigués se sont déroulés aux Etats-Unis. En l'absence d'une rela-
tion particulière entre les circonstances de la cause et l'une ou l'autre des
langues nationales en Suisse, on ne saurait reprocher au MPC d'avoir
conduit son enquête en langue française et d'avoir prononcé la décision at-
taquée dans cette langue. Le présent arrêt sera donc également rendu en
français.

2.    Le plaignant fait grief au MPC de ne pas lui avoir concédé un accès com-
plet au dossier de la cause. Il se plaint en particulier de ne pas avoir pu
consulter la majorité des actes relatifs à l'exécution des procédures
d'entraide aux Etats-Unis et dans d'autres Etats étrangers. Le MPC a cer-
tes assoupli les restrictions découlant de la décision attaquée et, par or-
donnance successive du 26 septembre 2005, il a consenti l'accès à cer-
tains de ces actes, tout en persistant cependant à nier à l'inculpé le droit de
consulter une partie de la documentation relative à ses démarches dans le
contexte de l'entraide internationale.

-5-

2.1   La Cour des plaintes s'est déjà prononcée sur le droit à la consultation du dossier (voir notamment l'arrêt de la Cour des plaintes BB.2005.3 du 18 juillet 2005, consid. 3.1 et les réf. citées). Le droit à la consultation du dossier est une composante essentielle du droit d'être entendu garanti par les art. 6 CEDH et 29 al. 2 Cst (ATF 126 I 7, 16 consid. 2b et références citées). Aussi longtemps que la procédure de recherche ou l'instruction préparatoire ne sont pas terminées, l'exercice du droit de consultation peut être limité s'il s'agit d'assurer la protection d'intérêts privés ou publics prépondérants et, notamment, de prévenir un risque de collusion (ATF 122 I 153, 161 consid. 6a; 120 IV 242, 244 consid. 2c/bb et références citées; PIQUEREZ, Procédure pénale suisse, Zurich 2000, p. 533-534 n° 2489 et 2491; MARAZZI, Il GIAR, L'arbitro nel processo penale, Lugano 2001, p. 21 à 25). C'est donc à la lumière de ces principes que l'art. 116 PPF, applicable à la procédure de recherches (art. 103 al. 2 PPF) doit être interprété. Selon cette disposition, l'accès au dossier doit en principe être reconnu aux parties "dans la mesure où le résultat de l'instruction n'en est pas compromis".

2.2   En l'espèce, le MPC affirme de manière péremptoire que la recherche de la vérité serait compromise si le plaignant se voyait accorder un accès complet aux actes de la procédure. On cherche toutefois vainement quelles sont les raisons concrètes et précises qui sont retenues à l'appui de cette affirmation. De la motivation de ses décisions des 22 et 26 septembre 2005, il ressort en substance que le procureur entend faire dépendre l'octroi d'un accès complet aux actes de la procédure de la réponse qu'il attend des autorités américaines à la suite d'une requête d'entraide complémentaire du 24 août précédent. Par cette requête (pièce MPC 18 2 194), le MPC sollicite des autorités américaines une détermination sur le caractère illicite de l'acquisition, puis de la réalisation des 350'000 actions d'USWC. La requête ne sollicite pas l'exécution d'actes précis et déterminés, mais s'apparente plutôt à la demande d'une prise de position de la part des autorités américaines. Outre qu'il n'appartient certainement pas aux autorités étrangères de départager entre les versions des faits qui sont soumises à l'autorité suisse, on peine à comprendre en quoi la réponse à cette requête nouvelle pourrait induire un risque d'entrave à la recherche de la vérité sur les faits pertinents pour l'enquête suisse. A cela s'ajoute que l'argument susdit ne peut justifier le secret conservé à l'endroit des autres actes de la procédure qui, bien que sans relation avec la procédure d'entraide aux Etats-Unis, restent néanmoins soustraits à la connaissance du plaignant. L'enquête a été ouverte en Suisse le 24 février 2004, soit il y a près de deux ans. Le plaignant a été inculpé dès juillet 2005. Son droit d'accès de manière complète au dossier de la cause ne saurait être plus longtemps limité, au seul motif que l'autorité de poursuite en Suisse attend une déter-

mination des autorités américaines sur l' "illicéité" du comportement de l'inculpé.

2.3 Le risque de collusion propre à justifier une restriction à l'accès au dossier doit se fonder en principe sur des indices concrets (SCHMID, Strafprozessrecht, 4ème éd., Zurich 2004, p. 89 n° 266). Si ce risque peut être présumé avant que les principaux protagonistes n'aient été entendus ((HAUSER/SCHWERI/HARTMANN, Schweizerisches Strafprozessrecht, 6ème éd., Bâle 2005, p. 258 n° 18), il n'en va pas de même lorsque ces auditions ont eu lieu.

2.4 Pour l'ensemble de ces motifs, la plainte doit être admise sur ce premier point et l'accès au dossier doit être octroyé au plaignant, sans restriction.

3.     Le plaignant sollicite la récusation du procureur en charge des recherches. Par son arrêt du 20 décembre 2005, la Cour des plaintes a déjà statué sur cet objet. Il n'y a donc pas lieu d'y revenir.

4.     Le plaignant requiert enfin que les séquestres ordonnés sur ses comptes en Suisse, en Pologne et en Belgique, soient levés sans restriction, dès lors que l'origine criminelle de ces avoirs n'est nullement établie, ni même rendue vraisemblable. Le MPC s'oppose à cette requête, aux motifs principaux que les valeurs qui ont transité sur ces comptes ou s'y trouvent encore sont directement liées aux infractions poursuivies aux Etats-Unis et que le plaignant n'a pas démontré de manière convaincante que ces valeurs seraient d'origine licite.

4.1 Le séquestre prévu par l'art. 65 ch. 1. PPF est une mesure provisoire (conservatoire) qui permet la saisie de moyens de preuves, respectivement d'objets ou de valeurs qui pourraient faire l'objet d'une confiscation au sens de l'art. 59 CP. Une telle mesure présuppose l'existence de présomptions concrètes de culpabilité, même si, au début de l'enquête, un simple soupçon peut suffire à justifier la saisie (HAUSER/SCHWERI/HARTMANN, op.cit., p. 340 n° 1; PIQUEREZ, op. cit., p. 549 n° 2554). Il faut ainsi que des indices suffisants permettent de suspecter que les valeurs patrimoniales ont servi à commettre une infraction ou en sont le produit, que les infractions aient été commises par leur détenteur ou par un tiers. Pour que le maintien du séquestre pendant une période prolongée se justifie, il importe que ces présomptions se renforcent en cours d'enquête et que l'existence d'un lien de causalité adéquat entre les valeurs saisies et les actes délictueux puisse

2 1 0 0 0 0 0 0 9 3

être considérée comme hautement vraisemblable (ATF 122 IV 91, 95 consid. 4; OBERHOLZER, Grundzüge des Strafprozessrechts, 2[ème] éd., Berne 2005, n° 1139). La mesure doit par ailleurs reposer sur une base légale, être justifiée par un intérêt public suffisant et respecter le principe de la proportionnalité, comme toute autre mesure de contrainte, même si l'autorité dispose à cet égard d'une grande marge d'appréciation (arrêt du Tribunal fédéral 1P.239/2002 du 9 août 2002 consid. 3.1; HAUSER/SCHWERI/HARTMANN, op. cit. p. 341 n° 3 et p. 345 n° 22). Le séquestre est proportionné lorsqu'il porte sur des avoirs dont on peut admettre qu'ils seront vraisemblablement confisqués en application du droit pénal (arrêt du Tribunal fédéral 1P.239/2002 du 9 août 2002 consid. 3.1). En tant que simple mesure procédurale provisoire, il ne préjuge toutefois pas de la décision matérielle de confiscation. Au contraire du juge du fond, la Cour des plaintes du Tribunal pénal fédéral n'a pas à examiner les questions de fait et de droit de manière définitive (ATF 124 IV 313, 316 consid. 4; 120 IV 365, 366 consid. 1c; arrêt du Tribunal fédéral 8G.12/2003 du 22 avril 2003 consid. 5). Tant que subsiste un doute sur la part des fonds qui pourrait provenir d'une activité criminelle, l'intérêt public commande qu'ils demeurent à la disposition de la justice (arrêt de la Cour des plaintes BB.2005.28 du 7 juillet 2005 consid. 2; ATF 125 IV 222 consid. 2 non publié; 124 IV 313, 316 consid. 3b et 4; SJ 1994 p. 97, 102). La confiscation peut viser non seulement l'auteur de l'infraction, mais également les tiers auxquels l'auteur en a transféré les produits (art. 59 ch.1 al. 2 CP). La confiscation est possible en Suisse; alors même que l'infraction a été commise à l'étranger, si les produits de l'infraction ont été blanchis en Suisse ou s'il existe une autre connexité avec la Suisse (ATF 128 IV 145).

4.2    Ni le plaignant ni le MPC n'ont fourni des précisions sur la titularité des comptes bancaires faisant l'objet des séquestres litigieux. On ignore ainsi si le plaignant est le titulaire de toutes ces relations et il apparaît même que, selon sa propre argumentation, l'un des comptes séquestrés en Pologne appartiendrait en réalité à une société Kosmos, dont il ne serait qu'un actionnaire minoritaire. La question se pose donc de savoir si le plaignant a qualité pour requérir la levée d'une mesure frappant en réalité le patrimoine de tiers. Compte tenu de ce qui va suivre, cette question pourra en l'état rester sans réponse.

4.3    À teneur de leur requête d'entraide du 31 mars 2005 (pièce MPC 18 09 002), les autorités pénales américaines reprochent en substance à Hilsenrath d'avoir, de concert avec Klarman, détourné des fonds au préjudice de la société USWC, pour en faire bénéficier des sociétés de domicile qu'ils avaient constituées à cette fin et qu'ils contrôlaient. Ainsi, de 1997 à 2000, Hilsenrath a fait verser à l'une de ces sociétés (Telecom Associates) une

21 00000094

somme totale de USD 348'000.— par acomptes mensuels de USD 12'000.— De même, une autre société de domicile contrôlée par lui (KS Legal) a reçu des versements mensuels de USD 5'000.— de 1998 à 2000, alors qu'aucune de ces bénéficiaires n'avait accompli la moindre prestation en faveur d'USWC. Les montants reçus par Telecom Associates ont été transférés sur des comptes auprès du Crédit suisse à Zurich. Entre 1997 et 1999, Hilsenrath et Klarman ont fait émettre, à l'insu des organes compétents de USWC, des titres de la société à hauteur de USD 500'000.—, au bénéfice de sociétés qu'ils contrôlaient, puis fait procéder à la vente de ces titres, s'appropriant le produit de ces ventes, dont une partie a également été transférée au Crédit suisse. Dans une déposition destinée à la Cour de district de Caroline du Nord (pièce MPC 004 00 0031), Klarman a reconnu l'essentiel des faits qui lui étaient reprochés, précisant qu'il avait agi de concert avec Hilsenrath. Ces éléments de preuve sont assurément de nature à créer le soupçon que le plaignant a participé à des opérations consistant à détourner à son profit des actifs de la société USWC, précipitant ainsi la faillite de cette dernière. En droit suisse, un tel comportement pourrait être qualifié de gestion déloyale aggravée (art. 158 ch. 1 al. 3 CP), voire d'abus de confiance (art. 138 ch. 1 CP) ou encore de diminution d'actifs au préjudice des créanciers (art. 164 ch. 1 CP). Toutes ces infractions sont punies de la réclusion et constituent dès lors des crimes, dont la dissimulation des produits peut tomber sous le coup de l'art. 305bis CP. S'il est vrai que l'une des enquêtes en cours aux Etats-Unis est conduite par la SEC, cette seule circonstance ne suffit pas à établir que les faits reprochés au plaignant seraient de nature exclusivement fiscale. La SEC dispose en effet, en matière d'opérations relatives à des valeurs mobilières, de compétences analogues à celles d'une autorité pénale et reconnues expressément comme telles (ZIMMERMANN, La coopération judiciaire internationale en matière pénale, 2ème éd., Berne 2004, p. 375-376 n° 334 et arrêts cités; voir aussi l'Echange de lettres entre la Suisse et les Etats-Unis du 3 novembre 1993; RS 0.351.933.66). A cela s'ajoute que la SEC elle-même a mis en œuvre les autorités pénales californiennes, devant lesquelles l'action engagée contre Klarman et contre le plaignant est toujours en cours.

4.4   Pour sa part, le plaignant conteste toute illicéité dans les opérations qui l'ont conduit d'une part à encaisser USD 348'000.— par l'intermédiaire de sa société Telecom Associates. Selon lui, les prestations ainsi reçues de USWC l'auraient été en exécution du contrat de travail qui le liait à cette société. Quant à la vente des actions de USWC, dont il admet avoir bénéficié à hauteur de 350'000 actions, il s'agirait en substance de la réalisation de ses options d'achat légitimement acquises dans le cadre de son activité au profit de USWC. Selon lui, cette vente aurait rapporté USD 6'500'000.—

- 9 -

2100000095

(voir notamment les déclarations du plaignant au MPC lors de son interrogatoire du 15 juillet 2005, pièces MPC 13 02 046 ss.). Toutefois, outre que le plaignant concède lui-même que l'origine des USD 348'000.-- n'a pas été entièrement éclaircie (plainte p. 16), on ne peut ignorer que le contrat de travail sur lequel le plaignant fonde la légitimité de ses droits a été signé par lui-même aussi bien en tant qu'employé qu'en tant qu'employeur (pièce MPC 13 02 069), ce qui permet pour le moins de concevoir quelques doutes quant à la conformité de son contenu avec les intérêts de la société qu'Hilsenrath avait le devoir de préserver. Les preuves recueillies à ce jour, pas plus que les explications fournies par le plaignant ne permettent ainsi d'écarter les soupçons qui pèsent contre lui.

4.5  Il est vrai que la relation entre les crimes reprochés au plaignant et les valeurs patrimoniales faisant l'objet des séquestres litigieux n'est pas évidente. Plus exactement, il ne peut être exclu que les titres dont les produits ont été versés sur les comptes séquestrés aient été acquis licitement par le plaignant. Cette thèse trouve quelque appui dans les preuves rapportées, sans toutefois emporter à ce jour la conviction, ne serait-ce qu'en raison du fait qu'il paraît pour le moins étrange que le dirigeant d'une entreprise à la veille de la faillite ait pu légitimement se procurer des avantages pécuniaires importants par la vente des titres de cette même société. Certes — et contrairement à ce que semble parfois soutenir le MPC — il n'appartient pas au plaignant lui-même d'apporter la preuve indiscutable de l'origine licite de ses avoirs. C'est en effet à l'accusation — sous la seule réserve de l'art. 59 ch. 3 CP, inapplicable en l'espèce — de démontrer l'origine illicite des valeurs destinées à la confiscation. En l'occurrence, le plaignant s'est toutefois proposé de contribuer à l'apport des preuves nécessaires, mais les documents versés, pas plus que les explications fournies ne démontrent à satisfaction que l'ensemble des fonds transférés en Suisse, via des sociétés de domicile, auraient une origine clairement légitime. La possibilité demeure donc d'une future confiscation de ces fonds, voire du maintien des séquestres en vue de garantir le paiement d'une créance compensatrice (art. 59 ch. 2 CP). C'est le lieu de rappeler en effet que le sort des valeurs séquestrées doit être examiné au regard de l'ensemble des opérations financières que le plaignant a conduites par l'intermédiaire de ses comptes en Suisse et non pas des seuls mouvements directement liés aux soldes provisoirement bloqués. S'il devait ainsi apparaître que ces soldes ne sont pas le produit d'une infraction, mais que d'autres opérations en revanche sont liées à des valeurs d'origine criminelle, désormais non disponibles, la condamnation au paiement d'une créance compensatrice, dont le paiement sera garanti par les valeurs séquestrées, devra être envisagée.

- 10 -                       2100000096

4.6   Exception faite des conséquences qu'il attribue à la saisie d'un compte en
Pologne – dont on a vu qu'il n'en est pas le titulaire – le plaignant s'abstient
d'alléguer et de rendre au moins vraisemblables des faits d'où il résulterait
que les séquestres litigieux lui causeraient un dommage supérieur à celui
qui résulte de la seule indisponibilité passagère des valeurs concernées.
Dans ces conditions, il ne peut être retenu que le maintien des mesures se-
rait contraire au principe de la proportionnalité.

4.7   Des considérants qui précèdent, il ressort que la confiscation des valeurs
litigieuses n'est pas exclue, de telle sorte que les mesures doivent être
maintenues en l'état et que la plainte doit être rejetée sur ce point.

5.    Selon l'art. 245 PPF, les frais et les dépens liés à la procédure judiciaire
sont déterminés selon les art. 146 à 161 OJ. En vertu de l'art.156 al. 1 OJ,
en règle générale, les frais judiciaires sont mis à la charge de la partie qui
succombe. En l'occurrence, le plaignant ayant obtenu gain de cause sur un
des trois objets de sa démarche, des frais réduits sont mis à sa charge à
hauteur de Fr. 1'000.--. Ce montant est en l'occurrence entièrement couvert
par l'avance de frais dont il s'est acquitté. Une indemnité réduite de
Fr. 600.--, à la charge du MPC, lui est par ailleurs octroyée à titre de dé-
pens (art. 1 al. 2 du règlement du 11 février 2004 sur les dépens et indem-
nités alloués devant le Tribunal pénal fédéral; RS 173.711.31).

UNOFFICIAL TRANSLATION

Federal Criminal Court

Case Number: BB.2005.106

**Decision of February 7, 2006**
**Appeals Chamber**

Composition        The Federal Criminal Judges Emanuel Hochstrasser,
                   Presiding Judge, Bernard Bertossa and Barbara Ott,
                   the Court Clerk Elena Herzog-Maffei

Parties            **Oliver HILSENRATH**, 822 Eastbrook Court, Danville, CA
                   94506, USA, represented by Björn Bajan, Esq., Zeltweg 44,
                   8032 Zurich,

                                                        Complainant

                   v.

                   OFFICE OF THE ATTORNEY GENERAL OF SWITZERLAND,
                   OAG (MINISTÈRE PUBLIC DE LA CONFÉDÉRATION, MPC)
                   P.O. Box, 3003 Bern,

                                                        Respondent

Subject Matter     Refusal of consultation of documents and confiscation

**The Facts of the Case:**

A.  On February 24, 2004, the Office of the Attorney General of Switzerland (hereinafter OAG) opened a Federal Criminal Police investigation against David Klarman (hereinafter: Klarman), for money laundering (Art. 305bis Swiss Criminal Code, SCC).  On the following August 16, the investigation was extended against Oliver Hilsenrath (hereinafter: Hilsenrath).  Klarman and Hilsenrath were former directors of the U.S. company U.S. Wireless Corporation Inc. (hereinafter: USWC), active in the area of telecommunications and henceforth in bankruptcy.

B.  The origin of the investigation opened in Switzerland is the existence of a proceeding conducted by the Securities and Exchange Commission (hereinafter: SEC) and pending legal proceedings in the United States against the two above-mentioned individuals, who are alleged to have committed securities-related and tax-related offenses, as well as to have misappropriated company assets for their profit.  In substance, the U.S. authorities allege that Klarman and Hilsenrath took advantage of their positions as directors of USWC to have unwarranted amounts paid to them, then to have unlawfully had issued to their credit company shares, which they realized and had the proceeds of which transferred to accounts opened abroad in the names of various domiciliary companies. These operations caused the company a financial loss of more than $6,000,000.00 and thus precipitated its bankruptcy.

C.  Having resided in the United States, Klarman decided to plead guilty, acknowledging in part the merits of the charges made against him and asserting that he had acted in concert with Hilsenrath.  Since the latter had gone abroad, an arrest warrant in view of extradition was issued for him.  At his request, a safe conduct was issued to him by the OAG, which charged him and conducted hearings with him on four occasions between July 12 and August 16, 2005.  On those occasions, Hilsenrath disputed all the charges made against him in the United States.

D.  As part of its investigation, the OAG carried out or had carried out by mutual assistance in criminal matters the confiscation of several bank accounts in Switzerland and abroad, particularly in Belgium and in Poland.  In the latter State, the measure particularly concerns an account, the holder of which is a Kosmos Company.  Hilsenrath is a minority shareholder of this company (exhibit MPC (OAG) 16 4 209).  The confiscated accounts were credited, directly or indirectly, from assets originating from the sale of USWC shares, particularly from a batch of 350,000 shares.  According to the explanations provided by the OAG, the confiscations concern assets of the order of $2.5 million in total, SFr 245,000.00 of which in Switzerland.

E.  As of spring 2005 at least, Hilsenrath has requested complete access to the documents of his case file, as well as the lifting of the confiscations ordered by the OAG.  Owing to successive decisions, the details of which there is no cause to enumerate, Hilsenrath's attorney was able to read a part of the documents.  Furthermore, decisions on lifting the confiscation were delivered above all to allow Klarman's attached assets to be transferred to the United States for the U.S. authorities.

F.  By the letter of September 15, 2005, Hilsenrath once again asked for the right to consult the entire file and repeated his petition for the lifting of the confiscations ordered by the OAG.  On September 22, 2005, the OAG dismissed those petitions.

G.  By the document of September 28, 2005, Hilsenrath brought before the Appeals Chamber of the Federal Criminal Court a complaint against the order of September 22, 2005, submitting that he be granted unlimited access to the file, that the public prosecutor in charge of the investigation be withdrawn and that the confiscated accounts at Crédit Suisse, in Belgium and in Poland be released.  The OAG submitted that the complaint be dismissed.  By the order of September 25, 2005, however, it consented to extend the access to the file, though without permitting access to the entire file.

H.  By the decision of December 20, 2005, the Appeals Chamber decided that there was no cause to enter into the matter of the petition for withdrawal of the public prosecutor.

The Appeals Chamber holds that:

**1.**
**1.1**   Under Art. 105bis, para. 2 of the Federal Criminal Justice Act, the operations and the omissions of the Attorney General of Switzerland can constitute the subject of a complaint before the Appeals Chamber of the Federal Criminal Court. Arts. 214 to 219 of the Federal Criminal Justice Act are applicable. In his capacity as the accused, the complainant is a party to the proceeding and it is admissible to exercise the right to make a complaint (Art. 214, para. 2 of the Federal Criminal Justice Act). His measure having been formulated within the statutory time limit (Art. 217 of the Federal Criminal Justice Act), there is thus cause to enter into the subject matter.

**1.2**   As a general rule, the decision of the Appeals Chamber is delivered in the language of the decision appealed against (Art. 37, para. 3 of the Federal Justice Act, applicable by analogy). In the absence of a statutory provision imposing on the OAG the use of a language determined in the conduct of its investigation, this authority has broad discretion of which it must make use in taking into account all of the circumstances and particularly the language spoken by the accused defendant or accused defendants when they express themselves in a national language (Federal Supreme Court Decision 1S.6/2004 of January 11, 2005, consid. 2, summarized in SU 2005 I 315). In the present case, the accused defendants express themselves in English and the majority of the facts investigated took place in the United States. In the absence of a particular relationship between the circumstances of the case and one or the other of the national languages in Switzerland, the OAG cannot be reproached for having conducted its investigation in the French language and for having delivered the decision appealed against in this language. Therefore the present decision will likewise be delivered in French.

**2.**   The complainant accuses the OAG of not having granted him complete access to the case file. He complains in particular of not having been able to consult the majority of the documents relative to the execution of the mutual legal assistance procedures in the United States and in other foreign States. The OAG certainly relaxed the restrictions following from the decision appealed against and, by the successive order of September 26, 2005, it granted access to some of those documents, while persisting in denying the accused the right to consult a part of the documentation relative to its measures in the context of international mutual assistance in criminal matters.

**2.1**   The Appeals Chamber already ruled on the right to consult the file (see in particular Appeals Chamber Decision BB.2005.37 of July 18, 2005, consid. 3.1 and the ref. cited). The right to consult the file constitutes an essential component of the right to be heard guaranteed by Art. 6 of the European Convention on Human Rights and Art 29, para. 2 of the Federal Constitution (Official Digest of Swiss Federal Supreme Court Decisions 126 I 7, 16 consid. 2b and references cited). As long as the research procedure or the preliminary investigation have not been completed, the exercise of the right to consult can be limited if it is a matter of assuring the protection of the dominating private or public interests and, in particular, of preventing a risk of collusion (Official Digest of Swiss Federal Supreme Court Decisions 122 I 153 161 consid. 6a; 120 IV 242, 244 consid. 2c/bb and references cited; PIQUEREZ, *Procédure pénale suisse*, Zurich 2000, p. 533-534 no. 2489 and 2491; MARAZZI, Il GIAR, *L'arbitro nel processo penale*, Lugano 2001, p. 21 to 25). It is therefore in the light of these principles that Art. 116 of the Federal Criminal Justice Act, applicable to the research procedure (Art. 103, para. 2

of the Federal Criminal Justice Act), must be interpreted. According to this provision, the right to have access to the file must in principle be recognized in the parties "insofar as the result of the investigation is not compromised thereby."

2.2    In the present case, the OAG absolutely asserts that researching the truth would be comprised if the complainant were to find himself granted complete access to the documents of the investigation. However, it is searching in vain for the concrete and specific reasons supporting this assertion. From the grounds for his decisions of September 22 and September 26, 2005, what emerges in substance is that the public prosecutor intends to make granting complete access to the documents of the investigation dependent upon the response that he is waiting for from the U.S. authorities following a supplementary letter of request of the previous August 24. By this request (exhibit MPC (OAG) 18 2 134), the OAG asks the U.S. authorities for a decision on the unlawful character of the acquisition, then the realization of the 350,000 USWC shares. The request does not ask for the execution of precise and specified acts, but instead is similar to the request for a statement of views on the part of the U.S. authorities. Apart from the fact that it is certainly not up to foreign authorities to decide between the versions of the facts which are submitted to the Swiss authority, it is difficult to understand how the response to this new request could lead to a risk of hindering researching the truth about the facts which are pertinent to the Swiss investigation. Added to this is that the above-mentioned argument cannot justify the secrecy retained with regard to the other documents of the investigation which, even though they are unrelated to the mutual legal assistance procedure in the United States, nevertheless remain concealed from the knowledge of the complainant. The investigation was opened in Switzerland on February 24, 2004, that is, nearly two years ago. The complainant has been charged since July 2005. His right to complete access to the case file should not be limited any longer for the sole reason that the prosecution authority in Switzerland is waiting for a decision from the U.S. authorities on the "illegality" of the behavior of the accused.

2.3    The risk of collusion appropriate to justify a restriction to the access to the file must in principle be based on concrete evidence (SCHMID, *Strafprozessrecht*, 4th ed., Zurich 2004, p. 89 no. 266). If that risk can be presumed before the main protagonists have been heard (HAUSER/ SCHWERI/HARTMANN, *Schweizerisches Strafprozessrecht*, 6th ed., Basel 2005, p. 258 no. 18), the same is still true when those hearings have taken place.

2.4    For all of these reasons, the complaint must be accepted on this first point and the access to the file must be granted to the complainant, without restriction.

3.    The complainant requests the withdrawal of the public prosecutor in charge of obtaining evidence. By its decision of December 20, 2005, the Appeals Chamber already decided on this subject matter. Therefore there is no cause to return to it.

4.    Finally, the complainant asks for the confiscations ordered on his accounts in Switzerland, in Poland and in Belgium to be lifted without restriction since the criminal origin of these assets has not been established at all, nor even made plausible. The OAG objects to this petition for the main reasons that the assets which transited on these accounts or are still found there are directly connected with the offenses prosecuted in the United States and that the complainant did not convincingly demonstrate that the assets would be of legal origin.

4.1    The confiscation provided for by Art. 65, marginal no. 1 of the Federal Criminal Justice Act is a provisional (protective) measure which allows the attachment of types of

evidence and objects or assets, respectively, which could be the subject of a confiscation within the meaning of Art. 59 SCC. Such a measure presupposes the existence of concrete presumptions of guilt, even if, at the beginning of the investigation, a simple suspicion can suffice to justify the attachment (HAUSER/SCHWERI/HARTMANN, op. cit., p. 340 no. 1; PIQUEREZ, op. cit., p. 549 no. 2554). Thus it is necessary that sufficient evidence permits the suspicion that the assets were used to commit an offense or are the proceeds of an offense and that the offenses were committed by their holder or by a third party. In order for the continuation of the confiscation to be justified for a prolonged period, it is important that these presumptions are reinforced in the course of the investigation and that the existence of an adequate relationship of cause and effect between the attached assets and the criminal offenses can be considered to be highly plausible (Official Digest of Swiss Federal Supreme Court Decisions 122 IV 91, 95 consid. 4; OBERHOLZER, *Grundzüge des Strafprozessrechts*, 2nd ed., Bern 2005, no. 1139). Moreover, the measure must have a legal basis, be justified by a sufficient public interest and respect the rule of proportionality, as any other coercive measure, even if the authority has broad discretion in this regard (Federal Supreme Court Decision 1P.239/2002 of August 9, 2002 consid. 3.1; HAUSER/SCHWERI/HARTMANN, op. cit. p. 341 no. 3 and p. 345 no. 22). The confiscation is proportional when it concerns assets about which it can be assumed that they will most likely be confiscated in applying criminal law (Federal Supreme Court Decision 1P.239/2002 of August 9, 2002 consid. 3.1). As a simple provisional procedural measure, it does not make a provisional decision on the substantive decision of confiscation, however. Unlike the lower court, the Appeals Chamber of the Federal Criminal Court does not have to definitively examine questions of fact and questions of law (Official Digest of Swiss Federal Supreme Court Decisions 124 IV 313, 316 consid. 4; 120 IV 365, 366 consid. 1c; Federal Supreme Court Decision 8G.12/2003 of April 22, 2003 consid. 5). While there is a doubt about the part of the funds which could be the result of criminal activity, the public interest demands that they remain at the disposal of the administration of justice (Appeals Chamber Decision BB.2005.28 of July 7, 2005 consid. 2; Official Digest of Swiss Federal Supreme Court Decisions 125 IV 222 consid. 2 unpublished; 124 IV 313, 316 consid. 3b and 4; SJ 1994 p. 97, 102). The confiscation can be directed not only at the perpetrator of the offense, but also the third parties to whom the perpetrator transferred the proceeds (Art. 59, marginal no. 1, para. 2 SCC). Confiscation is possible in Switzerland , even if the offense was committed abroad, if the proceeds of the offense were laundered in Switzerland or there is another connection with Switzerland (Official Digest of Swiss Federal Supreme Court Decisions 128 IV 145).

4.2    Neither the complainant nor the OAG provided information on the holders of the bank accounts constituting the subject of the disputed confiscations. Thus it is not known whether the complainant is the holder of all these relations and it even appears, according to his own submissions, that one of the confiscated accounts in Poland would in fact belong to a Kosmos Company, of which he would be only a minority shareholder. Therefore the question which must be considered is whether the complainant is qualified to ask for the lifting of a measure in fact imposed upon the assets of a third party. Considering what is going to follow, as matters stand this question will be able to remain unanswered.

4.3    According to their request for assistance of March 31, 2005 (exhibit MPC (OAG) 18 09 002), the U.S. criminal authorities in substance accuse Hilsenrath of having, in concert with Klarman, embezzled funds at a financial loss to the company USWC for the benefit of domiciliary companies that they had set up for this purpose and that they controlled. Thus, between 1997 and 2000, Hilsenrath had a total sum of $348,000 wired to one of those companies (Telecom Associates)—in monthly installments of $12,000.00. He did likewise with another domiciliary company controlled by him (KS Legal received

monthly payments of $5,000.00 from 1998 to 2000, while neither of these beneficiaries had provided any services to USWC for these payments). The amounts received by Telecom Associates were transferred to accounts at Credit Suisse in Zurich. Between 1997 and 1999, without the knowledge of the competent bodies of USWC, Hilsenrath and Klarman gave instructions to issue company shares in the amount of $500,000.00 to the companies they controlled, then had those shares sold, appropriating the proceeds of those sales, a part of which was also transferred to Credit Suisse. In a deposition intended for the District Court of North Carolina (exhibit MPC (OAG) 004 00 0031), Klarman acknowledged the essential points of the facts of which he had been accused, specifying that he had acted in concert with Hilsenrath. This evidence is most certainly of a kind to create the suspicion that the complainant participated in operations consisting in embezzling to his profit assets of the company USWC, thus precipitating the bankruptcy of the latter. Under Swiss law, such behavior could be described as serious abuse of administrative duties (Art. 158, marginal no. 1, para. 3 SCC), and also misappropriation (Art. 138, marginal no. 1 SCC) or even reduction of assets to the prejudice of creditors (Art. 164, marginal no. 1 SCC). All these offenses are punishable by reclusion and consequently constitute crimes where the concealment of proceeds can fall under Art. 305bis SCC. If it is true that one of the pending investigations in the United States is conducted by the SEC, this circumstance alone does not suffice to establish that the facts of which the complainant is charged would be exclusively of a tax-related nature. In fact, with regard to operations relative to securities, the SEC has competences which are analogous to those of a criminal authority and acknowledged expressly as such (ZIMMERMANN, *La coopération judiciaire internationale en matière pénale*, 2nd ed., Bern 2004, p. 375-376 no. 334 and decisions cited; see also the Exchange of Letters Between Switzerland and the United States of November 3, 1993; Classified Compilation of Federal Law 0.351.933.66). Added to this is that the SEC itself filed an action with the criminal authorities of California, before which the action against Klarman and against the complainant is still pending.

4.4   For his part, the complainant denies any unlawfulness in the operations which led him, on the one hand, to receive payment of $348,000.00 by the intermediary of his company Telecom Associates. According to him, the services thus received from USWC had been in execution of the employment contract which connected him with this company. As for the sale of USWC shares, from which he accepts he profited in the amount of 350,000 shares, in substance it would involve the realization of his legitimately acquired call options in the context of his activity for USWC. According to him, this sale would have brought him $6,500,000.00 (see in particular the complainant's statements to the OAG during his questioning on July 15, 2005, exhibits MPC (OAG) 13 02 046 ff.) However, apart from the fact that the complainant himself concedes that the origin of the $348,000.00 has not been entirely clarified (p. 16 of the complaint), it cannot be ignored that the employment contract on which the complainant bases the legitimacy of his rights was signed by himself in his capacity as an employee as well as in his capacity as an employer (exhibit MPC (OAG) 13 02 069), which in the least allows one to view some documents, as far as the close correspondence of the contents is concerned, with the interests of the company that Hilsenrath had the duty to protect. The evidence gathered to date, not more than the explanations provided by the complainant, thus does not allow the suspicions weighing against him to be rebutted.

4.5   It is true that the relationship between the crimes of which the complainant is accused and the assets constituting the subject of the disputed confiscations is not obvious. More precisely, it cannot be ruled out that the shares from which the proceeds were deposited in the confiscated accounts had been acquired legally by the complainant. This argument finds some support in the established evidence, without, however,

satisfying the court to date that would it not at least seem strange that the director of a company on the brink of bankruptcy could legitimately obtain considerable financial advantages for himself by the sale of shares of that same company. Certainly—and contrary to what sometimes seems to support the OAG—it is not up to the complainant himself to provide indisputable proof of the legal origin of his assets. It is in fact for the prosecution—subject only to Art. 59, marginal no. 3 SCC, not applicable in the present case—to demonstrate the unlawful origin of the assets intended for confiscation. In this case, the complainant, however, offered to make a contribution to the necessary evidence, but the documents filed, no more than the explanations provided, do not demonstrate to satisfaction that all of the funds transferred to Switzerland, via domiciliary companies, would have a clearly legitimate origin. Therefore there remains the possibility of a future confiscation of these funds, and also of the continuation of the confiscations in view of guaranteeing the payment of an equivalent claim (Art. 59, marginal no. 2 SCC). This is the place to reiterate in fact that the fate of the confiscated assets must be examined with regard to all of the financial operations that the complainant conducted by the intermediary of his accounts in Switzerland and not only with regard to the flows directly connected with the temporarily frozen balances. Thus if it should appear that those balances are not the proceeds of an offense, but that other operations, on the other hand, are connected with assets of criminal origin, henceforth not available, the order to pay an equivalent claim, the payment of which will be guaranteed by the confiscated assets, must be considered.

4.6  Apart from the consequences that he attributes to the attachment of an account in Poland—of which it has been seen that he is not the holder—the complainant refrains from putting forward or making at least plausible facts from which it would result that the disputed confiscations would cause him an injury greater than that resulting from only the temporary unavailability of the assets concerned. Under these conditions, it cannot be accepted that the continuation of the measures would be contrary to the rule of proportionality.

4.7  From the preceding considerations, it emerges that the confiscation of the disputed assets is not ruled out, in such a way that the measures must be continued as matters stand and that the complaint must be dismissed on this point.

5.  Under Art. 245 of the Federal Criminal Justice Act, the fees and the costs connected with the court proceedings are assessed according to Arts. 146 to 161 of the Federal Justice Act. In accordance with Art. 156, para. 1 of the Federal Justice Act, as a general rule, the court fees are charged to the party which loses the case. In this case, the complainant having won on one of the three subject matters of his measure, reduced fees are charged to him in the amount of SFr 1,000.00. In this case, this amount is entirely covered by the advance of fees he paid. A reduced award compensation of SFr 600.00, charged to the OAG, is granted to him, moreover, as costs (Art. 1, para. 2 of the Regulation of February 11, 2004 on the Costs and Compensations Awarded Before the Federal Criminal Court; Classified Compilation of Federal Law 173.711.31).

**For these grounds, the Appeals Chamber orders:**

1. The complaint is accepted in part within the meaning of the considerations.

2. A reduced court fee of SFr 1,000.00 is charged to the complainant, covered by the advance of fees which he paid.

3. A reduced compensation of SFr 600.00, charged to the Office of the Attorney General of Switzerland, is awarded to the complainant as costs.

Bellinzona, February 9, 2006

On behalf of the Appeals Chamber
of the Federal Criminal Court

The Presiding Judge:                                    The Court Clerk:

/s/ Emanuel Hochstrasser                                /illegible signature/

**Distribution**

- Björn Bajan, Esq., Zeltweg 44, 8032 Zurich
- Office of the Attorney General of Switzerland, P.O. Box, 3003 Bern

**Information on the Means of Obtaining Redress**

Within 30 days following their notification, decisions of the Appeals Chamber relative to coercive measures are subject to redress before the Federal Supreme Court for violation of federal law; the procedure is regulated by Arts. 214 to 216, 218 and 219 of the Federal Act of June 15, 1934 on the Administration of Federal Criminal Justice, which are applicable by analogy (Art. 33, para. 3, subpara. a of the Federal Criminal Court Act).

The appeal does not suspend the enforcement of the decision appealed against unless the appeals authority or its presiding judge order it.

There appears a notice of dispatch stamp dated February 9, 2006.

# EXHIBIT 7

2100000193

Office des juges d'instruction fédéraux
Genève

R: 26 JUIN 2006

Bundesstrafgericht

Tribunal pénal fédéral

Tribunale penale federale

Tribunal penal federal

Numéro de dossier: BB.2006.34

**Arrêt du 22 juin 2006**
**Cour des plaintes**

Composition
Les juges pénaux fédéraux Emanuel Hochstrasser,
président, Bernard Bertossa et Tito Ponti,
La greffière Elena Maffei

Parties
**Oliver HILSENRATH**, 822 Eastbrook Court, USA-
94506 Danville (CA),

représenté par Me Björn Bajan, Zeltweg 44, 8032
Zurich,

plaignant

contre

**MINISTÈRE PUBLIC DE LA CONFÉDÉRATION**
case postale, 3003 Berne,

partie adverse

Autorité qui a rendu la
décision attaquée
**OFFICE DES JUGES D'INSTRUCTION FÉDÉRAUX,**
case postale 1795, 1211 Genève 1,

Objet
Demande de levée de séquestre; et d'assistance ju-
diciaire (art. 65 ch. 1 PPF et 152 OJ)

-2-

2100000194

**Faits:**

A.  Le 24 février 2004, le Ministère public de la Confédération (ci-après: MPC) a ouvert une enquête de police judiciaire à l'encontre de David Klarman (ci-après: Klarman), du chef de blanchiment d'argent (art. 305bis CP). Le 16 août suivant, l'enquête a été étendue à l'encontre d'Oliver Hilsenrath (ci-après: Hilsenrath). Klarman et Hilsenrath étaient d'anciens dirigeants de la société américaine US Wireless Corporation Inc. (ci-après: USWC, active dans le domaine des télécommunications et dorénavant en faillite.

B.  L'enquête ouverte en Suisse a pour origine l'existence d'une procédure conduite par la Securities and Exchange Commission (ci-après: SEC) et d'une procédure pénale en cours aux Etats-Unis à l'encontre des deux précités, auxquels il est reproché d'avoir commis des infractions de nature boursière et fiscale, ainsi que d'avoir détourné à leur profit des actifs de la société. En substance, les autorités américaines reprochent à Klarman et Hilsenrath d'avoir profité de leurs fonctions dirigeantes auprès de USWC pour se faire verser des montants indus, puis pour faire émettre à leur profit, sans droit, des titres de la société (shares) qu'ils ont réalisés et dont ils se sont fait transférer les produits sur des comptes ouverts à l'étranger aux noms de diverses sociétés de domicile. Ces opérations ont causé à la société un préjudice supérieur à USD 6 millions et ont ainsi précipité sa faillite.

C.  Demeuré aux Etats-Unis, Klarman a décidé de plaider coupable, reconnaissant partiellement le bien-fondé des accusations portées contre lui et affirmant avoir agi de concert avec Hilsenrath. Ce dernier s'étant rendu à l'étranger, un mandat d'arrêt en vue d'extradition a été délivré à son encontre. A sa requête, un sauf-conduit lui a été délivré par le MPC, qui a procédé à son inculpation et à son audition à quatre reprises, entre le 12 juillet et le 16 août 2005. A ces occasions, Hilsenrath a contesté tous les griefs retenus contre lui aux Etats-Unis.

D.  Dans le cadre de son enquête, le MPC a procédé ou fait procéder, par voie d'entraide, au séquestre de plusieurs comptes bancaires en Suisse et à l'étranger, notamment en Belgique et en Pologne. Dans ce dernier Etat, la mesure concerne notamment un compte dont le titulaire est une société Kosmos. Hilsenrath est actionnaire minoritaire de cette société (pièce MPC 16 4 209). Les comptes séquestrés ont été crédités, directement ou indirec-

- 3 -

2100000195

tement, de valeurs provenant de la vente des actions de USWC, notamment d'un lot de 350'000 titres. Selon les explications fournies par le MPC, les séquestres portent sur des valeurs de l'ordre de USD 2,5 millions au total, dont Fr. 245'000.-- en Suisse.

E.   Dès le printemps 2005 au moins, Hilsenrath a sollicité un accès complet aux actes du dossier de sa cause, ainsi que la levée des séquestres ordonnés par le MPC. A la faveur de décisions successives, la dernière émanant de l'autorité de céans, l'avocat de Hilsenrath a pu prendre connaissance de l'ensemble des actes (TPF BB. 2005.106 du 7 février 2006, consid. 2). Des décisions de levée de séquestre ont en outre été rendues, pour permettre avant tout de transférer aux Etats-Unis, à l'intention des autorités américaines, les valeurs saisies au préjudice de Klarman.

F.   Le 8 novembre 2005, le MPC a requis de l'Office des juges d'instruction fédéraux (ci-après: OJIF) à Genève l'ouverture d'une instruction préparatoire et le dossier a été transmis à dite autorité pour la suite des investigations.

G.   Par requête du 17 mars 2006, le plaignant a sollicité du Juge d'instruction fédéral (ci-après: JIF) qu'il ordonne la levée partielle des séquestres à hauteur de Fr. 150'000.-- pour lui permettre d'assumer les frais de sa défense, subsidiairement que l'assistance judiciaire lui soit accordée. Il faisait valoir qu'il était désormais dépourvu de toute ressource (BB.2006.21 act. 1.13). Par ordonnance du 15 mai 2006, le JIF a rejeté ces requêtes.

H.   Par acte du 22 mai 2006, Hilsenrath a saisi la Cour des plaintes du Tribunal pénal fédéral d'une plainte contre l'ordonnance du 15 mai 2006, concluant à ce que le séquestre ordonné sur ses biens soit levé à concurrence de Fr. 150'000.-- pour lui permettre de faire face à ses frais de défense subsidiairement à l'octroi de l'assistance judiciaire gratuite ainsi qu'à la nomination de Me Böjrn Bajan, son défenseur actuel, en qualité de mandataire d'office.

I.   Les arguments et moyens invoqués de part et d'autre seront repris, si nécessaire, dans les considérants en droit.

- 4 -                                2100000196

**La Cour considère en droit:**

1.   La Cour des plaintes examine d'office la recevabilité des plaintes qui lui
     sont adressées (TPF BK_B 064/04 du 25 octobre 2004 consid. 1; ATF 122
     IV 188, 190 consid. 1 et arrêts cités).

     A teneur de l'art. 214 PPF, il peut être porté plainte contre les opérations ou
     les omissions du juge d'instruction. Le droit de plainte appartient aux par-
     ties, ainsi qu'à toute personne à qui l'opération ou l'omission a fait subir un
     préjudice illégitime. Les art. 214 à 219 PPF sont applicables.

     En sa qualité d'inculpé, le plaignant est partie à la procédure et il est rece-
     vable à exercer le droit de plainte (art 214 al. 2 PPF). Sa démarche ayant
     été formée dans le délai légal (art. 217 PPF), il y a lieu d'entrer en matière
     sur ses objets.

2.   Le plaignant requiert que l'assistance judiciaire lui soit accordée et qu'il soit
     dispensé de verser à la Cour l'avance des frais que celle-ci est en droit
     d'exiger en application de l'art. 151 OJ, applicable par renvoi de
     l'art. 245 PPF.

     A rigueur de forme, il y aurait donc lieu, dans un premier temps, de statuer
     sur cette requête avant d'aborder le fond du recours. En l'occurrence ce-
     pendant, les deux objets se confondent dès lors que la plainte est précisé-
     ment dirigée contre le refus, par le premier juge, d'accorder le bénéfice de
     cette même assistance. Or, si la Cour des plaintes n'est pas liée par la dé-
     cision du JIF, qu'elle peut revoir selon sa libre appréciation, il n'en demeure
     pas moins qu'au regard de la situation patrimoniale de la partie requérante
     - seule question litigieuse en l'espèce - les critères applicables en procé-
     dure d'instruction, comme en procédure de plainte, sont les mêmes et
     qu'une solution identique doit être retenue. La terminologie différente adop-
     tée par les art. 36 al. 2 et 38 al. 2 PPF d'une part (applicables à la procé-
     dure d'instruction) et par l'art. 152 OJ d'autre part (applicable à la procé-
     dure de plainte) ne se retrouve d'ailleurs pas dans les versions allemandes
     de ces dispositions, lesquelles adoptent le même critère, à savoir celui de
     l'indigence (Bedürftigkeit). Par économie de procédure, il se justifie dès
     lors, exceptionnellement, de statuer par une seule décision.

-5-

Il est vrai que, par des conclusions conjointes, sinon subsidiaires, le plaignant requiert également la levée partielle des séquestres ordonnés et qu'il soutient à l'appui que non seulement cette levée devrait lui permettre de faire face à ses frais de justice, mais que les mesures de contrainte ordonnées seraient de toute manière infondées. Pour les motifs qui vont suivre, il n'est toutefois pas nécessaire de renoncer à statuer par un seul arrêt.

2.1    Doctrine et jurisprudence s'accordent à considérer que la partie qui requiert l'assistance judiciaire a le devoir de fournir toutes les indications nécessaires, preuves à l'appui, à la détermination de ses revenus, ainsi que de sa fortune. Plus sa situation financière est complexe, plus les exigences de clarté et d'exhaustivité sont élevées. Les besoins élémentaires actuels du plaignant doivent également pouvoir être déterminés sur la base des pièces justificatives. Celles-ci doivent en outre donner une image fidèle et complète de toutes les obligations financières, des revenus et de la fortune du plaignant (ATF 125 IV 161, 164 consid. 4a). Dans le cas contraire, à savoir si les données transmises par le plaignant ne sont pas en mesure de donner une image complète et cohérente de sa situation financière, la requête d'assistance judiciaire peut être rejetée en raison du fait qu'il n'a pas été en mesure de démontrer son indigence (BÜHLER, Die Prozessarmut, in: SCHÖBI [ed.], Gerichtskosten, Parteikosten, Prozesskaution, unentgeltliche Prozessführung, Berne 2001, p. 189 ss.; ATF 125 IV 161, 164 consid. 4a, TPF.BH.2006.6 du 18 avril 2006, consid. 6.1; TPF BB.2005.111 du 24 novembre 2005).

Certes le plaignant a renvoyé à la Cour de céans, dans le délai imparti, le formulaire de demande d'assistance judiciaire dûment complété (act. 4.1) et d'où il résulte que sa situation financière, du point de vue de ses revenus et de ses dépenses fixes, serait pour le moins précaire. Cette absence de revenus suffisants n'est d'ailleurs pas contestée par le JIF, dont la décision de refus d'octroi de l'assistance judiciaire repose uniquement sur le constat que le plaignant n'aurait fourni aucune explication sur l'état de sa fortune, plus particulièrement sur le sort du montant de USD 6,5 millions retiré de la vente des titres USWC. A l'appui de sa plainte, l'inculpé se contente derechef d'affirmer que toute sa fortune serait saisie et que, pour le surplus, on ne saurait exiger de lui – sauf à porter atteinte à son droit de ne pas s'incriminer – qu'il donne toute explication utile à localiser les comptes sur lesquels le produit de cette vente a été ventilé.

2.2    Selon la jurisprudence, l'assistance judiciaire ne saurait certes être refusée au motif que le requérant dispose d'une fortune suffisante, alors même que cette fortune est rendue indisponible en raison de mesures officielles de

2100000198

blocage (arrêt du Tribunal fédéral 1S.5/2006 du 5 mai 2006, consid. 3.2; ATF 118 Ia 369). Une telle indisponibilité n'est toutefois pas établie en l'occurrence et les déclarations péremptoires du plaignant – auquel revient le fardeau de cette preuve – ne sauraient suffire à la démontrer. Le plaignant ne conteste pas avoir retiré, dans un passé récent, une somme de l'ordre de USD 6,5 millions par la vente de titres USWC. Alors même que l'accès complet au dossier lui a été accordé, il ne réfute pas l'affirmation du juge d'instruction, selon laquelle seuls USD 2 millions environ sont séquestrés dans le cadre de la présente procédure. Malgré de nombreuses interpellations du JIF à ce sujet (act. 1.9; 1.10; 1.12; 1.13), il n'a pas fourni d'indications concernant le sort du solde de sa fortune. L'argument selon lequel cette exigence d'information serait contraire au droit de l'inculpé de se taire et de ne pas s'incriminer n'est pas recevable à ce propos car, comme déjà relevé (supra consid. 2.1), c'est à la partie qui requiert l'assistance qu'il incombe d'établir son indigence. Le plaignant ne saurait enfin prétexter du blocage de toute sa fortune pour s'abstenir de toute précision à ce propos dès lors que, contrairement à l'autorité de poursuite, il ne saurait ignorer la destination des montants produits par la vente des titres et que dans l'hypothèse où les comptes récipiendaires seraient également bloqués, rien ne l'empêcherait d'en produire au moins les relevés.

Pour les motifs qui précèdent, c'est donc à juste titre que le JIF a refusé de mettre le plaignant au bénéfice de l'assistance judiciaire.

3.    A l'appui de sa requête tendant à la levée partielle des séquestres à hauteur de Fr. 150'000.–, le plaignant reprend l'argument selon lequel les mesures de contrainte seraient infondées, car la vente de 350'000 titres USWC n'aurait aucun caractère pénalement relevant, seules des infractions fiscales étant retenues à ce propos par les autorités américaines.

3.1    Les conditions auxquelles est subordonné le maintien d'un séquestre, au sens de l'art. 65 ch. 1 PPF, ont déjà été examinées en détail par la décision rendue le 7 février écoulé dans la présente cause (TPF BB.2005.106 du 7 février 2006, consid. 4), à laquelle il y a donc lieu de se référer afin d'éviter d'inutiles redites. A cette occasion, la Cour des plaintes a notamment rappelé que le séquestre de valeurs patrimoniales a pour fonction principale de permettre l'application, par le juge du fond, des mesures de confiscation prévues à l'art. 59 CP. Elle a également précisé (consid. 4.5) que le séquestre n'était pas limité aux valeurs qui sont le produit d'une infraction, mais qu'il avait également pour objet de garantir, le cas échéant, le paiement d'une créance compensatrice au sens de l'art. 59 ch. 2 al. 3 CP. En se limitant à affirmer que la vente des titres d'USWC n'aurait rien de péna-

-7-

21 0 000199

lement répréhensible, le plaignant ignore ce rappel de sorte qu'en l'absence d'élément nouveau à cet égard, il n'y a pas lieu de revenir sur l'arrêt du 7 février 2006 confirmant le bien-fondé des séquestres litigieux.

3.2   A toutes fins utiles, il convient de rappeler que des valeurs patrimoniales sujettes à l'une ou l'autre des mesures pouvant découler de l'art. 59 CP ne sauraient être affectées aux frais de défense de leur propriétaire (ATF 1S.5/2006 du 5 mai 2006 consid. 3.2), à défaut de quoi ce dernier serait illégitimement enrichi, le cas échéant au préjudice de ses victimes.

4.   Pour les motifs qui précèdent, la plainte doit être rejetée. Conformément à l'art. 156 OJ, applicable par renvoi de l'art. 245 PPF, et sur la base de l'art. 3 du règlement du 11 février 2004 fixant les émoluments judiciaires perçus par le Tribunal pénal fédéral (RS 173.711.32), un émolument de Fr. 2'000.-- est mis à la charge du plaignant.

- 8 -

2700000200$^n$

Par ces motifs, la Cour prononce:

1.  La plainte est rejetée.

2.  La demande d'assistance judiciaire est rejetée.

3.  Un émolument de Fr. 2'000.— est mis à la charge du plaignant.

Bellinzone, le 23 juin 2006

Au nom de la Cour des plaintes
du Tribunal pénal fédéral

Le président:                    La greffière:

Distribution

- Me Björn Bajan, Zeltweg 44, 8032 Zurich
- Ministère public de la Confédération, case postale, 3003 Berne
- Office des juges d'instruction fédéraux, case postale 1795, 1211 Genève 1

Indication des voies de recours

Dans les 30 jours qui suivent leur notification, les arrêts de la Cour des plaintes relatifs aux mesures de contrainte sont sujet à recours devant le Tribunal fédéral pour violation du droit fédéral ; la procédure est réglée par les art. 214 à 216, 218 et 219 de la loi fédérale du 15 juin 1934 sur la procédure pénale, qui sont applicables par analogie (art. 33 al. 3 let. a LTPF).

Le recours ne suspend l'exécution de l'arrêt attaqué que si l'autorité de recours ou son président l'ordonne.



VERSAND
EXPEDITION:
SPEDIZIONE

2 3 GIU 2006

**UNOFFICIAL TRANSLATION**

Federal Criminal Court

Case Number:  BB.2006.34

**Decision of June 22, 2006**
**Court of Appeals**

Composition                    The Federal Criminal Judges: Emanuel
                               Hochstrasser, Presiding Judge, Bernard Bertossa,
                               and Tito Ponti, the Court Clerk Elena Maffei

Parties                        **Oliver HILSENRATH**, 822 Eastbrook Court,
                               USA-94506 Danville (CA)

                               represented by Björn Bajan, Zeltweg 44, 8032
                               Zurich,

                                                                   Complainant

                               v.

                               **MINISTÈRE PUBLIC DE LA CONFÉDÉRATION**
                               P.O. Box, 3003, Bern,

                                                                   Respondent

Authority whose decision       OFFICE DES JUGES D'INSTRUCTION FÉDÉRAUX
is disputed                    P.O. Box 1795, 1211 Genève 1,

Subject Matter                 Request to lift the confiscation; and for legal aid
                               (Art. 65 ch. 1 PPF and OJ 152)

**Facts:**

A.    On February 24, 2004, the Office of the Attorney General (MPC) opened a money-laundering investigation into David Klarman. On August 16, 2004, the investigation was extended to include Oliver Hilsenrath. Klarman and Hilsenrath were former officers of the American telecommunications company, U.S. Wireless Corporation Inc. (USWC), which subsequently fell into bankruptcy.

B.    The origin of the Swiss investigation was a case initiated by the U.S. Securities and Exchange Commission (SEC) and a criminal case in the United States involving the two above-cited individuals, in which they were alleged to have committed tax and securities offenses as well as embezzling assets of the corporation. The essence of the allegations by the American authorities is that Klarman and Hilsenrath took advantage of their positions as USWC officers to pay themselves funds not owed, then without authorization to have themselves issued shares in the company, which they sold, transferring the proceeds into offshore accounts opened in the name of various corporate entities. These acts cost the company at least US$ 6 million and thereby prompted its bankruptcy.

C.    Klarman, a U.S. resident, decided to plead guilty, partly admitting to the allegations against him and confirming that he acted in concert with Hilsenrath. The latter having left the country, an arrest warrant for his extradition was served on him. At his request, safe-conduct was granted by the MPC, which proceeded with his charging and his appearance at four hearings between July 12 and August 16, 2005. On these occasions, Hilsenrath contested all charges pending against him in The United States.

D.    In the course of its investigation, the MPC obtained, or had obtained through reciprocity, the sequestration of several bank accounts in Switzerland and foreign countries, notably Belgium and Poland. In Poland, the account in question is in the name of Kosmos, a corporation. Hilsenrath is a minority shareholder in this corporation (MPC doc #16-4-209). The sequestered accounts had been credited, directly or indirectly, with proceeds of the sale of USWC stock, notably a block of 350,000 shares. According to the MPC, the sequestered assets total approximately US$ 2.5 million, including SFr 245,000.

E.    By the Spring of 2005, Hilsenrath petitioned for full access to the record of the investigation concerning him as well as the release of assets sequestered by the MPC. As a result of subsequent decisions, the last of which was issued by this court, Hilsenrath's attorney was granted access to the complete record (TPF BB.2005.106 of 7 February 2006, consid. 2). Decisions to lift the sequestration were also issued, for the primary purpose of transferring to the American authorities in the United States amounts to satisfy the judgment against Klarman.

F.    On November 8, 2005, the MPC referred the matter to the Federal Trial Court (OJIF) in Geneva for preliminary hearing and continued investigation.

3

**G.**    On March 17, 2006, the appellant moved that the Federal Trial Judge (JIF) order a partial disbursement of sequestered funds in the amount of SFr. 150,000 in order to pay the fees for his legal defense, or in the alternative that legal aid be granted. It was necessary to show that he lacked any financial means (BB.2006.21 act. 1.13). In a decision dated May 15, 2006, the JIF rejected the motion.

**H.**    On May 22, 2006, Hilsenrath appealed this decision to the Federal Criminal Court (TPF), asking that the sequestration ordered on SFr. 150,000 of his assets be lifted s so that he can pay the fees for his legal defense, or in the alternative that free legal aid be granted, nominating Ms. Björn Bajan, his current attorney, as his representative.

**I.**    The arguments and means invoked by the two parties will be recounted as needed under Legal Findings.

**Legal Findings:**

1.   The Court of Appeals is obliged to first review the admissibility of complaints lodged with it (TPF BK_B 064/04 of 25 October 2004, consid. 1; ATF 122 IV 188, 190 consid. 1 and *decisions/references* cited).

     According to PPF art. 214, acts and omissions of a federal trial judge are subject to appeal. The right of appeal belongs to the parties as well as any person prejudiced by the act or omission. PPF articles 214 and 219 are applicable.

     The appellant being a party, the exercise of his right of appeal is permitted (al. 2 PPF art. 214). The appeal was filed within the prescribed time period (PPF art. 217), so it is appropriate now to address the substance of the matter.

2.   The appellant requests that legal aid be granted and that the Court waive the costs to which it is entitled under OJ art. 151, applicable under PPF art. 245.

     Formally, it would be appropriate to rule on this request prior to considering the underlying legal question. In this case, however, the two issues are conflated because the underlying legal question is the refusal of the trial judge to grant the same request. But while the Court of Appeals is not bound by the decision of the JIF, which it can overrule, the criteria for granting legal aid at trial and on appeal are identical, so the Court must consider the financial condition of the appellant – the only matter contested in fact – and arrive at the same conclusion for both questions. The differences in wording adopted by PPF articles 36.2 and 38.2 on the one hand (applicable at trial) and by OJ art. 152 on the other (applicable on appeal) is curiously not present in the German-language version, which adopt identical criteria, namely, indigence. For simplicity's sake in this case, therefore, the Court will decide both matters simultaneously.

     It is true that the appellant, at the same time or in the alternative, also requests the partial release of sequestered funds and that he alleges not only that such a release would enable him to pay his legal fees but also that the order itself is without merit. For the reasons that follow, it is nonetheless appropriate to respond with a single ruling.

2.1  Statutory and case law agree that the party seeking legal aid bears the burden of furnishing all documentation necessary to establish his income as well as his assets. The more complex his financial situation is, the higher the bar for clarity and exhaustiveness is raised. The basic current needs of the appellant must also be determined on the basis of documented evidence. Evidence presented must yield a complete and faithful picture of all the appellant's financial obligations, income, and assets (ATF 125 IV 161, 164 consid. 4a). In the event that the evidence submitted is insufficient to provide a complete and coherent portrait of his financial situation, the request for legal aid may be rejected for lack of proof of indigence (BÜHLER, Die Prozessarmut, in: SCHÖBI [ed.], Gerichtskosten,

5

Parteikosten, Prozesskaution, unentgeltliche Prozessführung, Berne 2001, p. 189 ss.; ATF 125 IV 161, 164 consid. 4a, TPF BH.2006.6 of 18 April 2006, consid. 6.1; TPF BB.2005.111 of 24 November 2005).

True, the appellant did supply this Court, within the required time frame, the duly completed application for legal aid (act 4.1), from which one could conclude that his financial situation – in terms of his income and fixed expenses – is precarious. This lack of income is not contested by the JIF, whose decision to deny the request for legal aid rested solely on the observation that the appellant has not provided any accounting of the state of his assets, in particular the disposition of the US$ 6.5 million in proceeds from the sale of USWC shares. In his current pleading, the appellant limits himself once again to asserting that all his assets were seized and that, moreover, one could not require a complete accounting of all the accounts to which these proceeds were sent without infringing his right to avoid self-incrimination.

**2.2**    According to case law, legal aid would not be denied on account of the applicant's adequate assets even though such assets are inaccessible as a result of official restraints (*Decision* of Federal Tribunal 1S.5/2006 of 5 May 2006, consid. 3.2; ATF 118 at 369). But such inaccessibility cannot be established in this case; the peremptory declarations of the appellant – on whom the burden of proof rests – would not suffice to prove it. The appellant does not deny that in the recent past he obtained US$ 6.5 million by selling USWC shares. Even though he has been granted full access to the government's records of investigation, he does not refute the evidence presented to justify the sequestration of approximately US$ 2 million. Despite repeated questioning by the JIF in this matter (act. 1.9; 1.10; 1.12; 1.13), he has presented no account of the disposition of the remaining assets. It is not relevant that providing this information could run counter to the right of the accused to remain silent and not to incriminate himself, because he bears the burden of proving his indigence. The appellant cannot simply rest on the fact that all his assets have been sequestered in order to refrain from full disclosure of them, against the prosecuting authority, since he cannot be unaware of their disposition, and in the event that those receiving accounts should become frozen, nothing would prevent him from at least supplying statements.

For the preceding reasons, it was therefore legitimate that the JIF denied the appellant legal aid.

**3.**    Regarding that part of his appeal for the partial release of sequestered assets up to SFr. 150,000, the appellant returns to the argument that the sequestration is without merits because the sale of 350,000 USWC shares was not itself unlawful; indeed, only tax violations are cited in this matter by the American authorities.

**3.1**    The grounds for maintaining the sequestration, under PPF art. 65 ch. 1, have already been examined in detail by this Court's February 7 ruling (TPF BB.2005.106 of 7 February 2006, consid. 4), to which we refer in order to avoid

6

useless repetition.  In that ruling, notably, the Court of Appeals noted that the principal reason for sequestering personal financial assets is to allow the trial judge to effect a forfeiture under CP article 59.  The Court even specified that the sequestration was not limited to the proceeds of criminal activity; rather, it has the equal purpose of guaranteeing the payment of any disgorgement required by CP article 59 ch. 2 al. 3.  By merely asserting that the sale of USWC shares is not itself a crime, the appellant ignores this other ground; as such, there is no new basis for revisiting the February 7, 2006 ruling, which affirmed the legal justification for the sequestration.

3.2    In any event, it is worth noting that personal financial assets subject to one of the forfeiture provisions of CP article 59 could not be used to provide for their possessor's legal defense, which would amount to an unjust enrichment at the expense of his victims.

4.    For the aforementioned reasons, the appeal must be denied.  According to OJ article 156, applicable under PPF article 245, and on the basis of article 3 of the February 11, 2004 regulation setting the court costs due to the TPF (RS 173.711.32), costs of SFr. 2,000 are assessed to the appellant.

**For these reasons, the Court orders:**

1.    The appeal is denied.

2.    The application for legal aid is denied.

3.    Costs of SFr. 2,000 are assessed the appellant.

Bellinzona, June 23, 2006

On behalf of the Appeals Chamber
of the Federal Criminal Court

The Presiding Judge:                                The Court Clerk:

/s/ Emanuel Hochstrasser

**Distribution**

- Bjorn Bajan, Zeltweg 44, 8032 Zurich
- Ministère Public de la Confédération, P.O. Box, 3003, Bern
- Office des Juges D'Instruction Fédéraux, P.O. Box 1795, 1211 Genève 1

**Information on the Means of Obtaining Redress**

Within 30 days following their notification, decisions of the Court of Appeals relative to coercive measures are subject to redress before the Federal Supreme Court for violation of federal law; the procedure is regulated by Arts. 214 to 216, 218 and 219 of the Federal Act of June 15, 1934 on the Administration of Federal Criminal Justice, which are applicable by analogy (Art. 33, para, 3, subpara. a of the Federal Criminal Court Act).

The appeal does not suspend the enforcement of the decision appealed against unless the appeals authority or its presiding judge order it.